1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOWER, CARREON & DESAI, LLP**
Jon R. Mower, Esq. (SBN 72034)
James A. Burton, Esq. (SBN 149253)
8001 Irvine Center Drive, Suite 1450
Irvine, CA 92618
Telephone:  (949) 474-3004
Facsimile:   (949) 474-9001
mower@mocalaw.com; burton@mocalaw.com

Attorneys for Representative Plaintiffs and Class members

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK D'ASERO, EZEKIEL MOHAMMED, POURIA SAFABAKHSH and MICHAEL McCARVER, individually and on behalf of all other persons similarly situated and on behalf of the general public,<br><br>        Plaintiffs,<br><br>vs.<br><br>HOME LOAN CENTER, INC. dba LENDING TREE LOANS, a California corporation, LENDING TREE, LLC, a Delaware limited liability company, LENDING TREE, INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. SACV 08-0384 RSWL (JWJx)<br><br>Judge:        Ronald S. W. Lew<br>Courtroom:   21<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**[Filed concurrently with Notice of Motion; Declarations in support thereof; and Proposed Order]**<br><br>**Date:          July 1, 2008**<br>**Time:          8:30 a.m.**<br>**Courtroom:    21** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii, vi

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.      INTRODUCTION ..................................................................................1

II.     PROCEDURAL BACKGROUND.........................................................4

III.    STATEMENT OF FACTS .....................................................................5

        A.      LENDING TREE'S BUSINESS OPERATIONS .....................5

        B.      JOB DUTIES AND RESPONSIBILITIES OF
                MORTGAGE BANKERS ..........................................................6

        C.      PAY PROVISIONS OF MORTGAGE BANKERS .................8

        D.      "UNPAID "OFF-THE-CLOCK" OVERTIME HOURS
                WORKED BY MORTGAGE BANKERS ..................................9

IV.     LEGAL BASIS FOR MORTGAGE BANKER CLAIMS...............11

        A.      LIABILITY FOR "OFF-THE-CLOCK" OVERTIME
                WORK........................................................................................11

        B.      THE RETAIL OR SERVICE ESTABLISHMENT
                EXEMPTION DOES NOT APPLY .........................................12

        C.      THE ADMINISTRATIVE EXEMPTION DOES
                NOT APPLY ..............................................................................14

V.      LEGAL ARGUMENT AND AUTHORITY IN SUPPORT
        OF CONDITIONAL CERTIFICATION AND ISSUANCE
        OF NOTICE.............................................................................................14

        A.      THE FACILITATION OF TIMELY NOTICE TO
                POTENTIAL OPT-IN PLAINTIFFS SERVES THE
                BROAD REMEDIAL PURPOSE OF THE FLSA ...............14

        B.      AT THE "NOTICE STAGE" OF THE LITIGATION,
                THE "SIMILARLY SITUATED" STANDARD IS
                LENIENT AND PLAINTIFFS' BURDEN NOT HEAVY ...................15

        C.      CONDITIONAL CERTIFICATION AND ISSUANCE
                OF NOTICE IS APPROPRIATE IN THIS CASE
                BECAUSE PLAINTIFFS HAVE MET THE "SIMILARLY"
                SITUATED STANDARD............................................................17

                1.      There Are No Other Current And Former
                        Mortgage Bankers Who May Desire To Opt-In ..........18

2.  Plaintiffs And The Putative Mortgage Banker Class Members Are Similarly Situated With Respect To Their Job Requirements And Pay Provisions ...................................................... 18

3.  Plaintiffs And the Putative Class of Mortgage Bankers Were Subject To A Single Illegal Policy, Plan Or Decision ................................................. 20

D.  NOTICE MUST BE EXPEDITED DUE TO THE RUNNING OF THE STATUTE OF LIMITATIONS ........................... 20

E.  THE PROPOSED NOTICE IS FAIR AND ACCURATE ....................................................................... 21

F.  LENDING TREE MUST DISCLOSE TO PLAINTIFFS THE CONTACT INFORMATION FOR ALL POTENTIAL MORTGAGE BANKER OPT-INS ............................... 22

V.  CONCLUSION ......................................................................... 24

# TABLE OF AUTHORITIES

## CASES

### Federal

*Adams v. Inter-Con Security Systems, Inc.*
242 F.R.D. 530, 536 (N.D. Cal. 2007) ........................................................17,20

*Alvarez v. IBP, Inc.*
339 F.3d 894, 902-903 (9th Cir. 2003)........................................................11,12

*Auer v. Robbins*
519 U.S. 452, 455, 117 S.Ct. 905, 137 L.Ed. 79 (1997) ............................13

*Barnett v. Countrywide Credit Industries, Inc.*
2002 WL 1023161, *2 (N.D. Tex. 2002)...................................................22

*Barnett v. Washington Mutual Bank*
2004 WL 1753400, *6 (N.D. Cal. 2004)....................................................13,22

*Beauperthuy v. 24 Hour Fitness, U.S.A., Inc.*
2008 WL 79388, *2 (N.D. Cal. 2008)........................................................17,20

*Belcher v. Shoney's, Inc.*
927 F.Supp.249, 251 (M.D. Tenn. 1996) ..............................................2,3,21,22

*Bratt v. County of Los Angeles*
912 F.2d 1066, 1070 (9th Cir. 1990) .........................................................14

*Brzychnalski v. Unesco, Inc.*
35 F.Supp.2d 351, 354 (S.D.N.Y. 1999)....................................................22

*Burch v. Qwest Comms. Int'l, Inc.*
500 F.Supp.2d 1181 (D.Minn. 2007) .......................................................20

*Casas v. Conseco Finance Corp.*
2002 WL 507059 (D. Minn. March 31, 2002) ........................................13,14

*Church v. Consolidated Freightways, Inc.*
137 F.R.D. 297, 303-304 (N.D. Cal. 1991)..............................................15

*Cortez v. Purolator Air filtration Prods. Co.*
23 Cal.4th 163, 96 Cal.Rptr.2d 518 (2000) .............................................2

*Davis v. Charoen Pokphand, Inc.*
303 F.Supp.2d 1272, 1276 (M.D.Ala. 2004)...........................................1

*Does v. Advanced Textile Corp.*
214 F.3D 1058, 1064 (9th Cir. 2000) ........................................................19

*Dybach v. State of Florida Department of Corrections*
942 F.2d 1562, 1567-1568 (11th Cir. 1991)........................................2,3,14,16

*EEOC v. Pan Am World Airways, Inc.*
    897 F.2d 1499, 1508 n. 11 (9th Cir. 1990)..................................2

*Evans v. McClain of Georgia, Inc.*
    131 F.3d 957, 965 (11th Cir. 1997) ..................................12

*Forrester v. Roth's I.G.A. Foodliner, Inc.*
    646 F.2d 413, 414 (9th Cir. 1981) ..................................12

*Fox v. Summit King Mines*
    143 F.2d 926, 931 (9th Cir. 1944) ..................................12

*Garner v. G.D. Searle Pharm. & Company*
    802 F.Supp. 418, 421-422 (M.D. Ala. 1991) ..................................2,3,15,21,22

*Goldman v. Radioshack Corp.*
    2003 WL 21250571, *8 (E.D.Pa. 2003) ..................................11,23

*Grayson v. K-Mart Corp.*
    79 F.3d 1086, 1105-1006 (11th Cir. 199)..................................passim

*Heckler v. DK Funding, LLC*
    502 F.Supp.2d 777 (N.D. Ill. 2007)..................................20

*Hipp v. Liberty National Life Ins. Co.*
    164 F.R.D. 574, 576 (M.D. Fla. 1996) ..................................22

*Hoffman v. Sharro, Inc.*
    982 F.Supp. 249, 262 (S.D.N.Y. 1997) ..................................11

*Hoffmann-LaRoche, Inc. v. Sperling*
    493 U.S. 165, 168-169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)................passim

*Klem v. County of Santa Clara*
    208 F.3d 1085, 1089 (9th Cir. 2000) ..................................12

*Knight v. Columbus, GA*
    19 F.3d 579, 582 (11th Cir. 1994) ..................................2

*Leuthold v. Destination America, Inc.*
    224 F.R.D. 462, 466 (N.D.Cal. 2004) ..................................2,3,15,16,17

*Lindow v. United States*
    738 F.3d 1057, 1061 (9th Cir. 1984) ..................................11

*Maciel v. City of Los Angeles*
    542 F.Supp.3d 1082, 1085-1086 (C.D. Cal. 2008)..................................11,12

*Marsh v. Butler County School System*
    242 F.Supp.2d 1086, 1091 (M.D.Ala. 2003)..................................18

*Martin v. Cooper Electric Supply Co.*
    940 F.2d 896, 903 (3d Cir. 1991) ..................................14

*Mitchell v. Kentucky Finance Corporation*
359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 315 (1959) .............................................12

*Mooney v. Aramco Service Co.*
54 F.3d 1207, 1213-1214 (5th Cir. 1995).....................................................15,16,17

*Mowdy v. Beneto Bulk Transport*
2008 WL 901546, *2 (ND. Cal. 2008) ..........................................................17,20

*Pfohl v. Farmers Ins. Group*
2004 WL 554834, *2 (C.D.Cal. 2004) ...............................................................2,15

*Ray v. Motel 6 Operating*
1996 WL 9389231, **2-3 (D.Minn. 1996) ...........................................................3

*Reeves v. Alliant Techsystems, Inc.*
77 F.Supp.2d 242, 246 (D.R.I. 1999) ...................................................................16

*Reich v. Chicago Title Ins. Co.*
853 F.Supp. 1325, 1330 (D.Kan. 1994).........................................................13,14

*Reich v. Davis*
50 F.3d 962 (11th Cir. 1995) .................................................................................22

*Scarmato v. Northern California Thrift Company*
184 F.Supp. 420 (N.D. Cal. 1960)........................................................................13

*Schwed v. General Elec. Co.*
159 F.R.D. 373, 375 (N.D.N.Y. 1995) .................................................................16

*Sherrill v. Sutherland Global Servs., Inc.*
487 F.Supp.2d 344 (W.D.N.Y. 2007).................................................................20

*Sperling v. Hoffmann-LaRoche, Inc.*
118 F.R.D. 392, 405 (D.N.J. 1988) .............................................................16,17,19

*Tomlinson v. IndyMac Bank, F.S.B.*
359 F.Supp.2d 891, 898 (C.D.Cal. 2005) ..............................................................2

*Tucker v. Labor Leasing, Inc.*
872 F.Supp. 941, 947 (M.D.Fla. 1994)...................................................2,3,16,18,19

*Veliz v. Cintas Corporation*
2004 WL 2623909, *2 (N.D.Cal. 2004).................................................................22

*Wilks v. Pep Boys*
2006 WL 2821700 (M.D. Tenn. 2006)..................................................................20

*Wynn v. National Broadcasting Company, Inc.*
234 F.Supp.3d 1067, 1082 (C.D.Cal. 2002) ........................................................15

# CASE OF INTEREST

*Gonzalez, et al. v. Home Loan Center, Inc.*
  U.S.D.C. Case No. CV-06-5007...................................................................4,5

# FEDERAL STATUTES AND RULES

29 U.S.C. § 203(g) ........................................................................................11

29 U.S.C. § 207 ......................................................................................1,6,11

29 U.S.C. § 207(a).....................................................................................11,12

29 U.S.C. § 207(i) .........................................................................................12

29 U.S.C. § 213(a)(1)....................................................................................13

29 U.S.C. § 215(a)(3)....................................................................................22

29 U.S.C. § 216(b) ...............................................................................1,2,3,4,17

29 U.S.C. § 255(a)...........................................................................................2

Fed.R.Civ.P. 20(a) ........................................................................................17

Fed.R.Civ.P. 23 ............................................................................................17

# CALIFORNIA ADMINISTRATIVE REGULATIONS

California Labor Code §2699 ........................................................................4

# FEDERAL ADMINISTRATIVE REGULATIONS

29 C.F.R. § 541.200(a)(2)-(3)......................................................................13

29 C.F.R. § 541.201(a)..................................................................................13

29 C.F.R. § 785.19 ........................................................................................11

29 C.F.R. § 790.21(b)(2)................................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Frank D'Asero, Ezekiel Mohammed, Pouria Safabakhsh and Michael McCarver (hereinafter "Plaintiffs") were employed as Mortgage Bankers by Defendants Home Loan Center, Inc. dba Lending Tree Loans, Lending Tree, LLC and/or Lending Tree, Inc. (hereinafter "Lending Tree"). Plaintiffs D'Asero, Mohammed and Safabakhsh were employed at Lending Tree's loan center facility in Irvine, California. Plaintiff McCarver was employed at Lending Tree's similar facility in Charlotte, North Carolina. Plaintiffs have brought this case in part as a nationwide collective class action to recover unpaid overtime compensation and liquidated damages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b).[1]

The FLSA provides Plaintiffs a right of action for Lending Tree's failure to pay overtime compensation. 29 U.S.C. § 207. In addition, the FLSA also permits Plaintiffs to bring a collective action on behalf of all "similarly situated" employees. 29 U.S.C. § 216(b); *Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000). Here, Plaintiffs seek to conditionally certify and facilitate notice of such a collective action for unpaid "off-the-clock" overtime compensation on behalf of all similarly situated Mortgage Bankers who, like Plaintiffs, were employed at Lending Tree's loan center facilities located in Irvine, California and Charlotte, North Carolina during the period from April 9, 2005 to the present.[2]

To participate in this collective action similarly situated Mortgage Bankers must affirmatively "opt in" to the case by filing with the court a written Consent to

---

[1] Plaintiffs' original Complaint is attached as Exhibit 1 to the Declaration of Jon R. Mower ("Mower Declaration").

[2] As used herein, the term "Mortgage Banker" is intended to encompass all persons currently or formerly employed during the applicable liability period in the positions of Mortgage Banker, Senior Mortgage Banker, Senior Mortgage Banker-Prime, Equity Specialist and/or Loan Officer, including all similarly situated persons regardless of job title who perform or performed the same job duties, have or had the same job responsibilities, and are or were paid in accordance with the same general pay provisions as Mortgage Bankers.

1

1    Join pursuant to 29 U.S.C. § 216(b).[3]  In order to decide whether to opt-in and

2    protect their rights, similarly situated Mortgage Bankers must necessarily be

3    notified of the pendency and nature of the case.  In this regard, a district court has

4    the discretion to authorize the named FLSA plaintiffs to send such notice to all

5    potential opt-in plaintiffs and may set a deadline for those potential plaintiffs to join

6    the suit.  *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 168-169, 110 S.Ct.

7    482, 107 L.Ed.2d 480 (1989); *Leuthold v. Destination America, Inc.*, 224 F.R.D.

8    462, 466 (N.D.Cal. 2004); *Dybach v. State of Florida Department of Corrections*,

9    942 F.2d 1562, 1567-1568 (11th Cir. 1991); *Garner v. G.D. Searle Pharm. &*

10   *Company*, 802 F.Supp. 418, 421-422 (M.D.Ala. 1991); *Belcher v. Shoney's, Inc.*,

11   927 F.Supp.249, 251 (M.D.Tenn. 1996); *Tucker v. Labor Leasing, Inc.*, 872

12   F.Supp. 941, 947 (M.D.Fla. 1994).

13       It is essential that similarly situated Mortgage Bankers receive notice of the

14   pendency and nature of this FLSA collective action without delay because,

15   otherwise, they run the risk of having their claims barred or diminished by the

16   FLSA's "rolling" statute of limitations.  Under the FLSA, the applicable statute of

17   limitations is three years if, as in this case, there are willful violations.  *Knight v.*

18   *Columbus, GA*, 19 F.3d 579, 582 (11th Cir. 1994); FLSA, 29 U.S.C. § 255(a).[4]

19   Although the statute is tolled for a named plaintiff on the date the complaint is filed,

20   for opt-in plaintiffs the statute is tolled only on the later date when the individual's

21   written Consent to Join is filed with the court.  *Grayson v. K-Mart Corp.*, 79 F.3d

22   1086, 1105-1106 (11th Cir. 1996); 29 C.F.R. § 790.21(b)(2).  Thus, in order to

23

24   ─────────────────────

     [3]  Should the current or former Mortgage Banker employee not file such written
     consent, then he or she is not bound by the outcome of the collective action and

25   may bring a subsequent private action.  *Pfohl v. Farmers Ins. Group*, 2004 WL
     554834, *2 (C.D.Cal. 2004) (citing *EEOC v. Pan Am World Airways, Inc.*, 897 F.2d
     1499, 1508 n. 11 (9th Cir. 1990)).

26

     [4]  Because Plaintiffs have also asserted claims under the California Unfair

27   Competition Law (UCL), the statute of limitations for the California-based
     Mortgage Banker class is extended to four years.  *Cortez v. Purolator Air*

28   *Filtration Prods. Co.*, 23 Cal.4th 163, 96 Cal.Rptr.2d 518 (2000); *Tomlinson v.*
     *IndyMac Bank, F.S.B.*, 359 F.Supp.2d 891, 898 (C.D.Cal. 2005).

2

1  protect their rights and prevent their overtime claims from being diminished or

2  barred outright, it is extremely important that similarly situated Mortgage Bankers

3  are notified of this case and their right to opt-in as soon as possible.

4       The determination whether a FLSA collective action is appropriate is within

5  the discretion of the district court. *Leuthold, supra*, 224 F.R.D. at 466 (citing *Ray v.*

6  *Motel 6 Operating*, 1996 WL 938231, **2-3 (D.Minn. 1996)). To certify a FLSA

7  collective action under 29 U.S.C. § 216(b), the court must evaluate whether the lead

8  plaintiffs and the proposed collective action group are "similarly situated" with

9  respect to their job requirements and pay provisions. *Hoffmann-LaRoche, supra*,

10  493 U.S. at 168-169; *Dybach, supra*, 942 F.2d at 1567-1568; *Garner, supra*, 802

11  F.Supp. at 421-422; *Belcher, supra*, 927 F.Supp. at 251; *Tucker, supra*, 872 F.Supp.

12  at 947.

13       In applying the "similarly situated" test, the majority of courts follow a two-

14  step approach involving initial notice to prospective plaintiffs followed by a final

15  evaluation whether such plaintiffs are similarly situated. The present case involves

16  the determination made at the first step or "notice stage." As set forth more fully

17  below, at this preliminary "notice stage" of the two-step certification process,

18  Plaintiffs can meet the lenient "similarly situated" standard with substantial and

19  detailed allegations in their complaint and some modicum of evidentiary support in

20  the form of affidavits. *Leuthold, supra*, 224 F.R.D. at 469; *Grayson, supra*, 79 F.3d

21  at 1097.

22       Here, Plaintiffs have clearly met their burden of proof. Plaintiffs therefore

23  request that the Court (1) conditionally certify this case as a collective action under

24  the FLSA, 29 U.S.C. § 216(b); (2) authorize notice of the pendency and nature of

25  this case to all similarly situated Mortgage Bankers employed by Lending Tree in

26  Irvine, California and Charlotte, North Carolina during the period from April 9,

27  2005 to the present; and (3) require Lending Tree to produce to Plaintiffs a

28

1 computer-readable data file containing the name, address and telephone number of
2 each such potential opt-in so that notice may be implemented.[5]

3 **II.    PROCEDURAL BACKGROUND**

4      The original Complaint in this matter was filed on April 9, 2008.  Frank
5 D'Asero, Ezekiel Mohammed and Pouria Safabakhsh agreed to serve as class
6 representatives for the California-based Mortgage Bankers and Michael McCarver
7 agreed to serve in that capacity on behalf of the North Carolina-based Mortgage
8 Bankers.  Nine (9) Mortgage Bankers have already filed Consents to Join under 29
9 U.S.C. § 216(b), thereby becoming party Plaintiffs to this case, even though Notice
10 of the action has not yet been issued.[6]

11      Although the time to respond has expired, Lending Tree has not filed a
12 responsive pleading to the original Complaint.  On June 10, 2008, Plaintiffs filed as
13 a matter of right a First Amended Complaint which is identical to the original
14 Complaint except that it asserts an additional claim for civil penalties under the
15 California Private Attorney General Act of 2004 (PAGA), California Labor Code
16 §§ 2699 et seq.[6]

17      While Lending Tree has not filed a responsive pleading, it does have pending
18 before the Court a motion to compel arbitration that is currently set for hearing on
19 June 24, 2008.[7]

20      While Lending Tree has not filed a responsive pleading, it does have pending
21 before the Court a motion to compel arbitration that is currently set for hearing on
22 June 24, 2008.  Additionally, plaintiffs in the related case entitled *Gonzalez, et al. v.*
23 *Home Loan Center, Inc. dba Lending Tree Loans,* USDC Case No. CV06-5007

24 [5] The proposed Notice and Consent to Join forms are attached, respectively, as
25 Exhibits 2 and 3 to the Mower Declaration.

26 [6] In addition to the lead Plaintiffs, the Mortgage Bankers who have thus far filed a
Consent to Join are Debi Jo Croissant, Anoush Garakan, Robert Lovinelli, Courtney
27 Nelson, David Tadeo, Aaron Mohammed, Richard Biley, Jason Casella and
Anthony Durbin.

28 [7] A true and correct copy of the First Amended Complaint is attached as Exhibit 4
to the Mower Declaration.

1  RSWL (JWJx), have moved this Court for an order preliminarily approving a class

2  action settlement and provisionally certifying a settlement class that includes the

3  California-based Mortgage Bankers in the present case.  The hearing on the

4  *Gonzalez* plaintiffs' motion for preliminary approval is currently set for June 13,

5  2008 and Plaintiffs herein are objecting to and opposing that settlement.[8]

6  **III.    STATEMENT OF FACTS**

7       **A.    LENDING TREE'S BUSINESS OPERATIONS**

8           Lending Tree operates, and at all times during the applicable liability period

9  has operated, facilities in Irvine, California and Charlotte, North Carolina where it

10  provides to the general public on a nationwide basis mortgage loan brokerage and

11  direct lending services through its "LendingTree.com" and

12  "HomeLoanCenter.com" websites and Lender Exchange network.  Lending Tree is

13  a computerized mortgage broker and direct lender that specializes in either

14  matching mortgage or home equity loan borrowers with lenders from its network or

15  working directly with the borrower to sell and fund a mortgage loan.  At its

16  facilities in Irvine, California and Charlotte, North Carolina, Lending Tree

17  employed and continues to employ numerous Mortgage Bankers to originate and

18  sell the loans brokered and/or sold by Lending Tree.  During the applicable liability

19  period, Lending Tree has employed in excess of 3000 Mortgage Bankers at its

20  facilities in Irvine, California and Charlotte, North Carolina.[9]  Plaintiffs contend that

21  Lending Tree has a uniform policy and practice of miscalculating overtime rates

22

23

24  ---

[8] Plaintiffs herein have objected to and submitted a formal opposition to
preliminary approval of the *Gonzalez* settlement based in part on the fact that,
although the *Gonzalez* plaintiffs never asserted a substantive overtime claim under
the FLSA, never sought or obtained conditional certification or the issuance of
notice under the FLSA, and never secured any opt-in plaintiffs under the FLSA,
their settlement nevertheless seeks to release Lending Tree from any and all
FLSA overtime claims held by the putative Mortgage Banker class members,
including the "off-the-clock" FLSA overtime claims asserted in the present case.

[9] Complaint at ¶¶ 3-5, 21-24 and 26, attached as Exhibit 1 to the Mower
Declaration.

1    and knowingly permitting and failing to pay Mortgage Bankers for substantial "off-

2    the-clock" overtime hours in violation of the FLSA, 29 U.S.C. § 207.[10]

3    **B.    JOB DUTIES AND RESPONSIBILITIES OF MORTGAGE**

4    **BANKERS**

5    All Mortgage Bankers at Lending Tree, whether they work in Irvine or

6    Charlotte, perform essentially the same job duties and have the same job

7    responsibilities.[11] They comprise Lending Tree's front line sales force. They

8    perform no management tasks administrative functions. Instead, all Mortgage

9    Bankers are essentially production line salespersons who are massed in cubicles on

10   the floor of Lending Tree's loan center facilities. The sales activities of Mortgage

11   Bankers primarily include taking leads, contacting potential borrowers, and

12   attempting to sell Lending Tree's mortgage-based home loans over the telephone.

13   These sales activities are conducted by all Mortgage Bankers in a uniform manner.

14   All Mortgage Bankers are required to perform their sales functions pursuant to and

15   in strict compliance with the uniform sales scripts, guidelines and policies

16   established by Lending Tree.[12]

17   All Mortgage Bankers report to and work under the close supervision of

18   Sales Managers and other corporate management employees. The job duties of all

19   Mortgage Bankers do not entail significant discretionary decision making or

20   supervision of others. Mortgage Bankers do not hire or fire other employees. They

21   do not conduct interviews of applicants for employment, nor do they conduct

---

22   [10] Complaint at ¶¶ 30-33, attached as Exhibit 1 to the Mower Declaration; see also,
     Declarations of D'Asero, Mohammed and Safabakhsh at ¶¶ 9 and 10, attached
23   respectively as Exhibits 5 through 7 to the Mower Declaration, and Declarations of
     McCarver and Durbin at ¶¶ 8 and 9, attached as Exhibits 8 and 9 to the Mower
24   Declaration.

25   [11] Complaint at ¶ 27, attached as Exhibit 1 to the Mower Declaration; see also,
     Declarations of D'Asero, Mohammed, Safabakhsh, McCarver and Durbin at ¶ 1,
26   attached respectively as Exhibits 5 through 9 to the Mower Declaration.

27   [12] Complaint at ¶ 27, attached as Exhibit 1 to the Mower Declaration; see also,
     Declarations of D'Asero, Mohammed and Safabakhsh at ¶ 5, attached as Exhibits 5
28   through 7 to the Mower Declaration, and Declarations of McCarver and Durbin at ¶
     4, attached as Exhibits 8 and 9 to the Mower Declaration.

1  employee job performance evaluations. Mortgage Bankers do not manage any

2  employees, do not participate in setting Lending Tree's employment policies or

3  loan guidelines, and do not perform any administrative duties related to the

4  management or servicing of Lending Tree's business operations. Mortgage

5  Bankers comprise Lending Tree's front-line sales force. The essential function of

6  Mortgage Bankers is to sell Lending Tree's mortgage-based home loans to the

7  general public over the telephone.[13]

8          In performing their sales function, all Mortgage Bankers take leads generated

9  from Lending Tree's marketing efforts and act as the borrowers' contact person and

10 liaison throughout the loan origination and sale process. The job duties of

11 Mortgage Bankers include reviewing loan applications submitted by prospective

12 borrowers; making telephone contact with those potential borrowers; determining

13 the type of loan product the borrowers are interested in and selling them that

14 product utilizing Lending Tree's uniform sales scripts; running the prospective

15 borrowers' credit; informing the borrowers regarding loan pricing; submitting the

16 borrowers' loan application; securing the borrowers' payment to lock in the interest

17 rate on the loan selected; obtaining necessary conditions, stipulations, and loan-

18 related documentation from the prospective borrowers; packaging and submitting

19 the prospective borrowers' loan submission for processing; and acting as the

20 borrowers' primary contact person throughout the rest of the loan origination and

21 sale process. Mortgage Bankers are not authorized to deviate from or make

22 exceptions to Lending Tree's loan origination and sales procedures, underwriting

23 guidelines, or the approved loan terms, fees, or rates. Any requests by the borrower

24 for different loan terms, interest rates, fees, or costs must be forwarded by

25 Mortgage Bankers to their Sales Manager or other higher authority for

26 consideration and approval. Mortgage Bankers do not have the authority to

27 ───────────────
   [13] Complaint at ¶ 27, attached as Exhibit 1 to the Mower Declaration; see also,
   Declarations of D'Asero, Mohammed and Safabakhsh at ¶ 6, attached as Exhibits 5
28 through 7 to the Mower Declaration, and Declarations of McCarver and Durbin at ¶
   5, attached as Exhibits 8 and 9 to the Mower Declaration.

1  negotiate with the potential borrower with respect to such matters. Essentially

2  every step of the loan origination and sales process for Mortgage Bankers is

3  prescribed by Lending Tree's uniform guidelines and procedures which, again, all

4  Mortgage Bankers must strictly adhere to.[14]

5  ### C.    PAY PROVISIONS OF MORTGAGE BANKERS

6  Throughout the applicable liability period, Lending Tree paid all Mortgage

7  Bankers in the same general manner. Prior to in or about August of 2006, all

8  Mortgage Bankers were paid minimum wage and, in addition, what Lending Tree

9  characterized as "commissions" on the loans the Mortgage Banker originated and

10  sold. This pay structure included an overtime component. From in or about August

11  of 2006 through in or about June of 2007, all Mortgage Bankers were paid a

12  minimum monthly incentive of $2,000.00 and, in addition, their so-called

13  "commissions." This pay structure also included an overtime component. From in

14  or about June of 2007 to the present, all Mortgage Bankers have been paid either

15  the minimum monthly incentive of $2,000.00 or their so-called "commissions,"

16  whichever is greater. Payment of the monthly minimum incentive is a "draw" or

17  advance and is subtracted from the Mortgage Bankers' "commission" payments if,

18  after subtracting the draw, the remaining amount of "commission" earnings exceeds

19  the monthly minimum incentive amount. This pay structure also includes an

20  overtime component. Under each of these so-called "commission" plans, each loan

21  originated by the Mortgage Banker is assigned a "point" value tied to the type of

22  the loan. The total "points" earned by the Mortgage Banker are calculated at the

23  end of the month, after which each point is assigned a "tiered" fixed dollar value

24  which varies depending on the Mortgage Bankers' total point volume. In this

25  regard, the "point" value of a given loan and the corresponding fixed dollar amount

26  assigned to each point based on the Mortgage Bankers' total point volume does not

27  ---

[14] Complaint at ¶ 27, attached as Exhibit 1 to the Mower Declaration; see also, Declarations of D'Asero, Mohammed and Safabakhsh at ¶ 7, attached as Exhibits 5

28  through 7 to the Mower Declaration, and Declarations of McCarver and Durbin at ¶ 6, attached as Exhibits 8 and 9 to the Mower Declaration.

represent a percentage of the price of the originated loan or the fee charged by Lending Tree for the loan.[15]

### D.    UNPAID "OFF-THE-CLOCK" OVERTIME HOURS WORKED BY MORTGAGE BANKERS

As a matter of company policy, throughout the liability period all Mortgage Bankers were regularly required to work substantial overtime hours. Lending Tree had, and continues to have, a policy and practice of imposing minimum weekly and/or monthly loan origination and production requirements on all Mortgage Bankers. Failure to meet these minimum requirements subjected Mortgage Bankers to potential discipline, including termination. Upper management, through directions to the Sales Managers, routinely pressured the Mortgage Bankers to work as many hours as necessary in order to meet these minimum production goals. Sales Managers were required by upper management to regularly hold "production" meetings during which the Mortgage Bankers on their team were pressured to work long hours and sell as many loans as possible. In order to meet and preferably exceed the minimum production requirements, the typical Mortgage Banker was required or permitted to work in excess of ten (10) hours per day, Monday through Friday. They were also regularly required or permitted to work significant additional hours on Saturdays and/or Sundays. The typical Mortgage Banker regularly worked in excess of 55 to 60 hours per week or more, and Sales Managers and other management personnel regularly observed Mortgage Bankers working these sorts of hours.[16]

---

[15] Complaint at ¶ 28, attached as Exhibit 1 to the Mower Declaration; see also, Declarations of D'Asero, Mohammed and Safabakhsh at ¶ 8, attached as Exhibits 5 through 7 to the Mower Declaration, and Declarations of McCarver and Durbin at ¶ 7, attached as Exhibits 8 and 9 to the Mower Declaration.

[16] Complaint at ¶ 30, attached as Exhibit 1 to the Mower Declaration; see also, Declarations of D'Asero, Mohammed and Safabakhsh at ¶ 9, attached as Exhibits 5 through 7 to the Mower Declaration, and Declarations of McCarver and Durbin at ¶ 8, attached as Exhibits 8 and 9 to the Mower Declaration.

9

1    Although Lending Tree utilized a timekeeping system that ostensibly
2    required Mortgage Bankers to "clock in" and "clock out," the time records
3    generated from this system are totally incorrect and inaccurate. As a matter of
4    company policy and practice, Lending Tree's upper management instructed Sales
5    Managers to permit the Mortgage Bankers on their team to perform substantial
6    "off-the-clock" overtime work. This was a policy decision and resulted from upper
7    management's desire to obtain maximum loan production from the Mortgage
8    Bankers while keeping overtime costs to a minimum. For example, upper
9    management instructed Sales Managers to permit the Mortgage Bankers to perform
10   work before they "clocked in" and/or to "clock out" and continue working. Sales
11   Managers were also instructed to permit their Mortgage Bankers to work
12   unscheduled Saturdays or Sundays without "clocking in" on the time system at all.
13   As a matter of company policy and practice, upper management also instructed and
14   knowingly permitted Sales Managers to alter Mortgage Banker time records after-
15   the-fact and prior to the preparation of payroll to reflect fewer overtime hours than
16   the number actually worked, as well as to reflect the taking of illusory meal breaks.
17   In other words, regardless of whether a Mortgage Banker worked through or did not
18   take a lunch break at all, upper management instructed the Sales Managers to alter
19   their time records to show that a lunch break had been taken. That "off-the-clock"
20   work by Mortgage Bankers was knowingly permitted and in fact encouraged, and
21   that Sales Managers were instructed to alter Mortgage Banker time records to
22   reduce overtime hours or reflect untaken meal breaks, was a matter of company
23   policy and common knowledge among upper management, Sales Managers and
24   Mortgage Bankers alike. The amount of "off-the-clock" overtime hours by
25   Mortgage Bankers can be determined by subtracting their "recorded" hours from
26   their estimates of how many hours they actually worked. Whatever those numbers
27   turn out to be for each Mortgage Banker, as a matter of company policy and
28   practice Lending Tree never paid Mortgage Bankers for their "off-the-clock"

1  overtime hours.[17]  This uniform policy and practice on the part of Lending Tree

2  obviously does not comply with the overtime requirements of the FLSA, 29 U.S.C.

3  § 207.

4  **IV.   LEGAL BASIS FOR MORTGAGE BANKER CLAIMS**

5  It is not necessary to prove the merits of this action at the "notice" and

6  conditional certification stage.  The merits of the case are irrelevant to conditional

7  certification and the "similarly situated" test.  *Goldman v. Radioshack Corp.*, 2003

8  WL 21250571, *8 (E.D.Pa. 2003); *Hoffman v. Sharro, Inc.*, 982 F.Supp. 249, 262

9  (S.D.N.Y. 1997); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 432 (S.D.N.Y.

10  1995).  Nevertheless, it is without substantial dispute that Lending Tree has failed

11  to comply with the overtime requirements of the FLSA.

12  **A.   LIABILITY FOR "OFF-THE-CLOCK" OVERTIME WORK**

13  Under the FLSA, employers must pay employees for all "hours worked."

14  See, 29 U.S.C. § 207; *Alvarez v. IBP, Inc.,* 339 F.3d 894, 902-903 (9th Cir. 2003).

15  The obligation to pay an employee overtime compensation begins to accrue after a

16  non-exempt employee has worked in excess of forty hours in one week.  29 U.S.C.

17  § 207(a); 29 C.F.R. § 785.19.  To establish a claim for "off-the-clock" or

18  unreported (and therefore uncompensated) overtime under 29 U.S.C. § 207(a), a

19  plaintiff must demonstrate:  (1) that he worked overtime hours without

20  compensation; (2) the amount and extent of the work as a matter of just and

21  reasonable inference; and (3) that the employer "suffered" or "permitted" him to

22  work uncompensated overtime.  See, 29 U.S.C. § 203(g); *Lindow v. United States,*

23  738 F.2d 1057, 1061 (9th Cir. 1984); *Maciel v. City of Los Angeles,* 542 F.Supp.2d

24  1082, 1085-1086 (C.D. Cal. 2008).  As defined in 29 U.S.C. § 203(g), "[T]he words

25  'suffer' and 'permit' [means for the employee to work] 'with the knowledge of the

---

26

27  [17] Complaint at ¶¶ 31 and 34, attached as Exhibit 1 to the Mower Declaration; see also, Declarations of D'Asero, Mohammed and Safabakhsh at ¶¶ 10 and 11, attached as Exhibits 5 through 7 to the Mower Declaration, and Declarations of

28  McCarver and Durbin at ¶¶ 9 and 10, attached as Exhibits 8 and 9 to the Mower Declaration.

1  employer.'" *Fox v. Summit King Mines,* 143 F.2d 926, 931 (9th Cir. 1944); *Maciel,*
2  *supra,* 542 F.Supp.2d at 1086.  An employer who is armed with such knowledge
3  cannot stand idly by and allow an employee to perform overtime work without
4  proper compensation, even if the employee does not make a claim for the overtime
5  compensation. *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9[th]
6  Cir. 1981); *Maciel, supra,* 542 F.Supp.2d at 1086.

7  Based on the facts set forth above, it is clear that Lending Tree has as a
8  matter of unwritten policy and practice knowingly encouraged and permitted
9  Mortgage Bankers to work substantial and determinable "off-the-clock" overtime
10  hours without compensation.  Plaintiffs and all Mortgage Bankers who opt-in to
11  this case are therefore entitled to recover no less than one and one-half times their
12  regular rate for those overtime hours under 29 U.S.C. § 207(a), unless Mortgage
13  Bankers can be characterized as "exempt" from the FLSA's overtime pay
14  requirements.  In that regard, this is not a misclassification case.  Lending Tree has,
15  correctly, always treated Mortgage Bankers as non-exempt employees entitled to
16  overtime compensation.  Assuming for the sake of argument, however, that
17  Lending Tree were to now contend otherwise, it is clear any exemption arguments
18  by Lending Tree would be without merit.[18]

19  **B.    THE RETAIL OR SERVICE ESTABLISHMENT EXEMPTION**
20  **       DOES NOT APPLY**

21  Plaintiffs and the other Mortgage Bankers are not commissioned sales
22  employees falling within the scope of the "retail or service establishment"
23  exemption under 29 U.S.C. § 207(i).  As a matter of law this exemption does not
24  apply to employees in the lending or financial services industry. *Mitchell v.*
25  *Kentucky Finance Corporation,* 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 315 (1959);

26
27  [18] Exemptions to the FLSA's overtime requirements are narrowly construed. *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 965 (11th Cir. 1997).  The employer bears the burden of proving "plainly and unmistakably" that an
28  exemption applies. *Id.; Alvarez v. IBP, Inc.,* 339 F.3d 894, 905 (9th Cir. 2003); *Klem v. County of Santa Clara,* 208 F.3d 1085, 1089 (9th Cir. 2000).

12

1   *Scarmato v. Northern California Thrift Company*, 184 F.Supp. 420 (N.D. Cal.

2   1960); *Casas v. Conseco Finance Corp.*, 2002 WL 507059 (D. Minn. March 31,

3   2002); *Barnett v. Washington Mutual Bank*, 2004 WL 1753400, *6 (N.D.Cal.

4   2004).

5   ## C.    THE ADMINISTRATIVE EXEMPTION DOES NOT APPLY

6   Plaintiffs and the Mortgage Banker class members also do not qualify as

7   exempt "administrative employees" under 29 U.S.C. § 213(a)(1). The

8   administrative exemption applies only to employees who perform administrative

9   duties. 29 U.S.C. § 213(a)(1); *Auer v. Robbins*, 519 U.S. 452,455, 117 S.Ct. 905,

10  137 L.Ed. 79 (1997). Lending Tree cannot satisfy this duties test.

11  An employee qualifies as a bona fide administrative employee only if the

12  employee's primary duty (1) is the performance of work directly related to the

13  management or general business operations of the employer or the employer's

14  customers and (2) includes the exercise of discretion and independent judgment

15  with respect to matters of significance. 29 C.F.R. § 541.200(a)(2)-(3).

16  The phrase "directly related to the management or general business

17  operations" refers to the type of work performed by the employee. To meet this

18  requirement, an employee must perform work directly related to assisting with the

19  running or servicing of the business itself, as distinguished from, for example,

20  working on a manufacturing production line or selling a product. 29 C.F.R.

21  § 541.201(a). This "administrative/production dichotomy" provides that employees

22  whose primary duty is to produce the commodity or sell the product the enterprise

23  exists to produce or market are not exempt. *Casas, supra*, 2002 WL 507059 at *6;

24  *Reich v. Chicago Title Ins. Co.*, 853 F.Supp. 1325, 1330 (D.Kan. 1994).

25  Mortgage Bankers are production rather than administrative employees.

26  Lending Tree's business purpose is to sell home mortgage loans and, as is evident

27  from the foregoing description of their job duties, the primary if not exclusive

28  function of Mortgage Bankers is to originate and sell those very loans to the public

on a day-to-day basis. Thus, Mortgage Bankers are primarily involved in the day-to-day production work of Lending Tree rather than running Lending Tree itself or determining its overall business policies. Accordingly, Mortgage Bankers are unquestionably non-exempt "production" employees. *Casas, supra*, 2002 WL 507059 at *8-9; *Reich, supra*, 853 F.Supp. at 1330; *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 903 (3d Cir. 1991); *Bratt v. County of Los Angeles*, 912 F. 2d 1066, 1070 (9th Cir. 1990).

Mortgage Bankers also lack the discretion and independent judgment necessary to qualify for the exemption. As set forth above, the decisions Mortgage Bankers are empowered to make, if any, when selling a loan are all strictly governed by Lending Tree's uniform loan production and sales procedures. Loan Officers also have no authority to approve a loan absent approval of upper management. This is not the kind of discretion and independent judgment that qualifies under the administrative exemption. *Casas, supra*, 2002 WL 507059 at *9-10.

## V. LEGAL ARGUMENT AND AUTHORITY IN SUPPORT OF CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE

### A. THE FACILITATION OF TIMELY NOTICE TO POTENTIAL OPT-IN PLAINTIFFS SERVES THE BROAD REMEDIAL PURPOSE OF THE FLSA

The facilitation of timely notice to potential opt-in claimants serves the broad remedial purpose of the FLSA. *Dybach, supra*, 942 F.2d at 1567. A collective action allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. *Hoffmann-LaRoche, supra*, 493 U.S. at 170. The facilitation of a § 216(b) collective action also promotes the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity. *Id.* Additionally, early participation by the district court in the notice process protects against misleading communications by the parties, resolves any

14

1   disputes regarding the content of the notice before it is sent out, ensures that all

2   potential plaintiffs receive timely notice and thus prevents the proliferation of

3   multiple individual lawsuits, and expedites resolution of the dispute by setting a

4   cut-off date for the filing of Consents to Join. *Id.* at 171; *Garner, supra*, 802

5   F.Supp. at 422.  Prompt notice also serves the critical function of advising all

6   potential opt-in plaintiffs to file their written Consent to Join before the FLSA's

7   rolling statute of limitations diminishes their claim or bars it entirely.

8   **B.    AT THE "NOTICE STAGE" OF THE LITIGATION, THE**

9   **"SIMILARLY SITUATED" STANDARD IS LENIENT AND**

10  **PLAINTIFFS' BURDEN NOT HEAVY**

11          In determining whether the lead plaintiffs and the proposed collective action

12  group are "similarly situated" for purposes of class certification under § 216(b), the

13  majority of courts apply a two-step approach involving initial notice to prospective

14  plaintiffs followed by a final evaluation whether such plaintiffs are similarly

15  situated. *Leuthold, supra*, 224 F.R.D. at 466-467; *Pfohl v. Farmers Ins. Group*,

16  2004 WL 554834, *2 (C.D.Cal. 2004); *Wynn v. National Broadcasting Company,*

17  *Inc.*, 234 F.Supp.2d 1067, 1082 (C.D.Cal. 2002); *Mooney v. Aramco Service Co.*,

18  54 F.3d 1207, 1213-1214 (5th Cir. 1995); *Church v. Consolidated Freightways, Inc.*,

19  137 F.R.D. 297, 303-304 (N.D.Cal. 1991).

20          The first determination is made at the "notice stage."  At the notice stage, the

21  district court must first decide, usually based only on the pleadings and any

22  affidavits which have been submitted, whether the potential class should be given

23  notice of the action. *Leuthold, supra*, 224 F.R.D. at 467; *Pfohl, supra*, 2004 WL

24  554834 at *2; *Mooney, supra*, 54 F.3d at 1214.  "Because the court generally has a

25  limited amount of evidence before it, the initial determination is usually made under

26  a fairly lenient standard and typically results in conditional class certification."

27  *Leuthold, supra*, 224 F.R.D. at 467( citing *Pfohl, supra*, 2004 WL 554834 at *2).

28

15

The "second stage" occurs after discovery is largely complete and focuses on whether the class should be certified for all purposes. This stage is typically precipitated by a motion for "decertification" by the defendant if discovery supports an adverse factual determination on the "similarly situated" question. *Leuthold, supra*, 224 F.R.D. at 467; *Mooney, supra*, 54 F.3d at 1213-1214; *Reeves v. Alliant Techsystems, Inc.*, 77 F.Supp.2d 242, 247 (D.R.I. 1999). Should the district court determine on the basis of the complete factual record that the lead plaintiffs are not similarly situated, then the court may decertify the class and dismiss the "opt-in" plaintiffs without prejudice. *Leuthold, supra*, 224 F.R.D. at 467; *Mooney, supra*, 54 F.3d at 1214; *Reeves, supra*, 77 F.Supp.2d at 247. However, even if later discovery ultimately proves the putative class members to be dissimilar, notice at the early stage of the case and prior to discovery is appropriate as it furthers the remedial purpose of the FLSA. *Schwed v. General Elec. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995).

For the opt-in class to be conditionally certified at the "notice stage" in this case, Plaintiffs need only show that there are other Mortgage Bankers who may desire to "opt-in" to this lawsuit, and that Plaintiffs and these other Mortgage Bankers are "similarly situated" with respect to their job duties and pay provisions. *Dybach, supra*, 942 F.2d at 1567-1568; *Grayson, supra*, 79 F.3d at 1096. Plaintiffs' need only show that their positions are similar, not identical, to the positions held by the putative class members. *Sperling v. Hoffmann-LaRoche, Inc.*, 118 F.R.D. 392, 405 (D.N.J. 1988); *Grayson, supra*, 79 F.3d at 1096; Tucker, supra, 872 F.Supp. at 947. Plaintiffs need only show a "reasonable basis" for their claim that a class of similarly situated persons may exist. *Grayson, supra*, 79 F.3d at 1097; *Schwed, supra*, 159 F.R.D. at 375. Plaintiffs' burden is not a heavy one. *Grayson, supra*, 79 F.3d at 1097. Again, at the "notice stage" of the proceedings, the "similarly situated" standard is a lenient one that typically results in conditional class certification. *Leuthold, supra*, 224 F.R.D. at 467. The standard is

1  considerably less stringent than the proof required pursuant to Rule 20(a) for

2  joinder or Rule 23 for opt-out class certification. *Grayson, supra*, 79 F.3d at 1097.

3  Plaintiffs may meet the lenient "similarly situated" standard through detailed

4  allegations in their Complaint supported by affidavits which provide some

5  modicum of evidentiary support. *Id.* at 1097; *Sperling, supra*, 118 F.R.D. at 406-

6  407. Most courts require nothing more than substantial allegations and colorable

7  supporting proof that the lead plaintiffs and putative class members were together

8  victims of a single decision, policy, or plan. *Adams v. Inter-Con Security Systems,*

9  *Inc.,* 242 F.R.D. 530, 536 (N.D. Cal. 2007); *Beauperthuy v. 24 Hour Fitness U.S.A.,*

10 *Inc.,* 2008 WL 79388, *2 (N.D. Cal. 2008); *Mowdy v. Beneto Bulk Transport,* 2008

11 WL 901546, *2 (N.D. Cal. 2008); *Mooney, supra*, 54 F.3d at 1214; *Sperling, supra*,

12 118 F.R.D. at 407; *Leuthold, supra*, 224 F.R.D. at 468. As demonstrated below,

13 Plaintiffs more than meet the light standard for conditionally certifying an opt-in

14 class of Mortgage Bankers and issuing notice to them under § 216(b).

15 **C.    CONDITIONAL CERTIFICATION AND ISSUANCE OF**

16 **NOTICE IS APPROPRIATE IN THIS CASE BECAUSE**

17 **PLAINTIFFS HAVE MET THE "SIMILARLY SITUATED"**

18 **STANDARD**

19 Plaintiffs have met the liberal standard for conditional certification and court

20 facilitation of notice. Through the substantial and detailed allegations in their

21 Complaint and the declarations filed in support of this motion, Plaintiffs have

22 established more than a reasonable basis for concluding that there are other

23 Mortgage Bankers who may desire to "opt-in" to the case, that the lead Plaintiffs

24 and potential Mortgage Banker class members are "similarly situated" with respect

25 to their job requirements and pay provisions, and that Plaintiffs and the potential

26 Mortgage Banker class members were subjected to and together victims of a

27 common unwritten policy of Lending Tree to knowingly alter time records and

28 permit Mortgage Bankers, who are clearly non-exempt employees, to work

17

1 substantial "off-the-clock" overtime hours without paying them overtime
2 compensation.

### 1. There Are Other Current And Former Mortgage Bankers Who May Desire To Opt-In

5 Reasonable grounds exist to infer there are many other current and former
6 Mortgage Bankers who may desire to opt-in to this collective action. Lending Tree
7 has employed thousands of Mortgage Bankers over the past few years at its Irvine,
8 California and Charlotte, North Carolina loan centers. Given such a large potential
9 class and the high turn-over rates at Lending Tree, reason dictates that large
10 numbers of current or former Mortgage Bankers would join this lawsuit if they
11 knew about it.[19] Moreover, no less than nine (9) Mortgage Bankers have already
12 filed their Consent to Join without receiving any court-approved notice. In this
13 regard, courts have routinely affirmed the existence of other employees who may
14 desire to opt-in on the basis of Consents to Join filed by other employees. *Davis v.*
15 *Charoen Pokphand, Inc.*, 303 F.Supp.2d 1272, 1276 (M.D.Ala. 2004); *Marsh v.*
16 *Butler County School System*, 242 F.Supp.2d 1086, 1091 (M.D.Ala. 2003); *Tucker*
17 *v. Labor Leasing, Inc.*, 872 F.Supp. 941, 947-948 (M.D.Fla. 1994).

### 2. Plaintiffs And The Putative Mortgage Banker Class Members Are Similarly Situated With Respect To Their Job Requirements And Pay Provisions

21 As noted previously, all Mortgage Bankers, regardless of whether they
22 worked in Irvine or Charlotte, are required to perform their duties in the same way
23 pursuant to and consistent with the strict loan origination and sales policies and
24 procedures established by Lending Tree. Plaintiffs have already recounted the
25 essential job requirements of all Mortgage Bankers. The critical fact here is that all
26 Mortgage Bankers have the same basic duties and responsibilities and perform their

---

[19] Declarations of D'Asero, Mohammed and Safabakhsh at ¶ 14, attached as Exhibits 5 through 7 to the Mower Declaration, and Declarations of McCarver and Durbin at ¶ 13, attached as Exhibits 8 and 9 to the Mower Declaration.

1   job in the same manner in all pertinent respects.  The substantial allegations of the

2   Complaint and proof submitted shows that virtually every aspect of the Mortgage

3   Banker job is choreographed by Lending Tree's uniform loan origination and sales

4   procedures which, again, Mortgage Bankers must strictly adhere to.  The lead

5   Plaintiffs and potential Mortgage Banker class members are clearly "similarly

6   situated" with respect to their job requirements.  Again, Plaintiffs' need only show

7   that their positions are similar, not identical, to the positions held by the putative

8   class members.  *Sperling, supra,* 118 F.R.D. at 405; *Grayson, supra*, 79 F.3d at

9   1096; *Tucker, supra*, 872 F.Supp. at 947.

10      The allegations of the Complaint and the declarations submitted by Plaintiffs

11  also establish that Lending Tree paid all Mortgage Bankers in the same manner.

12  Again, prior to in or about August of 2006 all Mortgage Bankers were paid

13  minimum wage and, in addition, what Lending Tree characterized as

14  "commissions" on the loans the Mortgage Banker originated and sold.  From in or

15  about August of 2006 through in or about June of 2007, all Mortgage Bankers were

16  paid a minimum monthly incentive of $2,000.00 and, in addition, the so-called

17  "commissions" described above.  From in or about June of 2007 to the present, all

18  Mortgage Bankers have been paid either the minimum monthly incentive of

19  $2,000.00 or their so-called "commissions," whichever is greater, and payment of

20  the monthly minimum incentive is a "draw" or advance and is subtracted from the

21  Mortgage Bankers' "commission" payments if, after subtracting the draw, the

22  remaining amount of "commission" earnings exceeds the monthly minimum

23  incentive amount.  Again, Plaintiffs' need only show that their positions are similar,

24  not identical, to the positions held by the putative class members. *Sperling, supra,*

25  118 F.R.D. at 405; *Grayson, supra*, 79 F.3d at 1096; *Tucker, supra*, 872 F.Supp. at

26  947.  The lead Plaintiffs and potential Mortgage Banker class members are clearly

27  "similarly situated" with respect to their pay provisions.

28

3.    **Plaintiffs And The Putative Class Of Mortgage Bankers Were Subject To A Single Illegal Policy, Plan Or Decision**

Finally, Plaintiffs have also alleged and provided support through declarations that they and the potential Mortgage Banker class members were subject to and together victims of a common policy and plan of Lending Tree to knowingly alter time records and encourage and permit Mortgage Bankers to work significant "off-the-clock" overtime hours without paying them overtime compensation. Substantial allegations and colorable supporting proof on this point is all that is required. *Adams, supra,* 242 F.R.D. at 536; *Beauperthuy, supra,* 2008 WL 79388 at *2; *Mowdy, supra,* 2008 WL 901546 at *2.

In sum, Plaintiffs have shown by way of the detailed allegations in the Complaint and the accompanying declarations that additional Mortgage Bankers may desire to opt-in, that the lead Plaintiffs and potential Mortgage Banker class members are similarly situated with respect to their job requirements and pay provisions, and that they were all subject to and together victims of a single policy and plan to deprive Mortgage Banker compensation for unrecorded overtime work in violation of the FLSA. In this regard, numerous cases have held that actions involving "off-the-clock" pay violations are suitable for collective action conditional certification under the FLSA. See, *Adams, supra,* 242 F.R.D. at 536-538; *Beauperthuy, supra,* 2008 WL 79388 at *3-6; *Mowdy, supra,* 2008 WL 901546 at *3-6; *Wilks v. Pep Boys,* 2006 WL 2821700 (m>d> Tenn. 2006); *Heckler v. DK Funding, LLC,* 502 F.Supp.2d 777 (N.D. Ill. 2007); *Burch v. Qwest Comms. Int'l, Inc.,* 500 F.Supp.2d 1181 (D.Minn. 2007); *Sherrill v. Sutherland Global Servs., Inc.,* 487 F.Supp.2d 344 (W.D.N.Y. 2007).

D.    **NOTICE MUST BE EXPEDITED DUE TO THE RUNNING OF THE STATUTE OF LIMITATIONS**

Although the statute of limitations is tolled for a named plaintiff in a FLSA collective action on the date the Complaint is filed, for "opt-ins" the statute is tolled

1    only on the later date when each claimant's written Consent to Join is filed with the

2    court. *Grayson, supra*, 79 F.3d at 1105-06; 29 C.F.R. § 790.21(b)(2). Thus, for

3    each week that passes while notice has not been provided to potential opt-ins,

4    Mortgage Bankers whose employment claims are genuine are being deprived of

5    their right to achieve redress. This is particularly true of former Mortgage Bankers

6    whose claims are fixed by their employment departure date. The information that

7    the proposed Notice contains is essential to allow absent Mortgage Bankers to act

8    to protect their interests. Without notice, they are unaware of the pendency of this

9    action or of their right to opt-in, and are thereby powerless to prevent their claims

10   from wasting away. Notice should therefore be expedited to all Mortgage Bankers

11   employed by Lending Tree from April 9, 2005 to the present. See, *Belcher, supra*,

12   927 F.Supp. at 252.

13       **E.    THE PROPOSED NOTICE IS FAIR AND ACCURATE**

14       A collective action depends "on employees receiving accurate and timely

15   notice concerning the pendency of the collective action, so that they can make

16   informed decisions about whether to participate." *Hoffmann-LaRoche, supra*, 493

17   U.S. at 170. Court-authorized notice also prevents the parties from making

18   misleading communications about the case to putative plaintiffs. *Id.* at 172;

19   *Garner, supra*, 802 F.Supp. at 422 Plaintiffs' proposed form of court-approved

20   Notice to the potential opt-ins is "timely, accurate and informative" as required.

21   *Hoffmann-LaRoche, supra*, 493 U.S. at 172. Plaintiffs' proposed Notice is closely

22   modeled after the exemplar provided by the court in *Belcher, supra*, 927 F.Supp. at

23   252-255.

24       Plaintiffs' proposed form of Notice provides notification of the pendency of

25   the action and the opportunity to opt-in. Plaintiffs' legal claims are accurately

26   described. Potential opt-ins are advised that Lending Tree is defending against the

27   claims and that Mortgage Bankers are not required to participate. The Notice

28

21

1    provides clear instructions on how to opt-in and accurately states the prohibition

2    against retaliation or discrimination for participation in a FLSA action.[20]

3        Plaintiffs propose that the Notice and Consent to Join forms be mailed by

4    United States first-class mail to all current and former Mortgage Bankers employed

5    from April 9, 2005 to the present. Those class members interested in participating

6    would be required to file their Consent to Join with the court within 90 days of the

7    date of mailing. This is consistent with established practice under the FLSA.

8    *Hoffmann-LaRoche, supra*, 493 U.S. at 172; *Garner, supra*, 802 F.Supp. at 422

9    (cutoff date expedites resolution of action); *Hipp v. Liberty National Life Ins. Co.*,

10   164 F.R.D. 574, 576 (M.D. Fla. 1996) (120 day filing period); *Belcher, supra*, 927

11   F.Supp. at 252-55 (exemplar of company-wide notice). Plaintiffs' proposed Notice

12   is fair, accurate, and should be approved for distribution.

13   **F.    LENDING TREE MUST DISCLOSE TO PLAINTIFFS THE**

14          **CONTACT INFORMATION FOR ALL POTENTIAL**

15          **MORTGAGE BANKER OPT-INS**

16       When conditional certification is granted, district courts routinely order that

17   plaintiffs' counsel is to administer the sending of notice and, in addition, that the

18   defendant employer at a minimum is required to disclose to plaintiffs' counsel,

19   often in a computer-readable format, the names and addresses of the potential opt-in

20   class members so that notice may be effectuated.. See, *Barnett v. Countrywide*

21   *Credit Industries, Inc.*, , 2002 WL 1023161, *2 (N.D.Tex. 2002) (ordering that

22   plaintiff's counsel was to send notice and that defendant was to provide to

23   plaintiff's counsel the names and addresses, in electronic format, of all potential

24   opt-in class members); *Veliz v. Cintas Corporation*, 2004 WL 2623909, *2

25   (N.D.Cal. 2004) (same, ordering that the information could only be used for the

26   purpose of providing notice and, in addition, ordering that the mailing costs would

27   be borne by defendant); *Brzychnalski v. Unesco, Inc.*, 35 F.Supp.2d 351, 354

28

---

[20] See, 29 U.S.C. § 215(a)(3); *Reich v. Davis*, 50 F.3d 962 (11th Cir. 1995).

22

1  (S.D.N.Y. 1999) (ordering that plaintiff's counsel was to send notice and that

2  defendant was to provide to plaintiff's counsel the names and addresses of all

3  potential opt-in class members); *Goldman v. RadioShack Corp.*, 2003 WL

4  21250571, *10-11 (E.D. Pa. 2003) (same).

5       None of the foregoing cases presented issues regarding the privacy concerns.

6  The reason is clear.  Notice under the FLSA does not, for example, involve the

7  privacy rights of third party witnesses in the discovery context.  The purpose of

8  sending notice in a FLSA action is to protect the rights of absent plaintiffs to file

9  Consent to Join forms and to vindicate their compensation rights prior to the

10 expiration of the applicable statute of limitations.  There is no personal information

11 sought from the putative class.  On the contrary, information is *provided to* the

12 putative class.

13      It is instructive to reference the specific notice procedures as approved by the

14 United States Supreme Court in *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165

15 (1989).  There, the court dealt with the issue whether it was proper to permit

16 discovery of the names and addresses of putative class members for purposes of

17 sending notice.  The court agreed that such information should be disclosed stating

18 "the District Court was correct to permit discovery of the names and addresses of

19 the discharged employees.  Without pausing to explore alternative bases for the

20 discovery, for instance that the employees might have knowledge of other

21 discoverable matter, we find it suffices to say that the discovery was relevant to the

22 subject matter of the action and that there were no grounds to limit the discovery

23 under the facts and circumstances of this case." *Id*. at 170.

24      There is no cognizable legal basis for denying Plaintiffs access to the names,

25 addresses, and telephone numbers of the potential opt-in class members.  Such

26 information is necessary for Plaintiffs to effectuate notice and to perform cross-

27 checks to ensure all class members have been identified.  With regard to telephone

28

numbers, they will enable Plaintiffs to contact class members and obtain up to date mailing information in the event notices are returned as undeliverable.

## VI.   **CONCLUSION**

For the foregoing reasons, the court should grant this Motion and issue the Proposed Order:

1)   Conditionally certifying this case as a collective class action;

2)   Authorizing mailing of the proposed Notice and Consent to Join to all former and current Mortgage Bankers employed by Lending Tree during the period from April 9, 2005 to present; and

3)   Requiring Lending Tree to produce to Plaintiffs a computer-readable data file containing the name, address and telephone number of all such potential opt-in plaintiffs so that proper notice may be implemented.

Dated:  June 10, 2008                    MOWER, CARREON & DESAI, LLP

_____
Jon R. Mower, Esq. (SBN 72034)
James A. Burton, Esq. (SBN 149253)
Attorneys for Representative Plaintiffs
and Class members

24