1  **MOWER, CARREON & DESAI, LLP**
   Jon R. Mower, Esq. (SBN 72034)
2  James A. Burton, Esq. (SBN 149253)
   8001 Irvine Center Drive, Suite 1450
3  Irvine, CA 92618
   Telephone:  (949) 474-3004
4  Facsimile:   (949) 474-9001
   mower@mocalaw.com; burton@mocalaw.com
5
6  Attorneys for Representative Plaintiffs and Class members
7

```
                                FILED
                    CLERK, U.S. DISTRICT COURT

                         SEP 30 2008

                    CENTRAL DISTRICT OF CALIFORNIA
                    BY                        DEPUTY
```

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 | FRANK D'ASERO, EZEKIEL              )   CASE NO. SACV 08-0384 RSWL
   | MOHAMMED, POURIA                    )   (JWJx)
12 | SAFABAKHSH, JOSEPH CUGLIARI,        )
   | JR., ANGELA RICHARDSON, BRIAN       )   Judge:       Ronald S. W. Lew
13 | JOHANSON and BRENDAN DWYER,         )   Courtroom:   21
   | individually and on behalf of all other )
14 | persons similarly situated and on behalf )  **SECOND AMENDED COMPLAINT**
   | of the general public,              )   **FOR UNPAID OVERTIME**
15 |                                     )   **WAGES, LIQUIDATED**
   |         Plaintiffs,                 )   **DAMAGES, STATUTORY AND**
16 |                                     )   **CIVIL PENALTIES,**
   | vs.                                 )   **UNLAWFULLY WITHHELD**
17 |                                     )   **WAGES, AND ATTORNEYS' FEES**
   | HOME LOAN CENTER, INC. dba          )   **AND COSTS**
18 | LENDING TREE LOANS, a California     )
   | corporation, LENDING TREE, LLC, a   )   **[29 U.S.C. §§ 207, 211(c), 216(b);**
19 | Delaware limited liability company,  )   **California Labor Code §§ 201-203,**
   | LENDING TREE, INC., a Delaware       )   **221, 226, 226.7, 450, 510, 512, 1194,**
20 | corporation,                        )   **2699, 2802; California Business and**
   | IAC/INTERACTIVECORP, a Delaware      )   **Professions Code §§ 17200-17208;**
21 | corporation, and DOES 1 through 10,  )   **and North Carolina General Statute**
   | inclusive,                          )   **§§ 95-25.7, 95-25.8, 95-25.22]**
22 |                                     )
   |         Defendants.                 )   **DEMAND FOR JURY TRIAL**
23 |                                     )
   |                                     )   **COLLECTIVE CLASS AND**
24 |                                     )   **REPRESENTATIVE ACTION**
   |                                     )   **[29 U.S.C. § 216(b); FRCP 23;**
25 |                                     )   **California Business and Professions**
   |                                     )   **Code § 17200]**
26

27

28

## I.  **JURISDICTION**

1.     This Court  has jurisdiction over Plaintiffs' federal law claims pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337.  Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs' state law claims because such claims are so related to the federal claims that they form part of the same case or controversy between Plaintiffs and Defendants.

## II.  **INTRODUCTION**

2.     This action is brought as a class and representative action to recover unpaid wages and overtime compensation, wages for missed meal periods, restitution, indemnity, actual damages, statutory and civil penalties, injunctive relief and attorney's fees and costs owed to Plaintiffs and all California and North Carolina-based Mortgage Bankers/Loan Officers/Credit Analysts/Credit Managers ("Mortgage Bankers"), all California-based Equity Coordinators/Account Managers/Loan Processors ("Loan Processors"), and all California-based Underwriters and Funders, as well as all similarly situated employees, currently or formerly employed by Home Loan Center, Inc. dba Lending Tree Loans, Lending Tree, LLC and its predecessor Lending Tree, Inc., IAC/InterActiveCorp, and Does 1 through 10 (collectively "Defendants") during the applicable liability period pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b), FRCP 23, California Labor Code §§ 201-203, 221, 226, 226.7, 450, 510, 512, 1194, 2699 and 2802, I.W.C. Wage Order Nos. 4-2000 and 4-2001, California Business and Professions Code §§ 17200-17208, and North Carolina General Statute §§ 95-25.7, 95-25.8 and 95-25.22.

3.     Lending Tree, LLC operates an online Internet lending exchange ("LendingTree.com") that is supposedly intended to connect mortgage and home equity loan borrowers with multiple lenders that compete for their business. Through its "Lending Tree Lender Exchange," Lending Tree, LLC purports to act

in a brokerage capacity. After a borrower submits a mortgage or home equity loan application on the LendingTree.com site, Lending Tree, LLC purports to transmit the borrower's completed loan request to a number of competing lenders in its Lender Exchange network. Lending Tree, LLC represents to the public that interested lenders will submit competing offers for the loan which are then transmitted to the borrower. Assuming a loan is arranged, processed and closed, Lending Tree, LLC is paid a fee by the participating lender.

4. In 2004 Lending Tree, LLC acquired as a wholly-owned subsidiary Home Loan Center, Inc., touted to be the industry's leading Internet-based ("HomeLoanCenter.com") online direct mortgage lender. As a direct lender, Home Loan Center, Inc., which also does business under the name "Lending Tree Loans," represents that it works directly with the borrower to sell, process, approve, and fund a mortgage loan. As a direct lender, Home Loan Center, Inc. makes its money by charging fees and points to the borrower.

5. In practice, the mortgage brokerage business carried out by Lending Tree, LLC through its Lender Exchange network and the direct lending business conducted by Home Loan Center, Inc. always were and remain inseparable and non-distinct. Plaintiffs and the Class Members in this case are or were employed by Defendants to serve both interrelated business functions, i.e., they are or were employed by Defendants to conduct and carry out both Lending Tree, LLC's online mortgage brokerage business and Home Loan Center, Inc. dba Lending Tree Loans' online direct lending business. In this regard, Plaintiffs and the Class Members currently work or formerly worked at Defendants' facilities located in either Irvine, California or Charlotte, North Carolina.

6. Throughout the applicable liability period, Defendants had, and continue to have, a uniform policy and practice of requiring or knowingly permitting Plaintiffs and all Class Members to work substantially in excess of forty (40) hours per week without paying them properly calculated overtime

1  compensation for all hours worked in excess of forty (40) hours per week as

2  required by the FLSA, 29 U.S.C. § 207.  With respect to the California-based

3  Plaintiffs and California-based Mortgage Banker, Loan Processor, Underwriter and

4  Funder Class Members, this also constitutes an unlawful and unfair business

5  practice under California Business and Professions Code §§ 17200-17208.

6      7.     Throughout the applicable liability period, Defendants also had, and

7  continue to have, a uniform policy and practice of requiring or knowingly

8  permitting the California-based Plaintiffs and California-based Mortgage Banker,

9  Loan Processor, Underwriter and Funder Class Members to work substantially in

10 excess of eight (8) hours per day and forty (40) hours per week without paying

11 them properly calculated overtime compensation for all hours worked in excess of

12 eight (8) hours per day and forty (40) hours per week as required by California

13 Labor Code § 510.  This also constitutes an unlawful and unfair business practice

14 under California Business and Professions Code §§ 17200-17208.

15     8.     Throughout the applicable liability period, Defendants also had, and

16 continue to have, a uniform policy and practice of failing to afford, enforce, self-

17 police, or affirmatively ensure the taking of lawful and "bona fide" duty-free meal

18 break periods by Plaintiffs and all Class Members.  With respect to the California-

19 based Plaintiffs and California-based Mortgage Banker, Loan Processor,

20 Underwriter and Funder Class Members, this policy and practice fails to comply

21 with California Labor Code §§ 226.7 and 512 and I.W.C. Wage Order Nos. 4-2000

22 and 4-2001.  Accordingly, the California-based Plaintiffs and California-based

23 Mortgage Banker, Loan Processor, Underwriter and Funder Class Members are

24 entitled to an additional hour of pay at their regular rate for each day they were not

25 afforded a lawful meal period.  As for the California-based Plaintiffs and

26 California-based Mortgage Banker, Loan Processor, Underwriter and Funder Class

27 Members, this also constitutes an unlawful and unfair business practice under

28 California Business and Professions Code §§ 17200-17208.  This policy and

4

1   practice also does not comply with 29 C.F.R. §§ 785.18 and 785.19. Any time

2   docked for illusory meal periods or meal periods that were not "bona fide" meal

3   periods constitutes compensable hours worked for which all Plaintiffs and all Class

4   Members were not compensated.

5       9.    Throughout the applicable liability period, Defendants also had, and

6   continue to have, a uniform policy and practice of requiring the Mortgage Banker

7   Plaintiffs and all Mortgage Banker Class Members to test for and obtain from state

8   governments where Defendants transact business a license authorizing the

9   Mortgage Banker to originate loans in those various states. Defendants are charged

10  and pay a fee to each state licensing authority for issuance of the required license

11  for each Mortgage Banker. Defendants had, and continue to have, a uniform policy

12  and practice of deducting these licensing fees from the earned wages of the

13  California-based Mortgage Banker Plaintiffs and California-based Mortgage

14  Banker Class Members in violation of California Labor Code § 221 and without

15  their express written authorization under California Labor Code § 224. Defendants

16  also had, and continue to have, a uniform policy and practice of deducting these

17  licensing fees from the earned wages of the North Carolina-based Mortgage Banker

18  Plaintiff and North Carolina-based Mortgage Banker Class Members in violation of

19  and without their express written authorization under North Carolina General

20  Statute § 95-25.8.

21      10.   Throughout the applicable liability period, Defendants also had, and

22  continue to have, a uniform policy and practice of requiring or knowingly

23  permitting the California-based Mortgage Banker Plaintiffs and California-based

24  Mortgage Banker Class Members to make "under the table" out-of-pocket

25  monetary payments directly to California-based Loan Processors, who are also

26  employees of Defendants, as additional compensation for performing their job

27  duties. This policy resulted in the California-based Mortgage Banker Plaintiffs and

28  California-based Mortgage Banker Class Members subsidizing Defendants'

overhead and payroll expense. Defendants also had, and continue to have, a uniform policy and practice of compelling or coercing the Mortgage Banker Plaintiffs and all Mortgage Banker Class Members to purchase a "headset" or "hands free" device so they could "multi-task" and make and receive customer loan-related telephone calls more efficiently. With regard to the North Carolina-based Mortgage Banker Plaintiff and North Carolina-based Mortgage Banker Class Members, Defendants had, and continue to have, a uniform policy and practice of deducting the cost of these headsets from their earned wages in violation of and without their express written authorization under North Carolina General Statute § 95-25.8. The foregoing unauthorized deductions, monetary payments to Loan Processors, and expenses for purchasing headsets constitute losses incurred in the course and scope of the employee's employment and in direct consequence of the discharge of his or her duties. In this regard, Defendants had, and continue to have, a uniform policy and practice of not indemnifying the California-based Mortgage Banker Class Members for these business-related expenditures. In addition to violating California Labor Code §§ 450 and 2802, this constitutes an unlawful and unfair business practice under California Business and Professions Code §§ 17200-17208.

11.    Throughout the applicable liability period, Defendants also had, and continue to have, a uniform policy and practice of failing to pay Plaintiffs and all Class Members all earned overtime compensation, wages for missed meal break periods, and deductions from earned wages for licensing fees and/or the purchase of headsets in a timely manner upon separation of employment as required by applicable law. With respect to the California-based Plaintiffs and California-based Mortgage Banker, Loan Processor, Underwriter and Funder Class Members, Defendants failed to pay these sums immediately upon or within 72 hours of the termination of the employment relationship, thereby entitling these employees to statutory waiting time penalties under California Labor Code §§ 201-203. This also

1    constitutes an unlawful and unfair business practice under California Business and

2    Professions Code §§ 17200-17208. With respect to the North Carolina-based

3    Plaintiff and North Carolina-based Mortgage Banker Class Members, Defendants

4    failed to pay these sums on or before the next regular payday after separation or the

5    first regular payday after the amount due became calculable as required by North

6    Carolina General Statute § 95-25.7, thereby entitling these employees to recovery

7    of such sums including interest and liquidated damages under North Carolina

8    General Statute § 95-25.22.

9       12.    Throughout the applicable liability period, Defendants also had, and

10    continue to have, a uniform policy and practice of knowingly and intentionally

11    failing to furnish the California-based Plaintiffs and California-based Mortgage

12    Banker, Loan Processor, Underwriter and Funder Class Members, to their injury

13    and at the time of each payment of wages, an itemized statement in writing

14    accurately showing all of the information required by California Labor Code §

15    226(a), including, but not limited to, the total hours worked by the employee during

16    the pay period, all applicable hourly rates in effect during the pay period, and the

17    corresponding number of hours worked at each hourly rate by the employee during

18    the pay period. The California-based Plaintiffs and Class Members are therefore

19    entitled to recover the greater of all actual damages or, alternatively, the statutory

20    penalties set forth in California Labor Code § 226(e). This also constitutes an

21    unlawful and unfair business practice under California Business and Professions

22    Code §§ 17200-17208.

23       13.    Defendants uniformly instituted, carried out and applied the foregoing

24    policies and practices to Plaintiffs and the Class Members because Defendants

25    misclassified or improperly treated them as "exempt" employees under applicable

26    wage and hour laws and/or because Defendants willfully and in bad faith elected to

27    ignore and violate applicable wage and hour laws. On behalf of themselves and all

28    Mortgage Banker, Loan Processor, Underwriter and Funder Class Members,

1    Plaintiffs seek to recover unpaid overtime compensation, including the interest
2    thereon or, alternatively, liquidated damages, and reasonable attorney's fees and
3    litigation costs pursuant to the FLSA, 29 U.S.C. §§ 207, 211(c), 216(b).  The North
4    Carolina-based Plaintiff and North Carolina-based Mortgage Banker Class
5    Members seek to recover all unpaid amounts due, including the interest thereon,
6    liquidated damages and reasonable attorney's fees and litigation costs pursuant to
7    North Carolina General Statute §§ 95-25.7, 95-25.8 and 95-25.22.  The California-
8    based Plaintiffs and California-based Mortgage Banker, Loan Processor,
9    Underwriter and Funder Class Members seek to recover unpaid wages and overtime
10   compensation, including the interest thereon, actual damages, statutory penalties,
11   indemnity, restitutionary relief, and reasonable attorney's fees and litigation costs
12   pursuant to California Labor Code §§ 201-203, 221, 226, 226.7, 450, 510, 512,
13   1194 and 2802, I.W.C. Wage Order Nos. 4-2000 and 4-2001, and California
14   Business and Professions Code §§ 17200-17208.  Furthermore, the California-
15   based Plaintiffs, on behalf of themselves, the general public and the California-
16   based Class Members, seek restitution and injunctive relief, as well as "non-class"
17   class-wide restitution of unpaid overtime compensation and unlawfully withheld
18   wages pursuant to California Business and Professions Code §§ 17200-17208.
19        14.    Plaintiffs request that the court order notice to all similarly situated
20   current and former Mortgage Banker, Loan Processor, Underwriter and Funder
21   Class Members who are or were employed by and worked for Defendants during
22   the applicable liability period informing them of the pendency of this action and
23   their right to "opt-in" to this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), for
24   the purpose of seeking overtime compensation and liquidated damages as alleged
25   herein.  Plaintiffs will also seek certification of all other claims and court-approved
26   notice to all Mortgage Banker, Loan Processor, Underwriter and Funder Class
27   Members pursuant to FRCP 23.
28   ///

1

### III.    VENUE

2      15.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c)

3   because substantially all of the events, acts, or omissions giving rise to the claims

4   asserted occurred in Orange County, California.  Defendants have maintained and

5   continue to maintain offices in Orange County, California, and the majority of the

6   Mortgage Banker, Loan Processor, Underwriter and Funder Class Members are or

7   were employed in Orange County, California.

8

### IV.    PARTIES

9   **A.    Plaintiffs**

10      16.    Representative Plaintiffs:  The following Plaintiffs bring claims on

11   behalf of themselves and in a representative capacity on behalf of all similarly

12   situated Mortgage Banker, Loan Processor, Underwriter and Funder Class

13   Members:

14      17.    Plaintiff Frank D'Asero:

15      (a)    Plaintiff Frank D'Asero is a resident of Orange County,

16   California.  Plaintiff D'Asero worked as a Mortgage Banker for Defendants in

17   offices located in Orange County, California, from in or about December of 2006

18   through in or about November of 2007.

19      (b)    From in or about December of 2006 through June of 2007,

20   Plaintiff D'Asero, like other similarly situated Mortgage Bankers during that period

21   of time, was paid a minimum monthly incentive of $2,000.00 and, in addition, what

22   Defendants mischaracterized as "commissions" on the loans he originated.  This

23   pay structure included an improperly calculated overtime component.  From in or

24   about June of 2007 until his departure in or about November of 2007, Plaintiff

25   D'Asero, like other similarly situated Mortgage Bankers during that period of time,

26   was paid either the minimum monthly incentive of $2,000.00 or his so-called

27   "commissions," whichever was greater.  Payment of the monthly minimum

28   incentive was a "draw" or advance and was subtracted from his "commission"

1  payments if, after subtracting the draw, the remaining amount of "commission"

2  earnings exceeded the monthly minimum incentive amount. This pay structure also

3  included an improperly calculated overtime component. Under these so-called

4  "commission" plans, each loan originated by Plaintiff D'Asero was assigned a

5  "point" value tied to the type of the loan. The total "points" earned by Plaintiff

6  D'Asero were calculated at the end of the month, after which each point was

7  assigned a "tiered" fixed dollar value which varied depending on Plaintiff

8  D'Asero's total point volume. These are not bona fide commission plans because

9  the "point" value of a given loan and the corresponding fixed dollar amount

10  assigned to each point based on Plaintiff D'Asero's total point volume does not

11  represent a percentage of the price of the originated loan or the fee charged by

12  Defendants for utilizing the Lender Exchange network.

13        (c)    During the applicable liability period, Plaintiff D'Asero

14  regularly worked in excess of eight (8) hours per day and forty (40) hours per week,

15  but was not paid properly calculated overtime compensation for all hours he

16  worked in excess of eight (8) hours per day and forty (40) hours per week in

17  violation of both federal and California law.

18        (d)    During the applicable liability period, Plaintiff D'Asero was not

19  afforded meal breaks in compliance with California Labor Code §§ 226.7 and 512.

20  Plaintiff D'Asero regularly worked in excess of five (5) hours per day and was not

21  afforded a one-half hour meal period during which he was relieved of all duties.

22  Plaintiff D'Asero also regularly worked in excess of ten (10) hours per day and was

23  not afforded a second one-half hour meal period during which he was relieved of all

24  duties. Plaintiff D'Asero also was not afforded meal breaks meeting the

25  requirements of 29 C.F.R. §§ 785.18 and 785.19. Plaintiff D'Asero regularly

26  worked a full day without taking a meal period of at least one-half hour duration or

27  was not relieved of all duties during meal periods. Nevertheless, Plaintiff

28  D'Asero's daily time worked was docked for a supposed "bona fide" meal period

1   regardless of whether such a meal period was actually taken. Any time docked for

2   illusory meal periods or meal periods that were not indeed "bona fide" meal periods

3   constitutes compensable hours worked under the FLSA for which Plaintiff D'Asero

4   was not compensated.

5          (e)    During the applicable liability period, Defendants required

6   Plaintiff D'Asero to test for and obtain from state governments where Defendants

7   transact business a license authorizing Plaintiff D'Asero to originate loans in those

8   various states. Defendants deducted these licensing fees from the earned wages of

9   Plaintiff D'Asero in violation of California Labor Code § 221 and without his

10  express written authorization under California Labor Code § 224. In addition,

11  Plaintiff D'Asero made "under the table" out-of-pocket monetary payments directly

12  to Loan Processors as additional compensation for the performance of their job

13  duties. Plaintiff D'Asero was also required to purchase a headset from Defendants

14  or others in violation of California labor Code § 450 so he could make and receive

15  customer loan-related telephone calls more efficiently. The unauthorized

16  deductions from earned wages, payments to Loan Processors, and expense for

17  purchasing a headset constitute losses incurred by Plaintiff D'Asero in the course

18  and scope of his employment and in direct consequence of the discharge of his

19  duties. Defendants did not indemnify Plaintiff D'Asero for these losses in violation

20  of California Labor Code § 2802.

21         (f)    Defendants also did not timely pay to Plaintiff D'Asero all

22  earned overtime compensation, wages for missed meal break periods, and

23  deductions from his earned wages for licensing fees immediately upon or within 72

24  hours of the termination of his employment relationship in violation of California

25  Labor Code §§ 201-203.

26         (g)    During the applicable liability period, and to his injury,

27  Defendants did not furnish to Plaintiff D'Asero at the time of each payment of

28  wages an itemized statement in writing accurately showing all of the information

11

1  required by California Labor Code § 226(a), including, but not limited to, the total

2  hours he worked during the pay period, all applicable hourly rates in effect during

3  the pay period, and the corresponding number of hours he worked at each hourly

4  rate during the pay period.

5       18.    Plaintiff Ezekiel Mohammed:

6              (a)    Plaintiff Ezekiel Mohammed is a resident of Orange County,

7  California. Plaintiff Mohammed worked as a Mortgage Banker for Defendants in

8  offices located in Orange County, California, from in or about September of 2005

9  through in or about October of 2007.

10             (b)    From in or about September of 2005 through in or about August

11 of 2006, Plaintiff Mohammed, like other similarly situated Mortgage Bankers, was

12 paid minimum wage and, in addition, what Defendants mischaracterized as

13 "commissions" on the loans he originated. This pay structure included an

14 improperly calculated overtime component. From in or about August of 2006

15 through June of 2007, Plaintiff Mohammed, like other similarly situated Mortgage

16 Bankers during that period of time, was paid a minimum monthly incentive of

17 $2,000.00 and, in addition, so-called "commissions." This pay structure included

18 an improperly calculated overtime component. From in or about June of 2007 until

19 his departure in or about October of 2007, Plaintiff Mohammed, like other similarly

20 situated Mortgage Bankers during that period of time, was paid either the minimum

21 monthly incentive of $2,000.00 or his so-called "commissions," whichever was

22 greater. Payment of the monthly minimum incentive was a "draw" or advance and

23 was subtracted from his "commission" payments if, after subtracting the draw, the

24 remaining amount of "commission" earnings exceeded the monthly minimum

25 incentive amount. This pay structure also included an improperly calculated

26 overtime component. Under these so-called "commission" plans, each loan

27 originated by Plaintiff Mohammed was assigned a "point" value tied to the type of

28 the loan. The total "points" earned by Plaintiff Mohammed were calculated at the

12

1   end of the month, after which each point was assigned a "tiered" fixed dollar value

2   which varied depending on Plaintiff Mohammed's total point volume.  These are

3   not bona fide commission plans because the "point" value of a given loan and the

4   corresponding fixed dollar amount assigned to each point based on Plaintiff

5   Mohammed's total point volume does not represent a percentage of the price of the

6   originated loan or the fee charged by Defendants for utilizing the Lender Exchange

7   network.

8          (c)    During the applicable liability period, Plaintiff Mohammed

9   regularly worked in excess of eight (8) hours per day and forty (40) hours per week,

10  but was not paid properly calculated overtime compensation for all hours he

11  worked in excess of eight (8) hours per day and forty (40) hours per week in

12  violation of both federal and California law.

13         (d)    During the applicable liability period, Plaintiff Mohammed was

14  not afforded meal breaks in compliance with California Labor Code §§ 226.7 and

15  512.  Plaintiff Mohammed regularly worked in excess of five (5) hours per day and

16  was not afforded a one-half hour meal period during which he was relieved of all

17  duties.  Plaintiff Mohammed also regularly worked in excess of ten (10) hours per

18  day and was not afforded a second one-half hour meal period during which he was

19  relieved of all duties.  Plaintiff Mohammed also was not afforded meal breaks

20  meeting the requirements of 29 C.F.R. §§ 785.18 and 785.19.  Plaintiff Mohammed

21  regularly worked a full day without taking a meal period of at least one-half hour

22  duration or was not relieved of all duties during meal periods.  Nevertheless,

23  Plaintiff Mohammed's daily time worked was docked for a supposed "bona fide"

24  meal period regardless of whether such a meal period was actually taken.  Any time

25  docked for illusory meal periods or meal periods that were not indeed "bona fide"

26  meal periods constitutes compensable hours worked under the FLSA for which

27  Plaintiff Mohammed was not compensated.

28  ///

1    (e)    During the applicable liability period, Defendants required
2    Plaintiff Mohammed to test for and obtain from state governments where
3    Defendants transact business a license authorizing Plaintiff Mohammed to originate
4    loans in those various states.  Defendants deducted these licensing fees from the
5    earned wages of Plaintiff Mohammed in violation of California Labor Code § 221
6    and without his express written authorization under California Labor Code § 224.
7    In addition, Plaintiff Mohammed made "under the table" out-of-pocket monetary
8    payments directly to Loan Processors as additional compensation for the
9    performance of their job duties.  Plaintiff Mohammed was also required to purchase
10   a headset in violation of California Labor Code § 450 so he could make and receive
11   customer loan-related telephone calls more efficiently.  The unauthorized
12   deductions from earned wages, payments to Loan Processors, and expense for
13   purchasing a headset constitute losses incurred by Plaintiff Mohammed in the
14   course and scope of his employment and in direct consequence of the discharge of
15   his duties.  Defendants did not indemnify Plaintiff Mohammed for these losses in
16   violation of California Labor Code § 2802.

17   (f)    Defendants also did not timely pay to Plaintiff Mohammed all
18   earned overtime compensation, wages for missed meal break periods, and
19   deductions from his earned wages for licensing fees immediately upon or within 72
20   hours of the termination of his employment relationship in violation of California
21   Labor Code §§ 201-203.

22   (g)    During the applicable liability period, and to his injury,
23   Defendants did not furnish to Plaintiff Mohammed at the time of each payment of
24   wages an itemized statement in writing accurately showing all of the information
25   required by California Labor Code § 226(a), including, but not limited to, the total
26   hours he worked during the pay period, all applicable hourly rates in effect during
27   the pay period, and the corresponding number of hours he worked at each hourly
28   rate during the pay period.

14

19.    Plaintiff Pouria Safabakhsh:

(a)    Plaintiff Pouria Safabakhsh is a resident of Orange County, California. Plaintiff Safabakhsh worked as a Mortgage Banker for Defendants in offices located in Orange County, California, from in or about November of 2006 through in or about March of 2008.

(b)    From in or about November of 2006 through June of 2007, Plaintiff Safabakhsh, like other similarly situated Mortgage Bankers during that period of time, was paid a minimum monthly incentive of $2,000.00 and, in addition, what Defendants mischaracterized as "commissions" on the loans he originated. This pay structure included an improperly calculated overtime component. From in or about June of 2007 until his departure in or about March of 2008, Plaintiff Safabakhsh, like other similarly situated Mortgage Bankers during that period of time, was paid either the minimum monthly incentive of $2,000.00 or his so-called "commissions," whichever was greater. Payment of the monthly minimum incentive was a "draw" or advance and was subtracted from his "commission" payments if, after subtracting the draw, the remaining amount of "commission" earnings exceeded the monthly minimum incentive amount. This pay structure also included an improperly calculated overtime component. Under these so-called "commission" plans, each loan originated by Plaintiff Safabakhsh was assigned a "point" value tied to the type of the loan. The total "points" earned by Plaintiff Safabakhsh were calculated at the end of the month, after which each point was assigned a "tiered" fixed dollar value which varied depending on Plaintiff Safabakhsh's total point volume. These are not bona fide commission plans because the "point" value of a given loan and the corresponding fixed dollar amount assigned to each point based on Plaintiff Safabakhsh's total point volume does not represent a percentage of the price of the originated loan or the fee charged by Defendants for utilizing the Lender Exchange network.

///

15

1    (c)    During the applicable liability period, Plaintiff Safabakhsh

2    regularly worked in excess of eight (8) hours per day and forty (40) hours per week,

3    but was not paid properly calculated overtime compensation for all hours he

4    worked in excess of eight (8) hours per day and forty (40) hours per week in

5    violation of both federal and California law.

6    (d)    During the applicable liability period, Plaintiff Safabakhsh was

7    not afforded meal breaks in compliance with California Labor Code §§ 226.7 and

8    512. Plaintiff Safabakhsh regularly worked in excess of five (5) hours per day and

9    was not afforded a one-half hour meal period during which he was relieved of all

10    duties. Plaintiff Safabakhsh also regularly worked in excess of ten (10) hours per

11    day and was not afforded a second one-half hour meal period during which he was

12    relieved of all duties. Plaintiff Safabakhsh also was not afforded meal breaks

13    meeting the requirements of 29 C.F.R. §§ 785.18 and 785.19. Plaintiff Safabakhsh

14    regularly worked a full day without taking a meal period of at least one-half hour

15    duration or was not relieved of all duties during meal periods. Nevertheless,

16    Plaintiff Safabakhsh's daily time worked was docked for a supposed "bona fide"

17    meal period regardless of whether such a meal period was actually taken. Any time

18    docked for illusory meal periods or meal periods that were not indeed "bona fide"

19    meal periods constitutes compensable hours worked under the FLSA for which

20    Plaintiff Safabakhsh was not compensated.

21    (e)    During the applicable liability period, Defendants required

22    Plaintiff Safabakhsh to test for and obtain from state governments where

23    Defendants transact business a license authorizing Plaintiff Safabakhsh to originate

24    loans in those various states. Defendants deducted these licensing fees from the

25    earned wages of Plaintiff Safabakhsh in violation of California Labor Code § 221

26    and without his express written authorization under California Labor Code § 224.

27    In addition, Plaintiff Safabakhsh made "under the table" out-of-pocket monetary

28    payments directly to Loan Processors as additional compensation for the

16

1    performance of their job duties. Plaintiff Safabakhsh was also required to purchase

2    a headset in violation of California Labor Code § 221 so he could make and receive

3    customer loan-related telephone calls more efficiently. The unauthorized

4    deductions from earned wages, payments to Loan Processors, and expense for

5    purchasing a headset constitute losses incurred by Plaintiff Safabakhsh in the course

6    and scope of his employment and in direct consequence of the discharge of his

7    duties. Defendants did not indemnify Plaintiff Safabakhsh for these losses in

8    violation of California Labor Code § 2802.

9         (f)     Defendants also did not timely pay to Plaintiff Safabakhsh all

10   earned overtime compensation, wages for missed meal break periods, and

11   deductions from his earned wages for licensing fees immediately upon or within 72

12   hours of the termination of his employment relationship in violation of California

13   Labor Code §§ 201-203.

14        (g)     During the applicable liability period, and to his injury,

15   Defendants did not furnish to Plaintiff Safabakhsh at the time of each payment of

16   wages an itemized statement in writing accurately showing all of the information

17   required by California Labor Code § 226(a), including, but not limited to, the total

18   hours he worked during the pay period, all applicable hourly rates in effect during

19   the pay period, and the corresponding number of hours he worked at each hourly

20   rate during the pay period.

21        20.    Plaintiff Joseph Cugliari, Jr.:

22        (a)     Plaintiff Joseph Cugliari, Jr. is a resident of Mecklenburg

23   County, North Carolina. Plaintiff Cugliari worked as a Mortgage Banker for

24   Defendants in offices located in Mecklenburg County, North Carolina, from in or

25   about May of 2006 through in or about August of 2008.

26        (b)     From in or about May of 2006 through in or about August of

27   2008, Plaintiff Cugliari, like other similarly situated Mortgage Bankers, was paid a

28   minimum monthly incentive of $2,000.00 and, in addition, what Defendants

mischaracterized as "commissions" on the loans he originated. This pay structure included an improperly calculated overtime component. Under this so-called "commission" plan, each loan originated by Plaintiff Cugliari was assigned a "point" value tied to the type of the loan. The total "points" earned by Plaintiff Cugliari were calculated at the end of the month, after which each point was assigned a "tiered" fixed dollar value which varied depending on Plaintiff Cugliari's total point volume. This is not bona fide commission plan because the "point" value of a given loan and the corresponding fixed dollar amount assigned to each point based on Plaintiff Cugliari's total point volume does not represent a percentage of the price of the originated loan or the fee charged by Defendants for utilizing the Lender Exchange network.

        (c)    During the applicable liability period, Plaintiff Cugliari regularly worked in excess of forty (40) hours per week, but was not paid properly calculated overtime compensation for all hours he worked in excess of forty (40) hours per week in violation of the FLSA, 29 U.S.C. § 207.

        (d)    During the applicable liability period, Plaintiff Cugliari was not afforded meal breaks meeting the requirements of 29 C.F.R. §§ 785.18 and 785.19. Plaintiff Cugliari regularly worked a full day without taking a meal period of at least one-half hour duration or was not relieved of all duties during meal periods. Nevertheless, Plaintiff Cugliari's daily time worked was docked for a supposed "bona fide" meal period regardless of whether such a meal period was actually taken. Any time docked for illusory meal periods or meal periods that were not indeed "bona fide" meal periods constitutes compensable hours worked under the FLSA for which Plaintiff Cugliari was not compensated.

        (e)    During the applicable liability period, Defendants required Plaintiff Cugliari to test for and obtain from state governments where Defendants transact business a license authorizing Plaintiff Cugliari to originate loans in those various states. Defendants deducted these licensing fees from Plaintiff Cugliari's

1  earned wages in violation of and without his express written authorization under

2  North Carolina General Statute § 95-25.8.

3        (f)    Defendants also did not timely pay to Plaintiff Cugliari all

4  earned overtime compensation, wages for missed meal break periods, and

5  deductions from his earned wages on or before the next regular payday after

6  separation or the first regular payday after the amounts due became calculable as

7  required by North Carolina General Statute § 95-25.7.

8        21.   <u>Plaintiff Angela Richardson:</u>

9        (a)    Plaintiff Angela Richardson is a resident of Orange County,

10  California. Plaintiff Richardson worked as a Loan Processor for Defendants in

11  offices located in Orange County, California, from in or about June of 2005 through

12  in or about August of 2005.

13        (b)    From in or about June of 2005 through in or about August of

14  2005, Plaintiff Richardson, like other similarly situated Loan Processors during that

15  period of time, was paid an hourly wage and, in addition, a supposed monthly

16  "commission" based on her "productivity score." Under this plan, Defendants'

17  productivity scoring system compares the "revenue credit" generated by the Loan

18  Processor during the month against the hours required to produce such revenue

19  credit. Revenue credit is based on the loans closed by the Loan Processor during

20  the month. The revenue credit for each loan is an amount that is fixed by

21  Defendants plus any "overage revenue" as such term is defined in Defendants'

22  pricing guidelines. This is not a bona fide commission plan. Loan Processors,

23  including Plaintiff Richardson, are not primarily engaged in selling Defendants'

24  loans and, in addition, their "productivity score" compensation does not represent a

25  percentage of the loan price. Subsequent to Plaintiff Richardson's tenure with the

26  company, Loan Processors were paid the greater of a fixed "monthly minimum

27  incentive" or supposed "commissions" on each funded loan based on the product

28  type of the loan and corresponding ranges of "production points" tied to fixed dollar

1   values. This is also not a bona fide commission plan. Loan Processors are not

2   primarily engaged in selling Defendants' loans and, in addition, the "production

3   points" compensation under this plan does not represent a percentage of the loan

4   price. During the applicable liability period, all Underwriter and Funder Class

5   Members were compensated under substantially similar pay plans.

6             (c)    During the applicable liability period, Plaintiff Richardson

7   regularly worked in excess of eight (8) hours per day and forty (40) hours per week,

8   but was not paid properly calculated overtime compensation for all hours she

9   worked in excess of eight (8) hours per day and forty (40) hours per week in

10  violation of both federal and California law.

11            (d)    During the applicable liability period, Plaintiff Richardson was

12  not afforded meal breaks in compliance with California Labor Code §§ 226.7 and

13  512. Plaintiff Richardson regularly worked in excess of five (5) hours per day and

14  was not afforded a one-half hour meal period during which she was relieved of all

15  duties. Plaintiff Richardson also regularly worked in excess of ten (10) hours per

16  day and was not afforded a second one-half hour meal period during which she was

17  relieved of all duties. Plaintiff Richardson also was not afforded meal breaks

18  meeting the requirements of 29 C.F.R. §§ 785.18 and 785.19. Plaintiff Richardson

19  regularly worked a full day without taking a meal period of at least one-half hour

20  duration or was not relieved of all duties during meal periods. Nevertheless,

21  Plaintiff Richardson's daily time worked was docked for a supposed "bona fide"

22  meal period regardless of whether such a meal period was actually taken. Any time

23  docked for illusory meal periods or meal periods that were not indeed "bona fide"

24  meal periods constitutes compensable hours worked under the FLSA for which

25  Plaintiff Richardson was not compensated.

26            (e)    Defendants also did not timely pay to Plaintiff Richardson all

27  earned overtime compensation and wages for missed meal break periods

28  ///

1   immediately upon or within 72 hours of the termination of her employment

2   relationship in violation of California Labor Code §§ 201-203.

3       (f)    During the applicable liability period, and to her injury,

4   Defendants did not furnish to Plaintiff Richardson at the time of each payment of

5   wages an itemized statement in writing accurately showing all of the information

6   required by California Labor Code § 226(a), including, but not limited to, the total

7   hours she worked during the pay period, all applicable hourly rates in effect during

8   the pay period, and the corresponding number of hours she worked at each hourly

9   rate during the pay period.

10      22.    <u>Plaintiff Brian Johanson:</u>

11      (a)    Plaintiff Brian Johanson is a resident of Orange County,

12  California. Plaintiff Johanson worked as a Mortgage Banker for Defendants in

13  offices located in Orange County, California, during the applicable liability period.

14      (b)    During the applicable liability period Plaintiff Johanson, like

15  other similarly situated Mortgage Bankers, was for a time paid a minimum monthly

16  incentive of $2,000.00 and, in addition, what Defendants mischaracterized as

17  "commissions" on the loans he originated. This pay structure included an

18  improperly calculated overtime component. Subsequently Plaintiff Johanson, like

19  other similarly situated Mortgage Bankers, was paid either the minimum monthly

20  incentive of $2,000.00 or his so-called "commissions," whichever was greater.

21  Payment of the monthly minimum incentive was a "draw" or advance and was

22  subtracted from his "commission" payments if, after subtracting the draw, the

23  remaining amount of "commission" earnings exceeded the monthly minimum

24  incentive amount. This pay structure also included an improperly calculated

25  overtime component. Under these so-called "commission" plans, each loan

26  originated by Plaintiff Johanson was assigned a "point" value tied to the type of the

27  loan. The total "points" earned by Plaintiff Johanson were calculated at the end of

28  the month, after which each point was assigned a "tiered" fixed dollar value which

1   varied depending on Plaintiff Johanson's total point volume. These are not bona

2   fide commission plans because the "point" value of a given loan and the

3   corresponding fixed dollar amount assigned to each point based on Plaintiff

4   Johanson's total point volume does not represent a percentage of the price of the

5   originated loan or the fee charged by Defendants for utilizing the Lender Exchange

6   network.

7        (c)    During the applicable liability period, Plaintiff Johanson

8   regularly worked in excess of eight (8) hours per day and forty (40) hours per week,

9   but was not paid properly calculated overtime compensation for all hours he

10  worked in excess of eight (8) hours per day and forty (40) hours per week in

11  violation of both federal and California law.

12       (d)    During the applicable liability period, Plaintiff Johanson was not

13  afforded meal breaks in compliance with California Labor Code §§ 226.7 and 512.

14  Plaintiff Johanson regularly worked in excess of five (5) hours per day and was not

15  afforded a one-half hour meal period during which he was relieved of all duties.

16  Plaintiff Johanson also regularly worked in excess of ten (10) hours per day and

17  was not afforded a second one-half hour meal period during which he was relieved

18  of all duties. Plaintiff Johanson also was not afforded meal breaks meeting the

19  requirements of 29 C.F.R. §§ 785.18 and 785.19. Plaintiff Johanson regularly

20  worked a full day without taking a meal period of at least one-half hour duration or

21  was not relieved of all duties during meal periods. Nevertheless, Plaintiff

22  Johanson's daily time worked was docked for a supposed "bona fide" meal period

23  regardless of whether such a meal period was actually taken. Any time docked for

24  illusory meal periods or meal periods that were not indeed "bona fide" meal periods

25  constitutes compensable hours worked under the FLSA for which Plaintiff

26  Johanson was not compensated.

27       (e)    During the applicable liability period, Defendants required

28  Plaintiff Johanson to test for and obtain from state governments where Defendants

transact business a license authorizing Plaintiff Johanson to originate loans in those various states. Defendants deducted these licensing fees from the earned wages of Plaintiff Johanson in violation of California Labor Code § 221 and without his express written authorization under California Labor Code § 224. In addition, Plaintiff Johanson made "under the table" out-of-pocket monetary payments directly to Loan Processors as additional compensation for the performance of their job duties. Plaintiff Johanson was also required to purchase a headset in violation of California Labor Code § 221 so he could make and receive customer loan-related telephone calls more efficiently. The unauthorized deductions from earned wages, payments to Loan Processors, and expense for purchasing a headset constitute losses incurred by Plaintiff Johanson in the course and scope of his employment and in direct consequence of the discharge of his duties. Defendants did not indemnify Plaintiff Johanson for these losses in violation of California Labor Code § 2802.

(f)    Defendants also did not timely pay to Plaintiff Johanson all earned overtime compensation, wages for missed meal break periods, and deductions from his earned wages for licensing fees immediately upon or within 72 hours of the termination of his employment relationship in violation of California Labor Code §§ 201-203.

(g)    During the applicable liability period, and to his injury, Defendants did not furnish to Plaintiff Johanson at the time of each payment of wages an itemized statement in writing accurately showing all of the information required by California Labor Code § 226(a), including, but not limited to, the total hours he worked during the pay period, all applicable hourly rates in effect during the pay period, and the corresponding number of hours he worked at each hourly rate during the pay period.

///

///

23.   Plaintiff Brendan Dwyer:

(a)   Plaintiff Brendan Dwyer is a resident of Orange County, California. Plaintiff Dwyer worked as a Mortgage Banker for Defendants in offices located in Orange County, California, during the applicable liability period.

(b)   During the applicable liability period Plaintiff Dwyer, like other similarly situated Mortgage Bankers, was paid for a time a minimum monthly incentive of $2,000.00 and, in addition, what Defendants mischaracterized as "commissions" on the loans he originated. This pay structure included an improperly calculated overtime component. Subsequently Plaintiff Dwyer, like other similarly situated Mortgage Bankers, was paid either the minimum monthly incentive of $2,000.00 or his so-called "commissions," whichever was greater. Payment of the monthly minimum incentive was a "draw" or advance and was subtracted from his "commission" payments if, after subtracting the draw, the remaining amount of "commission" earnings exceeded the monthly minimum incentive amount. This pay structure also included an improperly calculated overtime component. Under these so-called "commission" plans, each loan originated by Plaintiff Dwyer was assigned a "point" value tied to the type of the loan. The total "points" earned by Plaintiff Dwyer were calculated at the end of the month, after which each point was assigned a "tiered" fixed dollar value which varied depending on Plaintiff Dwyer's total point volume. These are not bona fide commission plans because the "point" value of a given loan and the corresponding fixed dollar amount assigned to each point based on Plaintiff Dwyer's total point volume does not represent a percentage of the price of the originated loan or the fee charged by Defendants for utilizing the Lender Exchange network.

(c)   During the applicable liability period, Plaintiff Dwyer regularly worked in excess of eight (8) hours per day and forty (40) hours per week, but was not paid properly calculated overtime compensation for all hours he worked in

///

24

excess of eight (8) hours per day and forty (40) hours per week in violation of both federal and California law.

(d)     During the applicable liability period, Plaintiff Dwyer was not afforded meal breaks in compliance with California Labor Code §§ 226.7 and 512. Plaintiff Dwyer regularly worked in excess of five (5) hours per day and was not afforded a one-half hour meal period during which he was relieved of all duties. Plaintiff Dwyer also regularly worked in excess of ten (10) hours per day and was not afforded a second one-half hour meal period during which he was relieved of all duties. Plaintiff Dwyer also was not afforded meal breaks meeting the requirements of 29 C.F.R. §§ 785.18 and 785.19. Plaintiff Dwyer regularly worked a full day without taking a meal period of at least one-half hour duration or was not relieved of all duties during meal periods. Nevertheless, Plaintiff Dwyer's daily time worked was docked for a supposed "bona fide" meal period regardless of whether such a meal period was actually taken. Any time docked for illusory meal periods or meal periods that were not indeed "bona fide" meal periods constitutes compensable hours worked under the FLSA for which Plaintiff Dwyer was not compensated.

(e)     During the applicable liability period, Defendants required Plaintiff Dwyer to test for and obtain from state governments where Defendants transact business a license authorizing Plaintiff Dwyer to originate loans in those various states. Defendants deducted these licensing fees from the earned wages of Plaintiff Dwyer in violation of California Labor Code § 221 and without his express written authorization under California Labor Code § 224. In addition, Plaintiff Dwyer made "under the table" out-of-pocket monetary payments directly to Loan Processors as additional compensation for the performance of their job duties. Plaintiff Dwyer was also required to purchase a headset in violation of California Labor Code § 221 so he could make and receive customer loan-related telephone calls more efficiently. The unauthorized deductions from earned wages, payments

1    to Loan Processors, and expense for purchasing a headset constitute losses incurred

2    by Plaintiff Dwyer in the course and scope of his employment and in direct

3    consequence of the discharge of his duties.  Defendants did not indemnify Plaintiff

4    Dwyer for these losses in violation of California Labor Code § 2802.

5    　　　　　(f)　　　Defendants also did not timely pay to Plaintiff Dwyer all earned

6    overtime compensation, wages for missed meal break periods, and deductions from

7    his earned wages for licensing fees immediately upon or within 72 hours of the

8    termination of his employment relationship in violation of California Labor Code

9    §§ 201-203.

10   　　　　　(g)　　　During the applicable liability period, and to his injury,

11   Defendants did not furnish to Plaintiff Dwyer at the time of each payment of wages

12   an itemized statement in writing accurately showing all of the information required

13   by California Labor Code § 226(a), including, but not limited to, the total hours he

14   worked during the pay period, all applicable hourly rates in effect during the pay

15   period, and the corresponding number of hours he worked at each hourly rate

16   during the pay period.

17   **B.    Defendants**

18   　　　　　24.    Lending Tree, Inc., a Delaware corporation headquartered in Charlotte,

19   North Carolina, launched in or about 1998 what allegedly became the nation's

20   leading online Internet lending exchange ("LendingTree.com") intended to connect

21   mortgage and home equity loan borrowers with multiple lenders that would

22   compete for their business.  Lending Tree, Inc. was subsequently converted to and

23   currently operates the "Lending Tree Lender Exchange" as Lending Tree, LLC, a

24   Delaware limited liability company.  The management, ownership, business and

25   operations of the company were unaffected by the conversion to Lending Tree,

26   LLC.  In or about 2003, Lending Tree, LLC was acquired by IAC/InterActiveCorp.

27   　　　　　25.    In connecting mortgage and home equity loan borrowers with

28   participating lenders through its "Lender Exchange," Lending Tree, LLC claims

1    that it acts in a brokerage capacity.  It describes itself as a computerized mortgage

2    broker, not a lender.  After the borrower submits a mortgage or home equity loan

3    application on the LendingTree.com site, Lending Tree, LLC claims that it

4    transmits the borrower's completed loan request to a number of supposedly

5    competing lenders in its Lender Exchange network.  Interested lenders participating

6    in the Lender Exchange ideally submit competing offers for the loan which are

7    transmitted to the borrower by Lending Tree, LLC.  After an arranged loan is

8    processed and closed, Lending Tree, LLC is paid a fee by the participating lender.

9           26.    To expand beyond being merely a mortgage broker and break into the

10   direct lending business, in 2004 Lending Tree, LLC acquired as a wholly-owned

11   subsidiary Home Loan Center, Inc., touted to be the industry's leading Internet-

12   based ("HomeLoanCenter.com") online direct mortgage lender.  As a direct lender,

13   Home Loan Center, Inc., which also does business under the name "Lending Tree

14   Loans," represents that it works directly with the borrower to sell, process, approve,

15   and fund a mortgage loan.  As a direct lender, Home Loan Center, Inc. makes its

16   money by charging fees and points to the borrower.

17          27.    In practice, the mortgage brokerage business carried out by Lending

18   Tree, LLC through its Lender Exchange network and the direct lending business

19   conducted by Home Loan Center, Inc. always were and remain inseparable and

20   non-distinct.  Defendants employ, and during the applicable liability period have

21   employed, the Mortgage Banker,Loan Processor, Underwriter and Funder Class

22   Members, including Plaintiffs, to conduct and carry out both Lending Tree, LLC's

23   online mortgage brokerage business and Home Loan Center, Inc. dba Lending Tree

24   Loans' online direct lending business.  While the majority of the Mortgage Banker,

25   Loan Processor, Underwriter and Funder Class Members currently work or

26   formerly worked at Defendants' facilities located in Irvine, California, a substantial

27   number of them are or were based in Charlotte, North Carolina.

28   ///

28.    Defendants' founders and executive officers directed, authorized, ratified, and/or participated in the conduct that gives rise to the claims asserted herein, and derived personal financial benefit from such conduct.  Plaintiffs are ignorant of the true names or capacities of the Defendants sued herein under the fictitious named DOES 1 through 10, inclusive.  Each Defendant acted in all respects pertinent to this action as the agent of the others, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each Defendant are therefore legally attributable to the other Defendants.

## V.    FACTUAL BACKGROUND FOR ALL CLAIMS

### A.    Business Operations of Defendants

29.    Defendants operate, and at all times during the applicable liability period have operated, facilities in Irvine, California, and Charlotte, North Carolina, where they provide to the general public on a nationwide basis mortgage loan brokerage and direct lending services through their "LendingTree.com" and "HomeLoanCenter.com" websites and Lender Exchange network.  Defendants are computerized mortgage brokers and direct lenders that specialize in either matching mortgage or home equity loan borrowers with lenders from their network or working directly with the borrower to sell, process, approve, and fund a mortgage loan.  At their facilities in Irvine, California, and Charlotte, North Carolina, Defendants employed, and continue to employ, numerous Mortgage Bankers, Loan Processors, Underwriters and Funders to arrange, originate, process, facilitate, underwrite, sell and fund the large volume of loans brokered and/or sold by Defendants.  Each Mortgage Banker, Loan Processor, Underwriter and Funder Class Member currently is or formerly was employed by Defendants at its facilities in either Irvine, California, or Charlotte, North Carolina.  Plaintiffs are informed and believe and on that basis allege that, during the applicable liability period, Defendants have employed in excess of 2500 persons as Mortgage Bankers, Loan

///

1  Processors, Underwriters and Funders at their Irvine, California facilities and in

2  excess of 300 Mortgage Bankers at their facilities in Charlotte, North Carolina.

3  **B.    Duties and Pay Provisions of Class Members**

4      30.    Mortgage Bankers report to and work under the close supervision of

5  their respective supervisors and other corporate management employees.  The job

6  duties of Mortgage Bankers do not entail significant discretionary decision making

7  or supervision of others.  Mortgage Bankers are Defendants' front line sales force.

8  They are production employees rather than administrators charged with managing

9  Defendants' overall business operations.  Mortgage Bankers take leads generated

10  from Defendants' marketing efforts and act as the borrowers' contact person and

11  liaison throughout the loan origination and sale process.  The job duties of

12  Mortgage Bankers include reviewing loan applications submitted by prospective

13  borrowers; making telephone contact with those potential borrowers; determining

14  the type of loan product the borrowers are interested in and selling them that

15  product; running the prospective borrowers' credit; informing the borrowers

16  regarding lender pricing and/or submitting the borrowers' application to lenders in

17  the network; securing the borrowers' payment to lock in the interest rate on the loan

18  selected; obtaining necessary conditions, stipulations, and loan-related

19  documentation from the prospective borrowers; packaging and submitting the

20  prospective borrowers' loan submission for processing; and acting as the

21  borrowers' primary contact person throughout the rest of the loan origination

22  process.

23      31.    Loan Processors, Underwriters and Funders also report to and work

24  under the close supervision of their respective managers and other corporate

25  management employees.  The job duties of Loan Processors, Underwriters and

26  Funders do not entail significant discretionary decision making or supervision of

27  others.  The primary duties of Loan Processors, Underwriters and Funders pertain

28  to processing, underwriting and funding in various respects the mortgage-based

29

1  loans that Defendants sell to the general public.  For example, when a loan file is
2  assigned to a Loan Processor by their Processing Manager, the Loan Processor's
3  job duties include making an introductory call to the borrower to confirm the loan
4  terms and borrower's personal information and to request from the borrower any
5  necessary loan-related documentation; completing an updated application after
6  receiving from the borrower and confirming the accuracy of all loan-related
7  information and documentation; organizing the loan file and submitting it to
8  Defendants' underwriting department; opening escrow; ordering title reports;
9  drawing from Defendants' computer system and proofing the loan documents
10  necessary for signing; coordinating the loan document signing appointment;
11  submitting the signed loan documents to Defendants' funding department; advising
12  the borrower when the loan has funded; and otherwise coordinating their processing
13  functions with Defendants' loan origination and sales personnel.  Underwriters
14  process Defendants' loans to ensure that the loans conform to Defendants'
15  underwriting guidelines.  Funders work closely with Underwriters as well as Loan
16  Processors to facilitate and process the actual transfer of loan funds to the borrower.
17       32.    During the applicable liability period, Mortgage Bankers were all
18  compensated under similar pay structures.  For a time, Mortgage Bankers were paid
19  minimum wage and, in addition, what Defendants mischaracterized as
20  "commissions" on the loans they originated.  Subsequently, Mortgage Bankers
21  were paid a minimum monthly incentive of $2,000.00 and, in addition, so-called
22  "commissions."  Currently, Mortgage Bankers are paid either the minimum
23  monthly incentive of $2,000.00 or their so-called "commissions," whichever is
24  greater.  Currently, payment of the monthly minimum incentive is a "draw" or
25  advance subtracted from "commission" payments if, after subtracting the draw, the
26  remaining amount of "commission" earnings exceeds the minimum incentive
27  amount.  Each of these pay structures include or included an improperly calculated
28  overtime component.  Under the so-called "commission" part of these plans, each

1  loan originated by the Mortgage Banker is assigned a "point" value tied to the type
2  of the loan.  The total "points" earned by the Mortgage Banker are calculated at the
3  end of the month, after which each point is assigned a "tiered" fixed dollar value
4  which varies depending on the Mortgage Banker's total point volume.  These are
5  not bona fide commission plans because the "point" value of a given loan and the
6  corresponding fixed dollar amount assigned to each point based on the Mortgage
7  Broker's total point volume does not represent a percentage of the price of the
8  originated loan or the fee charged by Defendants for utilizing the Lender Exchange
9  network.

10       33.     During the applicable liability period, Loan Processors were initially
11  paid an hourly wage and, in addition, a supposed monthly "commission" based on
12  their "productivity score."  Defendants' productivity scoring system compares the
13  "revenue credit" generated by the Loan Processor during the month against the
14  hours required to produce such revenue credit.  Revenue credit is based on the loans
15  closed by the Loan Processor during the month.  The revenue credit for each loan is
16  an amount that is fixed by Defendants plus any "overage revenue" as such term is
17  defined in Defendants' pricing guidelines.  Subsequently, Loan Processors were
18  paid the greater of a fixed "monthly minimum incentive" or supposed
19  "commissions" on each funded loan based on the product type of the loan and
20  corresponding ranges of "production points" tied to fixed dollar values.  These are
21  not bona fide commission plans.  Loan Processors are not primarily engaged in
22  selling Defendants' loans and, in addition, their supposed "commission"
23  compensation does not represent a percentage of the loan price.  During the
24  applicable liability period, all Underwriters and Funders were compensated under
25  substantially similar pay plans.

26       34.     Because of their job duties and pay structure, Mortgage Bankers, Loan
27  Processors, Underwriters and Funders do not fall within the scope of any
28  ///

1    potentially applicable exemptions under the FLSA or California or North Carolina

2    wage and hour laws.

3    **C.    Failure to Pay Overtime Compensation to Class Members**

4    35.    Defendants had, and continue to have, a policy and practice of

5    imposing minimum weekly and/or monthly loan origination and production

6    requirements on Mortgage Bankers, Loan Processors, Underwriters and Funders.

7    Failure to meet these minimum requirements subjected, and continues to subject,

8    Mortgage Bankers, Loan Processors, Underwriters and Funders to potential

9    discipline, including termination.  In order to meet and preferably exceed these

10   minimum requirements, the Mortgage Banker, Loan Processor, Underwriter and

11   Funder Class Members, including Plaintiffs, were generally required or permitted to

12   work in excess of ten (10) hours per day, Monday through Friday.  They were also

13   regularly required or permitted to work significant additional hours on Saturdays

14   and/or Sundays.  The Mortgage Banker, Loan Processor, Underwriter and Funder

15   Class Members, including Plaintiffs, regularly worked in excess of 55 to 60 hours

16   per week.

17   36.    Although Defendants utilized a timekeeping system that ostensibly

18   required Mortgage Bankers, Loan Processors, Underwriters and Funders to "clock

19   in" and "clock out," the time records generated from this system are incorrect and

20   unreliable.  As a matter of uniform company policy and practice, Defendants

21   required or knowingly permitted Mortgage Bankers, Loan Processors, Underwriters

22   and Funders to perform substantial "off-the-clock" work.  For example, Mortgage

23   Bankers, Loan Processors, Underwriters and Funders were required or knowingly

24   permitted to perform work before they "clocked in" and/or were required or

25   knowingly permitted to "clock out" and continue working.  It was also a matter of

26   uniform company policy and practice for management (team leaders), with the

27   knowledge and consent of higher management, to alter time records after-the-fact

28   ///

32

1   and prior to the preparation of payroll to reflect fewer hours than the number

2   actually worked, as well as to reflect the taking of illusory meal breaks.

3       37.    In conformance with the policies and practices of Defendants during

4   the applicable liability period, the Mortgage Banker, Loan Processor, Underwriter

5   and Funder Class Members, including Plaintiffs, regularly worked in excess of

6   eight (8) hours per day and/or forty (40) hours per week, but were not paid properly

7   calculated overtime compensation for all hours worked in excess of eight (8) hours

8   per day and/or forty (40) hours per week.  This practice does not comply with the

9   FLSA, 29 U.S.C. § 207, and California Labor Code § 510, and is also a separate

10  and independent violation of California Business and Professions Code § 17200

11  since it constitutes an unlawful and unfair business practice.

12  **D.    Failure to Afford Meal Breaks to Class Members**

13      38.    In part because they wanted their minimum loan origination and

14  production requirements met, during the applicable liability period Defendants also

15  had, and continue to have, a uniform policy and practice of failing to afford,

16  enforce, self-police, or affirmatively ensure the taking of lawful and "bona fide"

17  duty-free meal break periods by their Mortgage Banker, Loan Processor,

18  Underwriter and Funder employees, including Plaintiffs.  Defendants regularly and

19  knowingly permitted, and continue to permit, the Mortgage Banker, Loan

20  Processor, Underwriter and Funder Class Members, including Plaintiffs, to work in

21  excess of five (5) hours per day without affording them a meal period of at least

22  one-half hour during which they are relieved of all duties.  Defendants also

23  knowingly permitted, and continue to permit, the Class Members, including

24  Plaintiffs, to work in excess of ten (10) hours per day without affording them a

25  second meal period of at least one-half hour during which they are relieved of all

26  duties.  With respect to the California-based Plaintiffs and California-based

27  Mortgage Banker, Loan Processor, Underwriter and Funder Class Members, this

28  policy and practice fails to comply with California Labor Code §§ 226.7 and 512

33

and I.W.C. Wage Order Nos. 4-2000 and 4-2001. Accordingly, the California-based Plaintiffs and California-based Mortgage Banker, Loan Processor, Underwriter and Funder Class Members are entitled to an additional hour of pay at their regular rate for each day they were not afforded a lawful meal period. As for the California-based Plaintiffs and Class Members, this also constitutes an unlawful and unfair business practice under California Business and Professions Code §§ 17200-17208. This policy and practice also does not comply with 29 C.F.R. §§ 785.18 and 785.19. Plaintiffs and all Mortgage Banker, Loan Processor, Underwriter and Funder Class Members regularly worked a full day without taking a meal period of at least one-half hour duration or were not relieved of all duties during meal periods. Nevertheless, their daily time worked was docked for a supposed "bona fide" meal period regardless of whether such a meal period was actually taken. Any time docked for illusory meal periods or meal periods that were not indeed "bona fide" meal periods constitutes compensable hours worked under the FLSA for which Plaintiffs and all Class Members were not compensated.

39.    To the extent Defendants' time records reflect the taking of meal breaks by Plaintiffs and the Class Members, such records are incorrect and unreliable. As a matter of uniform company policy and practice, Defendants routinely encouraged and knowingly permitted the Mortgage Banker, Loan Processor, Underwriter and Funder Class Members, including Plaintiffs, to skip or work through meal periods so long as they artificially "clocked out" of the system so that the records reflected a meal break. It was also a matter of company policy and practice for team leaders, with the knowledge and consent of higher management, to alter time records after-the-fact and prior to the preparation of payroll to reflect the taking of illusory meal breaks.

**E.    Unlawful Deductions and Failure to Indemnify Class Members**

40.    Throughout the applicable liability period, Defendants also had, and continue to have, a uniform policy and practice of requiring the Mortgage Banker

34

1   Plaintiffs and the Mortgage Banker Class Members to test for and obtain from state

2   governments where Defendants transact business a license authorizing the

3   Mortgage Banker to originate loans in those various states.  Defendants are charged

4   and pay a fee to each state licensing authority for issuance of the required license

5   for each Mortgage Banker.  Defendants had, and continue to have, a uniform policy

6   and practice of deducting or withholding these licensing fees from the earned wages

7   of the California-based Plaintiffs and Mortgage Banker Class Members in violation

8   of California Labor Code § 221 and without their express written authorization

9   under California Labor Code §224.  Defendants also had, and continue to have, a

10  uniform policy and practice of deducting or withholding these licensing fees from

11  the earned wages of the North Carolina-based Plaintiff and Mortgage Banker Class

12  Members in violation of and without their express written authorization under

13  North Carolina General Statute § 95-25.8.

14        41.    Throughout the applicable liability period, Defendants also had, and

15  continue to have, a uniform policy and practice of requiring or knowingly

16  permitting the California-based Mortgage Banker Plaintiffs and Mortgage Banker

17  Class Members to make "under the table" out-of-pocket monetary payments

18  directly to California-based Loan Processors, who are also employees of

19  Defendants, as additional compensation for performing their job duties.  This policy

20  resulted in the California-based Mortgage Banker Plaintiffs and Mortgage Banker

21  Class Members subsidizing Defendants' overhead and payroll expense.  Defendants

22  also had, and continue to have, a uniform policy and practice of compelling or

23  coercing Mortgage Banker Class Members to purchase a headset device so they

24  could make and receive customer loan-related telephone calls more efficiently.

25  With regard to the North Carolina-based Plaintiff and Mortgage Banker Class

26  Members, Defendants had, and continue to have, a uniform policy and practice of

27  deducting and withholding the cost of these headsets from their earned wages in

28  violation of and without their express written authorization under North Carolina

1    General Statute § 95-25.8.  The foregoing unauthorized deductions, monetary

2    payments to Loan Processors, and expenses for purchasing headsets constitute

3    losses incurred in the course and scope of the employee's employment and in direct

4    consequence of the discharge of his or her duties.  In this regard, Defendants had,

5    and continue to have, a uniform policy and practice of not indemnifying the

6    California-based Mortgage Banker Class Members for these business-related

7    expenditures.  In addition to violating California Labor Code §§ 221, 450 and 2802,

8    this constitutes an unlawful and unfair business practice under California Business

9    and Professions Code §§ 17200-17208.

10   **F.    Failure to Timely Pay Overtime Compensation, Meal Break Wages and**

11        **Deductions from Earned Wages**

12        42.    Throughout the applicable liability period, Defendants also had, and

13   continue to have, a uniform policy and practice of failing to pay Plaintiffs and the

14   Mortgage Banker, Loan Processor, Underwriter and Funder Class Members all

15   earned overtime compensation, wages for missed meal break periods, and

16   deductions from earned wages for licensing fees and/or the purchase of headsets in

17   a timely manner upon separation of employment as required by applicable law.

18   With respect to the California-based Plaintiffs and Class Members, Defendants

19   failed to pay these sums immediately upon or within 72 hours of the termination of

20   the employment relationship, thereby entitling these employees to statutory waiting

21   time penalties under California Labor Code §§ 201-203.  This constitutes an

22   unlawful and unfair business practice under California Business and Professions

23   Code §§ 17200-17208.  With respect to the North Carolina-based Plaintiff and

24   Mortgage Banker Class Members, Defendants failed to pay these sums on or before

25   the next regular payday after separation or the first regular payday after the amount

26   due became calculable as required by North Carolina General Statute § 95-25.7,

27   thereby entitling these employees to recovery of such sums, including interest and

28   liquidated damages, under North Carolina General Statute § 95-25.22.

### G.    Failure to Furnish Itemized Wage Statements to Class Members

43.    Throughout the applicable liability period, Defendants also had, and continue to have, a uniform policy and practice of knowingly and intentionally failing to furnish at the time of payment of wages to the California-based Plaintiffs and Class Members an itemized statement in writing accurately showing all of the information required by California Labor Code § 226(a), including, but not limited to, the total hours worked by the employee during the pay period, all applicable hourly rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee during the pay period.

44.    The California-based Plaintiffs and Class Members have been injured as a result of this policy and practice because, inter alia, they have not been paid properly calculated overtime to which they are entitled and the absence of accurate total hours worked or an hourly rate prevents them from challenging the amount of overtime or the overtime rate, if any, paid by Defendants. California Labor Code § 226 is violated if employees are required to perform "arithmetic computations" to determine their hours worked or hourly rates. Additionally, this lawsuit, and the difficulty and expense the California-based Plaintiffs and Class Members will encounter in attempting to reconstruct time and pay records, further evidences the injury and actual damages suffered and to be suffered as a result of Defendants' unlawful wage statements. The California-based Plaintiffs and Class Members' ability to calculate unpaid and miscalculated overtime is and will be complicated by the missing information required by California Labor Code § 226(a). The purpose of the requirement is that employees need not engage in discovery and mathematical computations to analyze and reconstruct the very information that California law requires. Defendants' policy and practice with regard to wage statements does not comply with California Labor Code § 226(a) and also constitutes a separate and independent violation of California Business and

///

1    Professions Code § 17200 since it constitutes an unlawful and unfair business

2    practice.

3                    VI.    **CLASS ACTION ALLEGATIONS**

4        45.    This action is maintainable as a class action pursuant to FRCP 23(a)

5    and 23(b)(3) as to claims for unpaid overtime compensation, unpaid wages, meal

6    break violations, unlawful deductions from earned wages, indemnity, actual

7    damages, waiting time and other statutory penalties, and attorney's fees and

8    litigation costs under the foregoing provisions of the California Labor Code,

9    California Business and Professions Code, and North Carolina General Statutes.

10   As alleged hereinabove, Plaintiffs and the Class Members have been denied

11   properly calculated overtime compensation, denied proper meal break periods, have

12   suffered improper deductions from their earned wages, have not been timely paid

13   overtime compensation and wages due and owing upon the completion of their

14   employment, have been denied indemnification for business-related expenses, and

15   have not been furnished proper itemized wage statements to their injury.  Plaintiffs

16   are representative of those other employees and are acting on behalf of their

17   interests, as well as their own, in addition to the interests of the general public in a

18   private attorney general capacity.  The similarly situated Class Members are readily

19   identifiable and locatable through Defendants' own employment records.

20       46.    Plaintiffs bring this action as a class action pursuant to FRCP 23(a)

21   and 23(b)(3) on behalf of themselves and the following class or sub-classes of

22   employees and former employees of Defendants who, within the applicable liability

23   period, worked as Mortgage Bankers, Loan Processors, Underwriters and Funders:

24       (a)    All California-based Mortgage Bankers, Loan Processors,

25   Underwriters and Funders and all North Carolina-based Mortgage Bankers who

26   were required or permitted to work in excess of forty (40) hours per week without

27   being paid properly calculated overtime compensation in violation of the FLSA, 29

28   U.S.C. § 207;

                                    38

(b)     All California-based Mortgage Bankers, Loan Processors, Underwriters and Funders who were required or permitted to work in excess of forty (40) hours per week without being paid properly calculated overtime compensation in violation of the FLSA, 29 U.S.C. § 207, and California Business and Professions Code § 17200;

(c)     All California-based Mortgage Bankers, Loan Processors, Underwriters and Funders who were required or permitted to work in excess of eight (8) hours per day or forty (40) hours per week without being paid properly calculated overtime compensation in violation of California Labor Code § 510 and California Business and Professions Code § 17200;

(d)     All California-based Mortgage Bankers, Loan Processors, Underwriters and Funders who were required or knowingly permitted to forego meal breaks in violation of California Labor Code § 512 and California Business and Professions Code § 17200;

(e)     All California-based Mortgage Bankers, Loan Processors, Underwriters and Funders and all North Carolina-based Mortgage Bankers who were required or knowingly permitted to forego "bona fide" duty-free meal breaks in violation of 29 C.F.R. §§ 785.18 and 785.19 and whose daily time worked was nevertheless docked for such meal breaks;

(f)     All California-based Mortgage Bankers who had licensing fees deducted from their earned wages without their express written authorization and were not indemnified for such deductions in violation of California Labor Code §§ 221 and 2802 and California Business and Professions Code § 17200;

(g)     All North Carolina-based Mortgage Bankers who had licensing fees and the cost of purchasing a headset from Defendants deducted from their earned wages in violation of and without their express written authorization under North Carolina General Statute § 95-25.8;

///

     (h)    All California-based Mortgage Bankers who made monetary payments to Loan Processors and who purchased from Defendants or others a headset and were not indemnified for such payments or purchase in violation of California Labor Code §§ 221, 450 and 2802 and California Business and Professions Code § 17200;

     (i)    All California-based Mortgage Bankers, Loan Processors, Underwriters and Funders who were not timely paid all wages and unauthorized deductions from earned wages at the conclusion of the employment relationship in violation of California Labor Code §§ 201-203;

     (j)    All North Carolina-based Mortgage Bankers who were not timely paid all wages and unauthorized deductions from earned wages upon separation of employment in violation of North Carolina General Statute § 95-25.7; and

     (k)    All California-based Mortgage Bankers, Loan Processors, Underwriters and Funders who to their injury were not furnished with proper itemized wage statements in violation of California Labor Code § 226(a) and California Business and Professions Code § 17200.

47.    Excluded from the foregoing class or sub-classes are all Defendants, their officers, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest.

48.    <u>Numerosity</u>.  The employees in the class or sub-classes identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such employees is unknown, Plaintiffs are informed and believe and on that basis allege that, during the applicable liability period, Defendants have employed in excess of 2500 Mortgage Bankers, Loan Processors, Underwriters and Funders at their facilities in Irvine, California and in excess of 300 Mortgage Bankers at their facilities in Charlotte, North Carolina.  The exact number is easily

///

40

1    ascertainable from Defendants' own employment records, which are presently

2    within the possession or control of Defendants.

3        49.    Commonality.  There are questions of law and fact common to the

4    Class Members which predominate over any questions affecting only individual

5    Class Members, including, but not limited to, the following:

6            (a)    Whether Defendants violated the FLSA, 29 U.S.C. § 207, by

7    failing to pay properly calculated overtime compensation to all Mortgage Bankers,

8    Loan Processors, Underwriters and Funders for all hours worked in excess of forty

9    (40) hours per week as alleged herein;

10           (b)    Whether Defendants violated the FLSA, 29 U.S.C. § 207, and

11   California Business and Professions Code §§ 17200-17208 by failing to pay

12   properly calculated overtime compensation to California-based Mortgage Bankers,

13   Loan Processors, Underwriters and Funders for all hours worked in excess of forty

14   (40) hours per week as alleged herein;

15           (c)    Whether Defendants violated California Labor Code § 510,

16   I.W.C. Wage Order Nos. 4-2000 and 4-2001, and California Business and

17   Professions Code §§ 17200-17208 by failing to pay properly calculated overtime

18   compensation to California-based Mortgage Bankers, Loan Processors,

19   Underwriters and Funders for all hours worked in excess of eight (8) hours per day

20   or forty (40) hours per week as alleged herein;

21           (d)    Whether Defendants required or knowingly permitted all

22   Mortgage Bankers, Loan Processors, Underwriters and Funders to forego "bona

23   fide" duty-free meal breaks in violation of 29 C.F.R. §§ 785.18 and 785.19 and

24   nevertheless docked their daily time worked for such meal breaks as alleged herein;

25           (e)    Whether Defendants required or knowingly permitted the

26   California-based Mortgage Bankers, Loan Processors, Underwriters and Funders to

27   forego meal breaks in violation of California Labor Code §§ 226.7 and 512, I.W.C.

28   ///

Wage Order Nos. 4-2000 and 4-2001, and California Business and Professions Code §§ 17200-17208 as alleged herein;

(f)     Whether Defendants violated California Labor Code § 221 and California Business and Professions Code §§ 17200-17208 by deducting licensing fees and the cost of purchasing a headset from the earned wages of California-based Mortgage Bankers without their express written authorization as alleged herein;

(g)     Whether Defendants violated North Carolina General Statute § 95-25.8 by deducting licensing fees and the cost of purchasing a headset from the earned wages of the North Carolina-based Mortgage Bankers without their express written authorization as alleged herein;

(h)     Whether Defendants violated California Labor Code § 2802 and California Business and Professions Code §§ 17200-17208 by failing to indemnify California-based Mortgage Bankers for unauthorized deductions of licensing fees from their earned wages, monetary payments to Loan Officers, and purchases of headsets as alleged herein;

(i)     Whether Defendants violated California Labor Code § 450 and California Business and Professions Code §§ 17200-17208 by coercing California-based Mortgage Bankers to purchase headsets from Defendants or others as alleged herein;

(j)     Whether Defendants violated California Labor Code §§ 201-203 by failing to timely pay California-based Mortgage Bankers, Loan Processors, Underwriters and Funders all overtime compensation and other wages due at the conclusion of the employment relationship as alleged herein;

(k)     Whether Defendants violated North Carolina General Statute § 95-25.7 by failing to timely pay North Carolina-based Mortgage Bankers all overtime compensation and unauthorized deductions from earned wages upon separation of employment as alleged herein; and

///

1           (I)    Whether Defendants violated California Labor Code § 226(a)

2    and California Business and Professions Code § 17200 by failing to furnish to

3    California-based Mortgage Bankers, Loan Processors, Underwriters and Funders

4    proper itemized wage statements as alleged herein.

5          50.   Typicality.  The claims of the Representative Plaintiffs are typical of

6    the claims of the Class Members they seek to represent.  Each of the Representative

7    Plaintiffs was subject to the same violations of applicable rights under the FLSA

8    and California and North Carolina law and seeks the same type of damages,

9    restitution, indemnity and other relief based on the same theories and legal grounds

10   as those of the Class Members.

11         51.   Adequacy of Representation.  The Representative Plaintiffs will fairly

12   and adequately represent and protect the interests of the Class Members.  Plaintiffs'

13   counsel are competent and experienced in litigating employment class actions,

14   consumer class actions, and other complex litigation matters, including wage and

15   hour cases for unpaid wages, unpaid overtime compensation, meal break violations,

16   and waiting time penalties similar to the claims presented in this action.

17         52.   Superiority.  This class action is superior to other available means for

18   the fair and efficient adjudication of this litigation.  The Class Members have been

19   damaged and are entitled to recovery as a result of Defendants' common and

20   uniform policies, practices and procedures.  Although the damages suffered by

21   individual Class Members may not be *de minimis*, such damages are small

22   compared to the expense and burden of individual prosecution of this litigation.

23   Individual litigants may lack the financial resources to vigorously prosecute a

24   lawsuit against corporate defendants to recover such damages.  Even if individual

25   Class Members could afford to prosecute their claims separately, individualized

26   litigation presents a potential for inconsistent or contrary judgments regarding

27   Defendants' policies and practices.  By contrast, the class action device presents far

28   ///

1    fewer management difficulties and provides the benefits of single adjudication,

2    economy of scale, and comprehensive supervision by a single court.

3        53.    Class certification is appropriate under FRCP 23(b)(3) because

4    questions of law and fact common to the Class Members predominate over any

5    questions affecting only individual Class Members. Each Class Member has been

6    damaged and is entitled to recovery by reason of Defendants' unlawful and unfair

7    policies and practices as alleged herein.

8                **VII.   COLLECTIVE ACTION ALLEGATIONS**

9        54.    This action is concurrently maintainable as an "opt-in" collective

10   action pursuant to the FLSA, 29 U.S.C. § 216(b), as to claims for overtime

11   compensation, liquidated damages or, alternatively, pre-judgment interest, and

12   attorneys' fees and costs. In addition to Plaintiffs, numerous current and former

13   Mortgage Bankers, Loan Processors, Underwriters and Funders are similarly

14   situated with regard to their job duties and pay provisions and are desirous of

15   "opting-in" to this action. Plaintiffs are representative of those other employees and

16   are acting on behalf of their interests as well as Plaintiffs' own interests in bringing

17   this action. These similarly situated employees are known to Defendants and are

18   readily identifiable and may be located through Defendants' records.

19   **VIII.    FIRST CLAIM FOR DENIAL OF OVERTIME COMPENSATION**

20           **[FLSA, 29 U.S.C. §§ 207, 211(c), 216 (b)]**

21       55.    Plaintiffs hereby incorporate by reference all prior allegations as

22   though fully set forth here.

23       56.    Under the FLSA, 29 U.S.C. § 207, Defendants are and were obligated

24   to compensate Plaintiffs and all similarly situated Mortgage Bankers, Loan

25   Processors, Underwriters and Funders at one and one-half times their regular rate

26   for all hours worked in excess of forty (40) hours in a workweek. Plaintiffs and all

27   similarly situated Mortgage Bankers, Loan Processors, Underwriters and Funders

28   are not subject to any applicable exemptions from the requirement to pay overtime

1   under federal law.  Throughout the applicable liability period, Plaintiffs and all

2   similarly situated Mortgage Bankers, Loan Processors, Underwriters and Funders

3   were regularly required or permitted to work in excess of forty (40) hours per week,

4   but were not properly paid for all such compensable overtime work.  By failing to

5   properly pay all overtime compensation due to Plaintiffs and all similarly situated

6   Mortgage Bankers, Loan Processors, Underwriters and Funders, Defendants

7   willfully, knowingly, and/or recklessly violated the provisions of the FLSA which

8   require overtime compensation to non-exempt employees.

9        57.    As a result of Defendants' policy and practice of failing to properly

10  pay overtime compensation, Plaintiffs and all similarly situated Mortgage Bankers,

11  Loan Processors, Underwriters and Funders have been damaged in that they have

12  not received wages due to them pursuant to the FLSA.

13       58.    Defendants have made it difficult to account for the unpaid overtime

14  wages earned by the Mortgage Bankers, Loan Processors, Underwriters and

15  Funders during the applicable liability period because they did not make, keep, and

16  preserve the correct hours worked by such employees as required for non-exempt

17  employees by 29 U.S.C. § 211(c).  Defendants' failure to make and retain correct

18  records of the hours worked was willful and deliberate and designed to serve

19  Defendants' policy of unlawfully failing to pay overtime wages to Mortgage

20  Bankers, Loan Processors, Underwriters and Funders.

21       59.    As a result of the unlawful acts of Defendants, Plaintiffs and all

22  similarly situated Mortgage Bankers, Loan Processors, Underwriters and Funders

23  have been deprived of overtime compensation in amounts to be determined at trial,

24  and are entitled to recovery of such amounts, liquidated damages or, alternatively,

25  pre-judgment interest, attorneys' fees and costs, and other compensation pursuant to

26  29 U.S.C. § 216(b).  Plaintiffs request relief as described below on behalf of

27  themselves, all similarly situated Mortgage Bankers, Loan Processors, Underwriters

28  and Funders, and on behalf of the general public.

## IX.  SECOND CLAIM FOR DENIAL OF OVERTIME COMPENSATION
[California Labor Code §§ 510, 1194; I.W.C. Wage Order Nos. 4-2000, 4-2001]

60.    Plaintiffs hereby incorporate by this reference all prior allegations as though fully set forth hereinafter.

61.    Under California Labor Code §§ 510 and 1194 and I.W.C. Wage Order Nos. 4-2000 and 4-2001, Defendants are and were obligated to compensate the California-based Plaintiffs and Mortgage Banker, Loan Processor, Underwriter and Funder Class Members at one and one-half times their regular rate for all hours worked in excess of forty (40) hours per workweek.  In addition, under applicable California law as referenced Defendants are and were obligated to compensate the California-based Plaintiffs and Class Members at one and one-half times their regular rate for all hours worked in excess of eight (8) hours per workday.

62.    Throughout the applicable liability period, the California-based Plaintiffs and Mortgage Banker, Loan Processor, Underwriter and Funder Class Members were regularly required or permitted to work in excess of forty (40) hours per week and/or eight (8) hours per day, but were not properly paid for all such overtime work as required by California law.  The California-based Plaintiffs and Class Members do not qualify for the "inside commissioned salesperson" exemption (I.W.C. Wage Order Nos. 4-2000 and 4-2001) or any other exemption under California law and are entitled to overtime compensation.  Plaintiffs and the California-based Mortgage Banker, Loan Processor, Underwriter and Funder Class Members do not, and did not, receive properly calculated overtime compensation for all hours worked in excess of eight (8) hours per day and forty (40) hours per week in violation of California Labor Code § 510.

63.    By failing to properly pay overtime compensation due and owing to the California-based Plaintiffs and Class Members, Defendants willfully, knowingly and/or recklessly violated California wage and hour laws which require ///

1  overtime compensation to non-exempt employees such as Mortgage Bankers, Loan

2  Processors, Underwriters and Funders.

3        64.    As a result of Defendants' policy and practice of failing to properly

4  pay overtime compensation as alleged herein, the California-based Plaintiffs and

5  Mortgage Banker, Loan Processor, Underwriter and Funder Class Members have

6  been damaged in that they have not received wages due and owing to them pursuant

7  to California wage and hour laws.

8        65.    Defendants have made it difficult to account for the unpaid overtime

9  work performed by the California-based Plaintiffs and Class Members because they

10  did not make, keep and/or preserve through records the correct hours worked by

11  such employees as required for non-exempt employees by California Labor Code §

12  1174(d) and I.W.C. Wage Order Nos. 4-2000 and 4-2001.  Defendants' failure to

13  make and retain correct records of the hours worked by the California-based

14  Plaintiffs and Class Members was willful and deliberate and designed to serve

15  Defendants' policy and practice of failing to properly pay overtime compensation to

16  persons employed as Mortgage Bankers, Loan Processors, Underwriters and

17  Funders.

18        66.    As a result of the foregoing unlawful acts of Defendants, the

19  California-based Plaintiffs and Mortgage Banker, Loan Processor, Underwriter and

20  Funder Class Members have been deprived and continue to be deprived of overtime

21  compensation in amounts to be determined at the time of trial, and are entitled to

22  recovery of such amounts together with interest, waiting time penalties, attorneys'

23  fees, litigation costs, and other compensation.  The California-based Plaintiffs

24  request relief as described below on behalf of themselves, all similarly situated

25  California-based Class Members, and on behalf of the general public.

26  ///

27  ///

28  ///

## X.    THIRD CLAIM FOR FAILURE TO PAY WAGES FOR
## COMPENSABLE MEAL BREAK PERIODS

**[California Labor Code §§ 226.7, 512; I.W.C. Wage order Nos. 4-2000, 4-2001]**

67.    Plaintiffs hereby incorporate by this reference all prior allegations as though fully set forth hereinafter.

68.    Throughout the applicable liability period, the California-based Plaintiffs and Class Members regularly worked in excess of five (5) hours per day without being afforded a proper meal break of at least 30 minutes during which they were relieved of all duties, and regularly worked in excess of ten (10) hours per day without being afforded another such meal break as required by California Labor Code §§ 226.7 and 512, as well as I.W.C. Wage order Nos. 4-2000 and 4-2001.

69.    As a result of its failure to afford proper meal break periods, Defendants are liable to the California-based Plaintiffs and Mortgage Banker, Loan Processor, Underwriter and Funder Class Members for one hour of additional pay at their regular rate of compensation for each workday that proper meal break periods were not provided pursuant to California Labor Code §§ 226.7 and 512, as well as I.W.C. Wage order Nos. 4-2000 and 4-2001.  The California-based Plaintiffs request relief as described below on behalf of themselves, all similarly situated California-based Class Members, and on behalf of the general public.

## XI.    FOURTH CLAIM FOR UNAUTHORIZED DEDUCTIONS
## FROM EARNED WAGES, FAILURE TO INDEMNIFY
## AND COERCED PURCHASES

**[California Labor Code §§ 221, 450 and 2802]**

70.    Plaintiffs hereby incorporate by this reference all prior allegations as though fully set forth hereinafter.

71.    California Labor Code § 221 prohibits Defendants from collecting or receiving from the California-based Plaintiffs and Mortgage Bankers any part of the

1    wages theretofore paid to them.  California Labor Code § 450 prohibits Defendants

2    from compelling or coercing the California-based Plaintiffs and Mortgage Bankers

3    to patronize Defendants or any other person in the purchase of any thing of value.

4    California Labor Code § 2802(a) requires Defendants to indemnify the California-

5    based Plaintiffs and Mortgage Bankers for all necessary expenditures or losses

6    incurred by them in the course and scope of their employment and in direct

7    consequence of the discharge of their duties.  Furthermore, California Labor Code

8    § 2802(b) provides that all awards for reimbursement of such necessary

9    expenditures or losses shall carry interest at the same rate as judgments in civil

10   actions, and that such interest shall accrue from the date on which the expenditure

11   or loss was incurred.

12        72.    Throughout the applicable liability period, Defendants had, and

13   continue to have, a uniform policy and practice of deducting loan origination

14   licensing fees from the earned wages of the California-based Plaintiffs and

15   Mortgage Bankers in violation of California Labor Code § 221 and without their

16   express written authorization under California Labor Code § 224.  In addition,

17   Defendants had, and continue to have, a uniform policy and practice of requiring or

18   knowingly permitting the California-based Plaintiffs and Mortgage Bankers to

19   make "under the table" out-of-pocket monetary payments directly to Loan

20   Processors, as well as a uniform policy and practice of compelling and coercing

21   them to purchase from Defendants or others with their own funds a headset

22   telephone device in violation of California Labor Code § 450.  These unauthorized

23   deductions from earned wages, payments to Loan Processors, and expenses for

24   purchasing headsets constitute losses incurred in the course and scope of the

25   employee's employment and in direct consequence of the discharge of his or her

26   duties.  In this regard, Defendants had, and continue to have, a uniform policy and

27   practice of not indemnifying the California-based Plaintiffs and Mortgage Bankers

28   for these business-related expenditures.  In addition to violating California Labor

1    Code §§ 221, 450 and 2802, this constitutes an unlawful and unfair business

2    practice under California Business and Professions Code §§ 17200-17208.

3        73.    As a result of Defendants' unlawful and unauthorized deduction of

4    loan origination licensing fees from the earned wages of the California-based

5    Plaintiffs and Mortgage Bankers, and as a result of Defendants' failure to indemnify

6    them for the foregoing necessary and required losses and expenses incurred by

7    them in the course and scope of their employment and in direct consequence of the

8    discharge of their duties, Defendants are liable to the California-based Plaintiffs and

9    Mortgage Banker Class Members for reimbursement and restitution of such losses,

10   expenses and deductions from earned wages, including interest thereon accrued

11   from the date on which each deduction was made or expense or loss was incurred.

12   The California-based Plaintiffs request relief as described below on behalf of

13   themselves, all similarly situated California-based Mortgage Bankers, and on behalf

14   of the general public.

15        **XII.   FIFTH CLAIM FOR UNAUTHORIZED DEDUCTIONS**

16                           **FROM EARNED WAGES**

17        **[North Carolina General Statute §§ 95-25.8 and 95-25.22]**

18        74.    Plaintiffs hereby incorporate by this reference all prior allegations as

19   though fully set forth hereinafter.

20        75.    Throughout the applicable liability period, Defendants had, and

21   continue to have, a uniform policy and practice of deducting loan origination

22   licensing fees and the cost of purchasing a headset telephone device from the

23   earned wages of the North Carolina-based Plaintiff and Mortgage Bankers without

24   their express written authorization in violation of North Carolina General Statute

25   § 95-25.8. Defendants made, and continue to make, these unauthorized deductions

26   in bad faith and with knowledge that such unauthorized withholding and diversion

27   of earned wages are a violation of North Carolina law.

28   ///

76.    As a result of Defendants' unlawful and unauthorized deduction of loan origination licensing fees and the cost of purchasing a headset from the earned wages of the North Carolina-based Plaintiff and Mortgage Bankers, Defendants are liable to these affected employees for the amount of such deductions, including interest thereon accrued at the legal rate, pursuant to North Carolina General Statute § 95-25.22(a). In addition, Defendants are liable to the North Carolina-based Plaintiff and Mortgage Bankers for liquidated damages in an amount equal to the amount of unauthorized deductions pursuant to North Carolina General Statute § 95-25.22(a)(1), as well as reasonable attorney's fees and litigation costs pursuant to North Carolina General Statute § 95-25.22(d). The North Carolina-based Plaintiff requests relief as described below on behalf of himself and all similarly situated North Carolina-based Mortgage Bankers.

## XIII. SIXTH CLAIM FOR FAILURE TO TIMELY PAY WAGES AT CONCLUSION OF THE EMPLOYMENT RELATIONSHIP
### [California Labor Code §§ 201-203]

77.    Plaintiffs hereby incorporate by this reference all prior allegations as though fully set forth hereinafter.

78.    California Labor Code §§ 201 and 202 require Defendants to timely pay all wages due and owing to all former California-based Mortgage Bankers, Loan Processors, Underwriters and Funders, including the California-based Plaintiffs, at the conclusion of the employment relationship. California Labor Code § 203 provides that if an employer willfully fails to timely pay wages upon discharge or resignation, as required under §§ 201 and 202, the employer is liable for statutory penalties in the form of continued compensation for up to thirty (30) workdays.

79.    Throughout the applicable liability period, Defendants willfully failed to pay the California-based Plaintiffs and all former California-based Mortgage Banker, Loan Processor, Underwriter and Funder Class Members all wages due and

1  owing at the conclusion of the employment relationship as required under

2  California Labor Code §§ 201-203. As a result, Defendants are liable to the

3  California-based Plaintiffs and former California-based Class Members for the

4  statutory penalties provided in California Labor Code § 203. The California-based

5  Plaintiffs request relief as described below on behalf of themselves, all similarly

6  situated California-based Mortgage Bankers, Loan Processors, Underwriters and

7  Funders, and on behalf of the general public.

8  **XIV. <u>SEVENTH CLAIM FOR FAILURE TO TIMELY PAY WAGES AT</u>**

9  **<u>CONCLUSION OF THE EMPLOYMENT RELATIONSHIP</u>**

10  **[North Carolina General Statute §§ 95-25.7 and 95-25.22]**

11      80.    Plaintiffs hereby incorporate by this reference all prior allegations as

12  though fully set forth hereinafter.

13      81.    North Carolina General Statute § 95-25.7 requires Defendants, if

14  employment is discontinued for any reason, to pay all wages due and owing to all

15  former North Carolina-based Mortgage Bankers, including the North Carolina-

16  based Plaintiff, on or before the next regular payday either through the regular pay

17  channels or by mail if requested by the employee. North Carolina General Statute

18  § 95-25.7 also requires Defendants to pay all wages based on bonuses, commissions

19  or other forms of calculation on the first regular payday after the amount becomes

20  calculable after separation.

21      82.    Throughout the applicable liability period, Defendants willfully failed

22  to timely pay the North Carolina-based Plaintiff and all former North Carolina-

23  based Mortgage Banker Class Members all wages due and owing at the conclusion

24  of the employment relationship as required under North Carolina General Statute

25  § 95-25.7. Defendants failed, and continue to fail, to make timely payment in bad

26  faith and with knowledge that such untimely payment is a violation of North

27  Carolina law. As a result, Defendants are liable to these affected employees for the

28  amount of such unpaid and untimely paid wages, including interest thereon accrued

1  at the legal rate, pursuant to North Carolina General Statute § 95-25.22(a).  In

2  addition, Defendants are liable to the North Carolina-based Plaintiff and Mortgage

3  Bankers for liquidated damages in an amount equal to the amount of such unpaid

4  and untimely paid wages pursuant to North Carolina General Statute

5  § 95-25.22(a)(1), as well as reasonable attorney's fees and litigation costs pursuant

6  to North Carolina General Statute § 95-25.22(d).  The North Carolina-based

7  Plaintiff requests relief as described below on behalf of himself and all similarly

8  situated North Carolina-based Mortgage Bankers.

9  **XV.    EIGHTH CLAIM FOR FAILURE TO FURNISH ITEMIZED**

10  **WAGE STATEMENTS**

11  **[California Labor Code § 226(a)]**

12  83.    Plaintiffs hereby incorporate by this reference all prior allegations as

13  though fully set forth hereinafter.

14  84.    Under California Labor Code § 226(a), Defendants are and were

15  obligated to furnish to the California-based Plaintiffs and Mortgage Bankers, Loan

16  Processors, Underwriters and Funders at the time of each payment of wages, either

17  as a detachable part of the check, draft, or voucher paying the wages, or separately

18  when wages were paid by personal check or cash, an itemized statement in writing

19  showing the items of information delineated in California Labor Code § 226(a).

20  85.    Throughout the applicable liability period, Defendants had, and

21  continue to have, a policy and practice of knowingly and intentionally failing to

22  furnish the California-based Plaintiffs and Mortgage Bankers, Loan Processors,

23  Underwriters and Funders at the time of each payment of wages an itemized

24  statement in writing showing all of the information required by California Labor

25  Code § 226(a), including, but not limited to, the total hours worked by the

26  employee during the pay period, all applicable hourly rates in effect during the pay

27  period, and the corresponding number of hours worked at each hourly rate by the

28  employee during the pay period.

86.    As a result of the foregoing unlawful acts of Defendants, the California-based Plaintiffs and Class Members have suffered injury and are entitled to recover from Defendants pursuant to California Labor Code § 226(e), and hereby seek to recover, the greater of all actual damages or statutory penalties in the amount of fifty dollars ($50.00) per employee for the initial pay period in which a violation occurred and one hundred dollars ($100.00) per employee for each violation in a subsequent pay period, not exceeding an aggregate statutory penalty of four thousand dollars ($4,000.00) per employee, in addition to an award of costs and reasonable attorney's fees.  The California-based Plaintiffs request relief as described below on behalf of themselves, all similarly situated California-based Mortgage Bankers, Loan Processors, Underwriters and Funders, and on behalf of the general public.

## XVI.    NINTH CLAIM FOR UNFAIR AND UNLAWFUL BUSINESS PRACTICES

### [California Business and Professions Code §§ 17200-17208]

87.    Plaintiffs hereby incorporate by this reference all prior allegations as though fully set forth hereinafter.

88.    Defendants' uniform policy and practice of failing to pay legally required overtime compensation, failing to pay wages for compensable meal break periods, deducting licensing fees from earned wages, coercing the purchase of headsets, failing to provide indemnification, and failing to furnish itemized wage statements as required by the FLSA and/or California law constitutes unfair, unlawful or fraudulent business activity prohibited by the UCL, California Business and Professions Code §§ 17200-17208.

89.    As a result of these unfair, unlawful or fraudulent acts and practices, Defendants have reaped unfair benefits and illegal profits at the expense of the California-based Plaintiffs and Class Members.  This has, in turn, provided Defendants with an anti-competitive advantage when compared to those businesses

54

1   that have complied with the applicable wage and hour laws.  Additionally,

2   Defendants should be enjoined from continuing the aforementioned violations.

3          90.    Defendants must make restitution and be subject to any other

4   appropriate equitable relief pursuant to California Business and Professions Code

5   § 17203.  All such remedies are cumulative of relief under other laws pursuant to

6   California Business and Professions Code § 17205.  The California-based Plaintiffs

7   request relief as described below on behalf of themselves, all similarly situated

8   California-based Mortgage Bankers, Loan Processors, Underwriters and Funders,

9   and on behalf of the general public.

10  **XVII.   TENTH CLAIM FOR CIVIL PENALTIES UNDER THE LABOR**

11  **CODE PRIVATE ATTORNEYS GENERAL ACT OF 2004**

12  **[Cal. Labor Code §§ 2699 et seq.]**

13         91.    Plaintiffs hereby incorporate by this reference all prior allegations as

14  though fully set forth hereinafter.

15         92.    Pursuant to California Labor Code § 2699.3(a)(1), Plaintiffs sent via

16  certified mail to the California Labor and Workforce Development Agency (the

17  "Agency") and Defendants written notice of Plaintiffs' intention to seek in this

18  action the recovery of civil penalties under subdivisions (a) and (f) of California

19  Labor Code § 2699 for Defendants' violations of various provisions listed in

20  California Labor Code § 2699.5.  The specific provisions listed in California Labor

21  Code § 2699.5 that Defendants violated, including the facts and theories supporting

22  the violations, were set forth in the written notice sent to the Agency and

23  Defendants.  As of the filing of this Second Amended Complaint and pursuant to

24  California Labor Code § 2699.3(a)(2)(A), the Agency has sent via certified mail to

25  Plaintiffs and Defendants written notice that the Agency does not intend to

26  investigate the alleged violations.  Accordingly, pursuant to California Labor Code

27  § 2699.3(a)(2)(C), Plaintiffs may as a matter of right assert the following claims for

28  ///

1    civil penalties in this Second Amended Complaint, including the recovery of

2    reasonable attorney's fees and costs under California Labor Code § 2699(g)(1).

3        93.    Under California Labor Code §§ 510 and 1194 and I.W.C. Wage

4    Order Nos. 4-2000 and 4-2001, Defendants were and are obligated to pay overtime

5    compensation to the California-based Plaintiffs and Class Members for all hours

6    worked in excess of eight (8) hours per workday and forty (40) hours per

7    workweek. As a result of Defendants' policy and practice of failing to pay

8    overtime compensation as alleged herein, the California-based Plaintiffs and Class

9    Members have been damaged in that they have not received all wages due and

10    owing to them pursuant to California wage and hour laws. As a result of the

11    foregoing unlawful acts of Defendants, the California-based Plaintiffs and all other

12    aggrieved Class Members are entitled to recover, and hereby seek to recover, the

13    civil penalties provided for in California Labor Code § 558(a), in addition to an

14    amount sufficient to recover all underpaid wages, in amounts to be determined at

15    the time of trial.

16        94.    During the applicable liability period, the California-based Plaintiffs

17    and Class Members regularly worked in excess of five (5) hours per day without

18    being afforded by Defendants a proper meal break of at least 30-minutes in duration

19    in which they were relieved of all duties, and often worked in excess of ten (10)

20    hours per day without being afforded by Defendants another such meal break, as

21    required by California Labor Code §§ 226.7 and 512, as well as I.W.C. Wage order

22    Nos. 4-2000 and 4-2001. As a result of the foregoing unlawful acts of Defendants,

23    the California-based Plaintiffs and all other aggrieved Class Members are entitled to

24    recover, and hereby seek to recover, the civil penalties provided for in California

25    Labor Code § 558(a), in addition to an amount sufficient to recover all underpaid

26    wages, and/or California Labor Code § 2699(f)(2) in amounts to be determined at

27    the time of trial.

28    ///

95.    California Labor Code §§ 201 and 202 require Defendants to pay all compensation due and owing to all former California-based Class Members at the time employment is terminated. During the applicable liability period, Defendants willfully failed to pay the California-based Plaintiffs and Class Members all wages upon termination of employment as required under California Labor Code §§ 201-203. As a result of the foregoing unlawful acts of Defendants, the California-based Plaintiffs and all other aggrieved Class Members are entitled to recover, and hereby seek to recover, the civil penalties provided for in California Labor Code §§ 225.5 and/or 2699(f)(2) in amounts to be determined at the time of trial.

96.    California Labor Code § 221 prohibits Defendants from collecting or receiving from the California-based Plaintiffs and Class Members any part of the wages theretofore paid to them. California Labor Code § 450 prohibits Defendants from compelling or coercing the California-based Plaintiffs and Class Members to patronize Defendants or any other person in the purchase of any thing of value. California Labor Code § 2802(a) requires Defendants to indemnify the California-based Plaintiffs and Class Members for all necessary expenditures or losses incurred by them in the course and scope of their employment and in direct consequence of the discharge of their duties. Furthermore, California Labor Code § 2802(b) provides that all awards for reimbursement of such necessary expenditures or losses shall carry interest at the same rate as judgments in civil actions, and that such interest shall accrue from the date on which the expenditure or loss was incurred. Based on each separate violation of these statutes as alleged herein, the California-based Plaintiffs and all other aggrieved Class Members are entitled to recover, and hereby seek to recover, the civil penalties provided for in California Labor Code §§ 225.5 and/or 2699(f)(2) in amounts to be determined at the time of trial.

97.    Defendants were and are obligated to furnish to all California-based Plaintiffs and Class Members at the time of each payment of wages an itemized

1   statement in writing showing all of the items of information delineated in California

2   Labor Code § 226(a). During the applicable liability period, Defendants had, and

3   continue to have, a policy and practice of knowingly and intentionally failing to

4   furnish to California-based Class Members such itemized statements showing all of

5   the information required by California Labor Code § 226(a). As a result of the

6   foregoing unlawful acts of Defendants, the California-based Plaintiffs and all other

7   aggrieved Class Members are entitled to recover, and hereby seek to recover, the

8   civil penalties provided for in California Labor Code §§ 226.3 and/or 2699(f)(2) in

9   amounts to be determined at the time of trial.

10              XVIII.      **PRAYER FOR RELIEF**

11          **WHEREFORE**, Plaintiffs, on behalf of themselves, all present and former

12   similarly situated Mortgage Bankers, Loan Processors, Underwriters and Funders,

13   and on behalf of the general public, request the following relief:

14          1.      Authorization to issue notice pursuant to 29 U.S.C. § 216(b) at the

15   earliest practicable time to all current and former Mortgage Bankers, Loan

16   Processors, Underwriters and Funders employed by Defendants during the three (3)

17   years immediately preceding the filing of this action, informing them that this

18   action has been filed, the nature of the action, and their right to "opt in" to this

19   lawsuit;

20          2.      A determination that this action may proceed and be maintained by

21   Plaintiffs as a class action pursuant to FRCP 23(a) and 23(b)(3) on behalf of

22   themselves and the class or classes of employees alleged herein;

23          3.      The issuance of notice pursuant to FRCP 23 to all California-based

24   Class Members who worked for Defendants within the four (4) year period

25   preceding the filing of this Complaint in accordance with the statute of limitations

26   of the UCL, California Business and Professions Code §§ 17200-17208;

27          4.      A declaratory judgment that Defendants have violated the overtime

28   provisions of the FLSA, 29 U.S.C. § 207, by failing to pay properly calculated

58

1 overtime compensation to Plaintiffs and all Class Members for all hours worked in

2 excess of forty (40) hours per workweek;

3      5.   A declaratory judgment that Defendants have violated California

4 Labor Code §§ 510 and 1194 and I.W.C. Wage Order Nos. 4-2000 and 4-2001 by

5 failing to pay properly calculated overtime compensation to the California-based

6 Plaintiffs and Class Members for all hours worked in excess of forty (40) hours per

7 workweek and/or eight (8) hours per workday;

8      6.   A declaratory judgment that Defendants have violated 29 C.F.R.

9 §§ 785.18 and 785.19 by failing to afford Plaintiffs and all Class Members proper

10 meal break periods and that any time docked for illusory meal periods or meal

11 periods that were not "bona fide" meal periods constitutes compensable hours

12 worked for which Plaintiffs and the Class Members were not compensated;

13      7.   A declaratory judgment that Defendants have violated California

14 Labor Code §§ 226.7 and 512, as well as I.W.C. Wage order Nos. 4-2000 and

15 4-2001, by failing to afford the California-based Plaintiffs and Class Members

16 proper meal break periods;

17      8.   A declaratory judgment that Defendants have violated California

18 Labor Code § 221 by deducting licensing fees from the earned wages of the

19 California-based Mortgage Banker Plaintiffs and Mortgage Banker Class Members

20 without their express written authorization under California Labor Code § 224;

21      9.   A declaratory judgment that Defendants have violated North Carolina

22 General Statute § 95-25.8 by deducting licensing fees and the cost of headsets from

23 the earned wages of the North Carolina-based Plaintiff and Mortgage Banker Class

24 Members without their express written authorization;

25      10.   A declaratory judgment that Defendants have violated California

26 Labor Code § 2802 by failing to indemnify the California-based Mortgage Banker

27 Plaintiffs and Mortgage Banker Class Members for licensing fees, payments to

28 ///

1    Loan Processors, and expenses for the purchase of headsets incurred in direct
2    consequence of the discharge of their duties;

3        11.    A declaratory judgment that Defendants have violated California
4    Labor Code § 450 by compelling or coercing the California-based Mortgage Banker
5    Plaintiffs and Mortgage Banker Class Members to purchase headsets from
6    Defendants or others;

7        12.    A declaratory judgment that Defendants have willfully violated
8    California Labor Code §§ 201-203 by failing to timely pay overtime compensation
9    and other unpaid wages due and owing to the California-based Plaintiffs and Class
10   Members at the conclusion of the employment relationship, thereby subjecting
11   Defendants to liability for statutory waiting time penalties;

12       13.    A declaratory judgment that Defendants have violated North Carolina
13   General Statute § 95-25.7 by failing to timely pay overtime compensation and other
14   unpaid wages due and owing to the North Carolina-based Plaintiff and Mortgage
15   Banker Class Members at the conclusion of the employment relationship;

16       14.    A declaratory judgment that Defendants have violated California
17   Labor Code § 226(a) by knowingly and intentionally failing to furnish to the
18   California-based Plaintiffs and Class Members, to their injury, itemized wage
19   statements in compliance with California Labor Code § 226(a), thereby subjecting
20   Defendants to liability for actual damages or statutory penalties under California
21   Labor Code § 226(e);

22       15.    A declaratory judgment that Defendants have violated the record
23   keeping provisions of the FLSA, 29 U.S.C. § 211(c), as to Plaintiffs and all
24   similarly situated Class Members;

25       16.    A declaratory judgment that Defendants have violated the record
26   keeping provisions of California Labor Code § 1174(d) and I.W.C. Wage Order
27   Nos. 4-2000 and 4-2001 as to the California-based Plaintiffs and Class Members;
28   ///

17.    A declaratory judgment that Defendants' violations of the FLSA and California wage and hour laws were willful and without good faith justification;

18.    A declaratory judgment that Defendants' violations of North Carolina General Statute §§ 95-25.7 and 95-25.8 were willful, in bad faith and without good faith justification, thereby entitling the North Carolina-based Plaintiff and Mortgage Banker Class Members to liquidated damages under North Carolina General Statute §§ 95-25.22(a)(1);

19.    A declaratory judgment that Defendants have violated the provisions of California Business and Professions Code §§ 17200-17208 by failing to pay overtime compensation in violation of the FLSA and California law, failing to pay wages for compensable meal break periods in violation of California law, failing to furnish proper itemized wage statements in violation of California law, making unauthorized deductions from earned wages in violation of California law, and failing to indemnify business-related expenses and losses in violation of California law;

20.    A declaratory judgment that Defendants' violations of California Business and Professions Code §§ 17200-17208 were willful and without good faith justification;

21.    A declaratory judgment that, with regard to their claims under California Business and Professions Code §§ 17200-17208, the California-based Plaintiffs and Class Members are entitled to a four (4) year statute of limitations;

22.    A permanent injunction enjoining Defendants and any and all persons acting in concert or in participation with Defendants from directly or indirectly committing the unlawful, unfair and deceptive business acts and practices as alleged above, pursuant to the FLSA and UCL;

23.    An award to Plaintiffs and all similarly situated Class Members for damages in the amount of unpaid overtime wages under the FLSA, including

///

1    liquidated damages or, in the alternative, pre-judgment interest subject to proof at

2    the time of trial;

3        24.    An award to the California-based Plaintiffs and Class Members of

4    damages in the amount of unpaid overtime compensation and wages under

5    California law, including interest thereon subject to proof at the time of trial;

6        25.    An award to the California-based Plaintiffs and Class Members of one

7    hour of compensation at their regular rate for each day they did not receive proper

8    meal break periods under California Labor Code §§ 226.7 and 512 and I.W.C.

9    Wage Order Nos. 4-2000 and 4-2001 subject to proof at the time of trial;

10        26.    An award to the California-based Mortgage Banker Plaintiffs and

11    Mortgage Banker Class Members for reimbursement or restitution of all

12    unauthorized deductions from earned wages for licensing fees under California

13    Labor Code § 221, including interest thereon subject to proof at the time of trial;

14        27.    An award to the North Carolina-based Plaintiff and Mortgage Banker

15    Class Members in the amount of all unauthorized deductions from earned wages for

16    licensing fees and the costs of headsets under North Carolina General Statute

17    §§ 95-25.8 and 95-25.22, including interest thereon and liquidated damages subject

18    to proof at the time of trial;

19        28.    An award to the California-based Mortgage Banker Plaintiffs and

20    Mortgage Banker Class Members for indemnification, reimbursement or restitution

21    of all unauthorized deductions from earned wages, monetary payments to Loan

22    Processors and expenses for the purchase of headsets under California Labor Code

23    § 2802, including interest thereon subject to proof at the time of trial;

24        29.    An award to the California-based Plaintiffs and Class Members for

25    payments due to them as statutory waiting time penalties under California Labor

26    Code §§ 201-203 subject to proof at the time of trial;

27        30.    An award to the North Carolina-based Plaintiff and Mortgage Banker

28    Class Members in the amount of all unpaid and untimely paid overtime

1    compensation and other wages under North Carolina General Statute §§ 95-25.7

2    and 95-25.22, including interest thereon and liquidated damages subject to proof at

3    the time of trial;

4        31.    An award to the California-based Plaintiffs and Class Members of the

5    greater of all actual damages or, alternatively, the statutory penalties provided in

6    California Labor Code § 226(e) subject to proof at the time of trial;

7        32.    An award to Plaintiffs and all similarly situated Class Members of

8    liquidated damages in an amount equal to the overtime compensation shown to

9    have been denied them pursuant to 29 U.S.C. § 216(b) or, if liquidated damages are

10   not awarded, then in the alternative pre-judgment interest;

11       33.    An award to the California-based Plaintiffs and Class Members of

12   restitution of all amounts owed for Defendants' failure to pay overtime

13   compensation, failure to pay wages for compensable meal break periods, failure to

14   furnish itemized wage statements, unauthorized deductions from wages, and failure

15   to indemnify business expenses in an amount according to proof, pursuant to the

16   UCL;

17       34.    An award to the California-based Plaintiffs and all other aggrieved

18   Class Members of all civil penalties available under the provisions of California

19   Labor Code §§ 2699, et seq. for Defendants' Labor Code violations as alleged

20   herein subject to proof at the time of trial;

21       35.    An award to Plaintiffs and all similarly situated Class Members of

22   reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), California

23   Labor Code §§ 226(e) and 1194, California Civil Code § 1021.5, North Carolina

24   General Statute § 95-25.22(d), and/or any other applicable law;

25       36.    An award of pre and post-judgment interest; and

26   ///

27   ///

28   ///

1        37.    An award of such other and further relief as this Court may deem just

2    and appropriate.

3

4    Dated:  September 22, 2008    MOWER, CARREON & DESAI, LLP

5

6    Jon R. Mower, Esq. (SBN 72034)

7    James A. Burton, Esq. (SBN 149253)
     Attorneys for Representative Plaintiffs

8    and Class members

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2     Plaintiffs, on behalf of themselves and all other similarly situated employees

3 and former employees of the Defendants, hereby demand trial of these claims by

4 jury to the extent authorized by law.

5

6 Dated:  September ___, 2008          MOWER, CARREON & DESAI, LLP

7

8                                    Jon R. Mower, Esq. (SBN 72034)

9                                    James A. Burton, Esq. (SBN 149253)
                                     Attorneys for Representative Plaintiffs
10                                   and Class members

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
C.C.P. §§ 1011, 1013, 1013a and 2015.5

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the county of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 8001 Irvine Center Drive, Suite 1450, Irvine, California 92618. On September 29, 2008, I served the foregoing document described as **SECOND AMENDED COMPLAINT FOR UNPAID OVERTIME WAGES, LIQUIDATED DAMAGES, STATUTORY AND CIVIL PENALTIES, UNLAWFULLY WITHHELD WAGES, AND ATTORNEYS' FEES AND COSTS** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**Counsel for Defendants, Home Loan Center, Inc. dba Lending Tree Loans:**
Greg S. Labate, Esq.
Sheppard, Mullin, Richter & Hampton, LLC
650 Town Center Drive, Fourth Floor
Costa Mesa, CA 92626-1993
Tel: (714) 513-5100
Fax: (714) 513-5130

Jason W. Kearnaghan, Esq.
Sheppard, Mullin, Richter & Hampton, LLC
333 South Hope Street, 48th Floor
Los Angeles, CA 90071-1448
Tel: (213) 620-1780
Fax: (213) 620-1398

**BY MAIL** - I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_Karen Dodson Stewart_
KAREN DODSON STEWART