1 | **MOWER, CARREON & DESAI, LLP**
Jon R. Mower, Esq. (SBN 72034)
2 | James A. Burton, Esq. (SBN 149253)
8001 Irvine Center Drive, Suite 1450
3 | Irvine, CA 92618
Telephone:  (949) 474-3004
4 | Facsimile:    (949) 474-9001
mower@mocalaw.com; burton@mocalaw.com

5

Attorneys for Representative Plaintiffs and Class members

6

[Additional Counsel listed on Page 2]

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  FRANK D'ASERO, EZEKIEL MOHAMMED, POURIA | ) CASE NO. SACV 08-0384 RSWL (JWJx) |
| 12  SAFABAKHSH, JOSEPH CUGLIARI, JR., ANGELA RICHARDSON, BRIAN | ) |
| 13  JOHANSON and BRENDAN DWYER, individually and on behalf of all other | ) Judge:        Ronald S. W. Lew )  Courtroom:   21 |
| 14  persons similarly situated and on behalf of the general public, | ) |
| 15 | ) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER:** |
| 16         Plaintiffs, | ) |
| 17  vs. | ) **(1)    CERTIFYING SETTLEMENT CLASSES;** |
| 18  HOME LOAN CENTER, INC. dba LENDING TREE LOANS, a California | ) **(2)    FINALLY APPROVING CLASS ACTION SETTLEMENT;** |
| 19  corporation, LENDING TREE, LLC, a Delaware limited liability company, | ) |
| 20  LENDING TREE, INC., a Delaware corporation, | ) **(3)    AWARDING ATTORNEYS' FEES, COSTS, CLAIMS ADMINISTRATION FEES, AND CLASS REPRESENTATIVE ENHANCEMENTS** |
| 21  IAC/INTERACTIVECORP, a Delaware corporation, and DOES 1 through 10, | ) |
| 22  inclusive, | ) |
| 23         Defendants. | ) |
| 24 | ) **DATE:        April 15, 2009**  **TIME:        10:00 a.m.** |
| 25 | ) **CTRM:        21** |
| 26 | ) |
| 27 | ) |
| 28 | |

1

Roger R. Carter (SBN 140196)
THE CARTER LAW FIRM
2030 Main Street, Suite 1300
Irvine, CA 92614
Tel.: (949) 260-4737; Fax: (949) 260-4753

Jose R. Garay (SBN 200494)
JOSE GARAY, APLC
2030 Main Street, Suite 1300
Irvine, CA 92614
Tel.: (949) 260-9193; Fax: (949) 260-9194

Scott B. Cooper (SBN 174520)
THE COOPER LAW FIRM, P.C.
2030 Main Street, Suite 1300
Irvine, CA 92614
Tel.: (949) 260-9200; Fax: (949) 260-9255

Richard E. Quintilone II (SBN 2000995)
QUINTILONE & ASSOCIATES
22974 El Toro Road, Suite 100
Lake Forest, CA 92630
Tel.: (949) 458-9675; Fax: (949) 458-9679

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii, iii

I.    INTRODUCTION ............................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .....................................6

III.  SETTLEMENT TERMS ...................................................................................7

    A.    Class Member Sub-Groups .......................................................................7

    B.    Settlement Amounts ....................................................................................8

    C.    Calculation of Individual Settlement Allocations .....................................8

    D.    Release ........................................................................................................9

    E.    Claims Administration Procedures.............................................................9

IV.   BASIS FOR APPROVAL OF THE SETTLEMENT ....................................10

    A.    Strength of the Plaintiffs' Case; Risk, Expense of
        Further Litigation; Risk of Maintaining Class Status,
        Probability of Recovering the Full Amount Claimed ..............................12

    B.    The Amount Offered in Settlement .........................................................14

    C.    Investigation, Completed Discovery, and the Stage
        of the Proceedings.....................................................................................15

    D.    The Experience and Views of Counsel and the
        Reaction of Class Members.......................................................................15

    E.    Fraud or Collusion ...................................................................................16

V.    ALLOCATION OF SETTLEMENT.............................................................16

    A.    Allocation Between Sub-Groups.............................................................16

    B.    The Amounts Allocated for Attorneys' Fees,
        Litigation Costs, Claims Administration and
        Class Administration and Class Representative
        Service Awards are Reasonable ...............................................................20

VI.   CONCLUSION...............................................................................................24

# TABLE OF AUTHORITIES

## CASES

### Federal

*Blum v. Stenson*
    465 U.S. 886, 890 n. 16
    106 S.Ct. 1541, 79 L.Ed. 2d 891 (1984) .............................................................21

*Dail v. George A. Arab, Inc.*
    391 F.Supp.2d 1142 (M.D. Fla. 2005) ...............................................................11

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ............................................................................11

*In re California Microdevices Sec. Litg.*
    965 F.Supp. 1327 (N.D. Cal. 1997) ....................................................................11

*In re Mego Financial Corp. Sec. Litg.*
    213 F.3d 454 (9th Cir. 2000) ..............................................................................15

*In re Continental Illinois Securities Litg.*
    962 F.2d 566 (7th Cir. 1992) ..............................................................................24

*Kirk v. Niedert*
    142 F.3d 1004 (Ill. 1998) ....................................................................................24

*Lynn's Food Stores, Inc. v. United States*
    679 F.2d 1350 (11th Cir. 1982) ..........................................................................11

*Molski v. Gleich*
    318 F.3d 937 (9th Cir. 2003) ..............................................................................11

*Murillo v. Texas A&M University System*
    921 F.Supp. 443 (S.D. Tex. 1996) ...............................................................11,12,16

*Officers for Justice v. Civil Service Commission*
    688 F.2d 615 (9th Cir. 1982) ..............................................................................15

*Stanton v. Boeing Company*
    327 F.3d 938 (9th Cir. 2003) ..............................................................................11

*Torrisi v. Tuscan Electric Power Co.*
    8 F.3d 1370 (9th Cir. 1993) ................................................................................21

### California State Cases

*Brinker Restaurant Corp. v. Sup. Ct.*
    165 Cal.App.4th 25 (2008) .................................................................................13

*Lealao v. Beneficial California, Inc.*
    82 Cal.App.4th 19 (2000) ...............................................................................20,21

# CASES OF INTEREST

*David Gonzalez, et al. v. Home Loan Center, Inc.*
*dba Lending Tree Loans*
United States District Court Case No. CV06-5007 RSLW ................................passim

*Brian Johanson, et al. v. Home Loan Center, Inc*
*dba Lending Tree Loans*
Orange County Superior Court Case No. 07CC01405 ........................................passim

*Angela Richardson v. Home Loan Center, Inc.*
*dba Lending Tree Loans*
Orange County Superior Court Case No. 07CC01337 ........................................passim

# FEDERAL STATUTES AND RULES

29 U.S.C. § 216(b) ........................................................... 3,10,12,13,22

42 U.S.C. § 1983 ...................................................................................11

FRCP, Rule 1 .........................................................................................25

FRCP, Rule 23 ........................................................... 6,10,11,13,17,22

FRCP Rule 23(e) ..................................................................................10

# CALIFORNIA ADMINISTRATIVE REGULATIONS

Labor Code § 2699.................................................................................6,19

Labor Code § 2699(i)................................................................................6

# OTHER

MANUAL FOR COMPLEX LITIGATION
(Fed. Judicial Center 2004) § 21.63 ....................................................10

Migrant and Seasonal Agricultural Worker Protection Act.........................11

NEWBERG ON CLASS ACTIONS (4th ed. 2002)
    § 11.24 ..............................................................................................10
    § 11.51 ..............................................................................................16

## I.    **INTRODUCTION**

Plaintiffs seek Final Approval of this class action settlement (the "Settlement") resolving the wage and hour and related employment claims of seven sub-classes of employees (the "Class Members") currently or formerly employed by Defendants Home Loan Center, Inc. dba Lending Tree Loans, Lending Tree, LLC, Lending Tree, Inc., and IAC/Interactive Corp. (collectively "Defendants"). The terms of the Settlement are set forth in the parties' Joint Stipulation of Settlement and Release (the "Joint Stipulation").[1]  The Court issued its Order of Preliminary Approval of the Settlement on December 18, 2008.  Since preliminary approval was granted both Notice and an Amended Notice have been sent to all class members.  Claims administration has been completed in accordance with the Court's order.  There are no objectors to this Settlement.  Moreover, the terms of the settlement have met with overwhelming approval, with over 90% of all available settlement proceeds now being claimed and allocated pursuant to the terms of the Joint Stipulation.[2]  Only the Court's Order of Final Approval remains to facilitate full distribution of all claimed settlement proceeds and conclude this litigation.

The Settlement resolves not only the wage and hour claims of the original *D'Asero* named Plaintiffs and Class Members, but also the claims of the named Plaintiffs and Class Members as asserted in two related state court class actions, *Angela Richardson v. Home Loan Center, Inc. dba Lending Tree Loans,* Orange County Superior Court Case No. 07CC01337 (hereinafter "*Richardson*"), and *Brian Johanson, et al. v. Home Loan Center, Inc. dba Lending Tree Loans,* Orange County Superior Court Case No. 07CC01405 (hereinafter "*Johanson*"). To facilitate a "global" resolution of all three cases and streamline the approval

---

[1]  A true and correct copy of the Joint Stipulation is attached as Exhibit 1 herein, and also as Exhibit 1 to the Declaration of Jon R. Mower ("Mower Declaration") and is also attached as Exhibit 1 to the [Proposed] Order of Final Approval of Class Action Settlement.

[2]  See Declaration of Michael Bui of Simpluris, Inc. at ¶ 14.

1

1    process, this Court granted Plaintiffs leave to file a Second Amended Complaint in

2    the *D'Asero* case incorporating all named Plaintiffs, Class Members and claims

3    from the *Richardson* and *Johanson* state court actions.[3]

4        The *D'Asero*, *Richardson* and *Johanson* cases are also related to another

5    class action over which this Court recently presided, *Daniel Gonzalez, et al. v.*

6    *Home Loan Center, Inc. dba Lending Tree Loans,* United States District Court

7    Case No. CV06-5007 RSWL (JWJx) (hereinafter "*Gonzalez*").  On December 16,

8    2008, the Court granted Final Approval of the settlement in the *Gonzalez* case

9    involving a class of approximately 2200 California Mortgage Bankers.  The

10   *Gonzalez* settlement has now been fully administered through Simpluris, Inc. the

11   same claims administrator involved in the present matter.

12       The Settlement here resolves all claims asserted by Class Member

13   employee groups in the *D'Asero*, *Richardson* and *Johanson* cases.  Those claims

14   fall outside the scope of the *Gonzalez* settlement.  The basic terms of the present

15   Settlement are as follows:

16       1.    Defendants will pay an amount not to exceed $2,500,000.00 (the

17             "Settlement Amount") plus Defendants' portion of payroll taxes,

18             including the employers' FICA, SUTA and SDI contributions;[4]

19             resolving all claims;

20       2.    Attorneys' fees of $750,000.00, will be paid out of the Settlement as

21             will reimbursement of advanced litigation costs and expenses of

22   ///

23   ///

24   ///

---

25   [3]  Plaintiffs will dismiss the coordinated *Richardson* and *Johanson* class actions,
     which are stayed but still pending before Judge David C. Velasquez in the Orange
26   County Superior Court, if and when the Settlement is finally approved by this Court
     and fully performed by Defendants.

27
     [4]  Although the proposed Settlement is on behalf of all Defendants, Home Loan
28   Center, Inc. dba Lending Tree Loans will be exclusively responsible for payment of
     the Settlement Amount.

1     $34,130.32 and claims administration expenses of $37,000.00 paid to

2     third party claims administrator Simpluris, Inc.[5]

3     3.    Service Enhancement Awards for the named Plaintiffs/Class

4     Representatives will be deducted from and paid out of the

5     $2,500,000.00 Settlement Amount in recognition of their role in

6     prosecuting the litigation and securing the Settlement on behalf of the

7     Class Members;[6]

8     4.    Simpluris, Inc., the class action claims administrator previously

9     approved by the Court, will administer the Settlement,

10    5.    The Net Settlement Amount will be available for distribution to Class

11    Members who filed timely claims in conformance with the terms of

12    the Settlement.

13    The Net Settlement Amount will be distributed among the following seven

14    sub-groups of Class Members based on the allocation formula set forth in the Joint

15    Stipulation:

16    A.    *California Mortgage Banker Opt-Ins employed from April 9,*

17    *2004 through the date of preliminary approval of the*

18    *Settlement.* This group consists of former employees who filed

19    FLSA consents to join in this case pursuant to 29 U.S.C. §

20    216(b). These persons are Victor Antablian, Richard V. Biley,

21    Jason Casella, Debi Jo Croissant, Frank D'Asero, Anthony

22    Durbin, Mark Fragola, Stephen D. Funk, Anoush Garakan,

23    Joshua Horton, Robert Iovinelli, Ezekiel Mohammed, Aaron

---

24    [5] The reimbursement of costs and expenses include all litigation costs incurred to
25    date as well as all costs associated with securing Court approval of the proposed
      Settlement and dismissal of the litigation. The claims administration expenses are
      paid to third party approved claims administrator Simpluris, Inc. who separately
26    contracted to perform claims administration services.

27    [6] The requested Service Enhancement Awards are $10,000.00 for Plaintiffs
      D'Asero, Mohammed, Safabakhsh, Richardson, Johanson and Dwyer, respectively,
28    and $3,000.00 for Plaintiff Cugliari who had less involvement in assisting in the
      prosecution of the action.

3

Maximillian Mohammed, Courtney Nelson, Phong H. Nguyen, Pouria Safabakhsh, David Tadeo, Jr., MaiHanh Tran, Bradley T. Wilson, and Chris Woods. They will receive approximately $73,000.00 of the settlement proceeds.

B.  *California Mortgage Bankers employed from January 1, 2008 through the date of preliminary approval of the Settlement.* This group consists of approximately 110 claimants. Because the class period in the *Gonzalez* settlement extends only through December 31, 2007, and thus these individuals' claims would not be included in the *Gonzalez* settlement for this period of time, their additional claims are included in the present case. Almost all of these individuals will also receive a share of the *Gonzalez* settlement since most were employed prior to December 31, 2007. They will receive approximately $4,369.67 as a group in the present case.

C.  *California Loan Processor, Funder and Underwriter Non-Releasees employed from August 2, 2003 through the date of preliminary approval of the Settlement.* This sub-class consists of approximately 317 claimants working in one or more of the referenced job categories, who did not sign a severance release upon employment separation. This group is not included in the *Gonzalez* settlement because they did not work as mortgage bankers and the *Gonzalez* settlement is limited to California Mortgage Bankers. They will receive approximately $916,899.88,

D.  *North Carolina Mortgage Banker Non-Releasees employed from April 9, 2005 through the date of preliminary approval of the Settlement.* This sub-class consists of approximately 214

claimants who did not sign a release of claims upon employment separation. They are not included in *Gonzalez* because the *Gonzalez* settlement is limited to California Mortgage Bankers. They will receive approximately $117,408.81.

E.  *California Mortgage Banker, Loan Processor, Funder and Underwriter Releasees employed from August 2, 2003 through the date of preliminary approval of the Settlement.* This sub-class consists of approximately 159 claimants who signed a release of claims included within a severance agreement upon employment separation. They are not included in *Gonzalez* because the *Gonzalez* settlement expressly excludes California Mortgage Bankers who signed a release of claims, and does not include processors, funders or underwriters. They will receive approximately $215,256.18.

F.  *North Carolina Mortgage Banker Releasees employed from April 9, 2005 through the date of preliminary approval of the Settlement.* This sub-class consists of approximately 30 claimants who signed a release of claims included within a severance agreement upon employment separation. They were not included in the *Gonzalez* settlement. They will receive approximately $16,558.49.

G.  *California Private Attorney General Act (PAGA) Claimants (California employees only).* This sub-class consists of approximately 423 current or former California Mortgage Bankers, Loan Processors, Funders and Underwriter claimants employed from April 9, 2007 through the date of preliminary approval of the Settlement. While all of these individuals are

1    also included in one or more of the other sub-groups, and may

2    also be included in the *Gonzalez* action, the *Gonzalez* settlement

3    does not encompass or release claims for civil penalties under

4    the Private Attorney General's Act (PAGA), California Labor

5    Code §§ 2699, *et seq.* Therefore, these claims are not embraced

6    by *Gonzalez.* Pursuant to California Labor Code § 2699(i), 25%

7    of the total allocated to these claims will be available for

8    distribution to the Class Members who filed valid claims, and

9    the remaining 75% is payable to the California Labor and

10   Workforce Development Agency. Approximately $124,409.00

11   will be paid on the PAGA claims.

12   Plaintiffs submit that the Settlement satisfies all criteria for Final Approval

13   under Federal Rule of Civil Procedure ("FRCP") 23 and falls well within the

14   range of reasonableness. Plaintiffs therefore request that the Court grant Final

15   Approval of the Settlement, and issue its Order as requested herein.

16   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

17   In order to appreciate the intricacies of the employee groups and claims

18   involved in the current Settlement and fully understand its etiology, a chronological

19   review of the *Gonzalez, Richardson, Johanson,* and *D'Asero* cases is required. An

20   exhaustive analysis of the factual, legal and procedural aspects of these cases was

21   included with the Memorandum of Points and Authorities and Declarations in

22   support of the Motion for Preliminary Approval which has already been reviewed

23   by the Court. Rather than including a reiteration of this same material, reference is

24   made to Exhibits 4 and 5 to the Declaration of Jon R. Mower which are true and

25   correct copies of the Motion for Preliminary Approval. No determinative facts,

26   legal theories, or procedures have changed since the time of Preliminary Approval,

27   and the factual and legal basis upon which the Court granted Preliminary Approval

28   is equally applicable as to Final Approval.

1    **III.    SETTLEMENT TERMS**

2    As discussed in the earlier Motion for Preliminary Approval this Settlement

3    was the product of lengthy litigation efforts resulting in resolution at mediation.

4    The disputes as to liability and damages were vigorously contested and ultimately

5    resolved with the assistance of nationally recognized mediator Barry Winograd.

6    Mr. Winograd was also the mediator in the related *Gonzalez* settlement. While the

7    specific details of the Settlement are contained in the Joint Stipulation, its general

8    terms may be summarized as follows:

9    **A.    Class Member Sub-Groups**

10    Plaintiffs seek Settlement on behalf of the following seven sub-classes: (1)

11    all California Mortgage Banker FLSA Opt-In Plaintiffs employed from April 9,

12    2004 through the date of preliminary approval of the Settlement; (2) all California

13    Mortgage Bankers employed from January 1, 2008 through the date of preliminary

14    approval of the Settlement; (3) all California Loan Processor, Funder and

15    Underwriter Non-Releasees employed from August 2, 2003 through the date of

16    preliminary approval of the Settlement; (4) all North Carolina Mortgage Banker

17    Non-Releasees employed from April 9, 2005 through the date of preliminary

18    approval of the Settlement; (5) all California Mortgage Banker, Loan Processor,

19    Funder and Underwriter Releasees employed from August 2, 2003 through the date

20    of preliminary approval of the Settlement; (6) all North Carolina Mortgage Banker

21    Releasees employed from April 9, 2005 through the date of preliminary approval of

22    the Settlement; and (7) Private Attorney General's Act (PAGA) claimants

23    consisting of all current or former California Mortgage Bankers, Loan Processors,

24    Funders and Underwriters employed from April 9, 2007 through the date of

25    preliminary approval of the Settlement. There are a total of approximately 1,800

26    people involved as putative class members in the present case (although nearly

27    1,000 of these "overlap" with the *Gonzalez* class) as opposed to the approximately

28    2,200 putative class members in the *Gonzalez* case. In many respects the current

7

case fills in certain areas of claims not specifically covered by the *Gonzalez* settlement.

### B. Settlement Amounts

Defendants will pay an amount not to exceed $2,500,000.00 (the "Settlement Amount") plus Defendants' portion of payroll taxes, including the employers' FICA, SUTA and SDI contributions, as the total Settlement Amount in this case. Attorneys' fees of $750,000.00 have been separately agreed to as compensation to Class Counsel for legal services and in lieu of a separate fee application. The Settlement provides for reimbursement of Plaintiffs' advanced litigation costs and expenses of $34,130.32 and claims administration fees of $37,000.00 paid separately to Simpluris, Inc. the approved claims administrator all of which will be deducted from and paid out of the $2,500,000.00 gross Settlement Amount. Class Representative Enhancement Awards will also be deducted from and paid out of the $2,500,000.00 Settlement Amount in recognition of the Class Representatives' role in prosecuting the litigation and securing the Settlement on behalf of the Class Members. The requested service awards are: $10,000.00 each for Plaintiffs D'Asero, Mohammed, Safabakhsh, Richardson, Johanson and Dwyer, and $3,000.00 for Plaintiff Cugliari who had a more limited role in assisting in the prosecution of the case.[7] Simpluris, Inc., an experienced class action claims administrator, will administer the Settlement. After these deductions, the remaining amount will be available for distribution to Class Members in conformance with the timely verified class member claims.

### C. Calculation of Individual Settlement Allocations

Each participating Class Members' individual settlement payment has been determined by apportioning the net distributable amount for each employee sub-class among the claimants in that group according to the formula based on comparative earnings set forth in the Joint Stipulation. A participating Class

---

[7] See Declaration of Jon R. Mower at ¶ 16.

1   Member's payment will equal that Class Member's gross (pre-tax) compensation

2   earned during the applicable class period times the ratio multiplier.  Thus, claims

3   are allocated based upon the total compensation earned by the class member.  Class

4   Members with higher "regular rates" i.e., who earned more during their

5   employment, and who earned more by virtue of working more hours will receive

6   comparatively higher allocations than those earning less.  This is fair and

7   reasonable since individuals with higher earnings have a higher projected overtime

8   rate given their commensurately higher "regular rate" of compensation and a

9   proportionately higher overall overtime claim.  This allocation formula has already

10  been preliminarily approved by the Court in the present case, and was also used in

11  the *Gonzalez* settlement.  Finally, the Settlement provides that twenty-five percent

12  (25%) of each Class Member's Settlement Award will be considered wages, and

13  seventy-five percent (75%) will be considered interest and statutory penalties.

14          **D.    Release**

15          All authorized claimants (those who did not opt-out of the Settlement) will,

16  in consideration for the opportunity to claim their portion of the net settlement

17  proceeds, release Defendants from any and all claims arising out of the *D'Asero*

18  second amended complaint.

19          **E.    Claims Administration Procedures**

20          The parties, with the Court's approval, retained Simpluris, Inc. to act as

21  Claims Administrator for the Notice of Settlement, Claim Form and Request for

22  Exclusion forms sent to members of the Settlement Classes.  As is set forth in the

23  Declarations of Jon R. Mower (Class Counsel) and Michael Bui (Simpluris, Inc.

24  claims administration officer) this procedure was performed and completed in

25  compliance with the Court's Order on Preliminary Approval.  The claims

26  administration resulted in Notice going out to over 1800 individual class members.

27  The approval of the Settlement was overwhelming, with *no objections*, only nine

28  (9) "opt-outs" and with over 90% of the total settlement fund being claimed or

9

1   allocated for distribution.  Following final approval Simpluris, Inc. will complete

2   the claims administration process by distribution of all claimed settlement amounts

3   as set forth in the schedule of events specified in the Order of Final Approval.

4   **IV.    BASIS FOR APPROVAL OF THE SETTLEMENT**

5          As already provisionally determined in the Motion for Preliminary Approval,

6   the Settlement meets the criteria of being fair, adequate and reasonable.  The terms

7   of the Settlement provided for notice to class members, for class member

8   objections, for payment of class member claims, and for appropriate allocation of

9   attorneys' fees, litigation costs and class representative enhancements.  Notice was

10  sent to the class in conformance with the Court's Orders and followed customary

11  claims administration procedures.  As is set forth in the accompanying Declarations

12  of Jon R. Mower and Michael Bui, effective Notice was accomplished, disputes

13  over supporting data were resolved, and the Settlement was met with overwhelming

14  class-wide approval.  The attorneys' fees, litigation costs, and claims administration

15  expenses are in conformance with accepted federal guidelines and consonant with

16  similar allocations in cases of this nature.  The service awards to the Class

17  Representatives are modest and in conformance with accepted standards in class

18  action wage and hour litigation.  In sum, this Settlement meets the criteria for final

19  approval as an arm's length negotiated resolution that is fair, adequate and

20  reasonable.

21         A class action may not be dismissed, compromised or settled without the

22  approval of the court.  FRCP 23(e).  This process safeguards Class Members'

23  procedural due process rights and enables the court to fulfill its role as the guardian

24  of the Class Members' interests.  *See* NEWBERG ON CLASS ACTIONS § 11.24, *et seq.*

25  (4th ed. 2002) ("NEWBERG"); MANUAL FOR COMPLEX LITIGATION (Fed.Judicial

26  Center 2004) ("MANUAL") § 21.63.

27         The same standards apply in deciding whether to approve a Settlement as

28  fair, adequate and reasonable under either Rule 23 or under § 216(b) of the FLSA.

1  *Dail v. George A. Arab, Inc.*, 391 F.Supp.2d 1142, 1145-46 (M.D. Fla. 2005)

2  (adopting class action settlement factors for consideration in determining whether a

3  proposed FLSA class action settlement is fair); *Lynn's Food Stores, Inc. v. United*

4  *States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (when employees bring a private

5  action for back wages under the FLSA and present to the district court a proposed

6  settlement, the district court may enter a stipulated judgment after scrutinizing the

7  settlement for fairness).

8      FRCP 23 "requires the district court to determine whether a proposed

9  settlement is fundamentally fair, reasonable, and adequate." *Stanton v. Boeing*

10  *Company*, 327 F.3d 938, 957 (9th Cir. 2003).  In that regard, the court should

11  consider multiple factors including:  (1) the strength of the plaintiff's case; (2) the

12  risk, expense, complexity and duration of further litigation; (3) the risk of

13  maintaining class certification; (4) the amount of the settlement; (5) the completion

14  of investigation and discovery; (6) the experience and views of counsel and (7) the

15  reaction of class members to the proposed settlement. *See, e.g., Hanlon v. Chrysler*

16  *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *Stanton, supra*, 327 F.3d at 959;

17  *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).

18      Additionally, the court should conduct an inquiry with regard to "the

19  potential for tacit collusion" between the defendants and plaintiff's counsel. *In re*

20  *California Microdevices Sec. Litg.*, 965 F.Supp. 1327, 1329 (N.D. Cal. 1997).

21  There is an "initial presumption of fairness when a proposed class settlement was

22  negotiated at arm's length by counsel for the class" and "settlements in class action

23  suits are encouraged and favored." *Murillo v. Texas A&M University System*, 921

24  F.Supp. 443, 445 (S.D. Tex. 1996) (approving a class action settlement of claims

25  brought on behalf of several hundred farm workers for alleged violations of the

26  FLSA, 42 U.S.C. § 1983 and the Migrant and Seasonal Agricultural Worker

27  Protection Act).   This initial presumption of fairness is established where the class

28  settlement was negotiated at arm's length by counsel, where there was sufficient

11

1   investigation informing the parties of the issues, and where counsel is experienced

2   in similar litigation. *Murillo*, 921 F.Supp. at 445. All of these factors apply in the

3   present case in support of final approval.

4       **A.    Strength of the Plaintiffs' Case; Risk, Expense of Further**

5           **Litigation; Risk of Maintaining Class Status, Probability of**

6           **Recovering the Full Amount Claimed**

7       This case was extensively investigated and aggressively litigated by both

8   sides. Defendants have denied all allegations and vigorously contested all aspects

9   of the case. Based upon all available investigation and discovery, together with an

10  analysis of the applicable legal issues, this case had a "full liability" value in the

11  $3.5 to $5 million range. In other words, if Plaintiffs were to prevail on all legal

12  and factual arguments the class-wide damage claims would support a result in that

13  optimum range. However, other factors significantly impacted the settlement value

14  analysis, and support the compromise which is implicit in the Settlement.

15      All litigation includes some risk of an adverse outcome. While Plaintiffs

16  were optimistic with regard to their chances of success in the litigation, many issues

17  remained unresolved and posed significant risks for the class members. For

18  instance, although Plaintiffs had moved for conditional certification and facilitation

19  of Notice under the FLSA, 29 U.S.C. § 216(b), before staying the proceedings for

20  mediation the Court delayed the hearing on Plaintiffs' motion and elected to first

21  hear Defendants' motion to compel arbitration and to enforce class action waivers

22  contained with class member employment agreements. In this regard, Plaintiffs had

23  to consider the risk that the Court could grant Defendants' motion and enforce the

24  class action waivers set forth in the arbitration agreements, particularly inasmuch as

25  Defendants had already received a ruling in their favor on these same issues from

26  Judge Steven Sundvold in a related state court action. If Defendants prevailed on

27  their class action waiver agreement, the case would have been effectively

28  terminated. Assuming Plaintiffs defeated Defendants' motion to compel individual

1    arbitration proceedings, Plaintiffs also had to consider the risk that the Court could

2    potentially deny class certification under both Section 216(b) of the FLSA and

3    FRCP 23 based on Defendants' anticipated argument that "individual issues" would

4    predominate. Additionally, there was the risk the Court could certify only limited

5    portions of the class.

6        Another "discounting" factor was derived from Defendants' contention that

7    the alleged overtime violations of federal and state law were contradicted by

8    Defendant's evidence. Defendants were prepared to present data and witness

9    testimony that the class members had been properly compensated, that there was no

10   policy or practice of knowingly permitting "off-the-clock" overtime work, and no

11   policy or practice of time record manipulation. Defendants also disputed Plaintiffs'

12   contentions with regard to damages and asserted that actual unpaid overtime

13   worked by class members was non-existent or, at best, merely a small fraction of

14   the amounts claimed by Plaintiffs and *de minimis* for purposes of supporting a

15   damage recovery. Significantly, with regard to meal break violations, Defendants

16   disputed Plaintiffs allegations and also relied on recent case law (*see, Brinker*

17   *Restaurant Corp. v. Sup. Ct.*, 165 Cal.App.4th 25; (2008) 80 Cal.Rptr. 3d 791

18   Cal.App.4th Dist.) throwing into question the strength of meal break claims. Also

19   of concern was Defendants' contention that a significant number of California-

20   based class members had signed written meal break waivers which, if valid and

21   enforceable, would have eliminated the claims of these individuals entirely and

22   created potential individualized issues making class certification more difficult.

23       Another factor supporting a discount in settlement from "full value" on the

24   case was that many of the class members executed severance agreements and

25   releases at the time of employment separation. While these releases would

26   arguably not be a legal bar to the claims for FLSA overtime violations, they

27   potentially were a bar as to all state law claims and, at a minimum, the severance

28   payments received by these class members as consideration for the releases created

1    damage off-set issues and additional individualized issues potentially rendering

2    class certification more difficult. With regard to the Mortgage Bankers' claims

3    pertaining to loan origination licensing fees, Defendants maintained that the related

4    deductions from earned wages were properly authorized by many class members,

5    thereby eliminating their claims for unauthorized deductions and creating additional

6    individualized issues rendering class certification more difficult.

7          Litigation of these and other contested liability and damage issues would

8    involve competing testimony from expert witnesses, management personnel, and

9    current and former employees and their immediate supervisors. Risks of an adverse

10    result to the class members were substantial, and the "full liability" value could be

11    greatly reduced if the matter proceeded to trial. Finally, an important factor for

12    consideration in this case was the "economic reality" of the credit and lending

13    industry, particularly mortgage lenders like Defendants. This industry has

14    undergone near catastrophic upheaval over the last year with many companies

15    going out of business. This made a delay in resolution problematic for Plaintiffs

16    given significant collectability risks. Based upon all of these factors, the current

17    compromise settlement is fair, adequate and reasonable and avoids substantial risks

18    of a lower recovery, and potentially a non-recovery, by the class members if the

19    case was forced to proceed to trial.

20        **B.**   **The Amount Offered in Settlement**

21          The Settlement provides substantial compensation for all class members.

22    Despite the fact the legal claims in the present case are more problematical and

23    more difficult to "class out" the commensurate per person and per week allocations

24    are more favorable to individual class members than the amounts previously

25    approved in the *Gonzalez* case. Each class member is to be paid a designated

26    percentage of the Settlement Fund based on their total earnings during the relevant

27    class period. Because Plaintiffs would face substantial risks of receiving a lesser

28    amount should the matter be litigated to conclusion, proceed through appeal, and

14

then potentially be placed into a collection status, avoidance of these risks in favor of a guaranteed payment to class members was prudent and is supportive of the finding that the Settlement is reasonable and adequate. *See In re Mego Financial Corp. Sec.Litg.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 624-25 (9th Cir. 1982).

### C.    Investigation, Completed Discovery, and the Stage of the Proceedings

Where the Parties have "sufficient information to make an informed decision about Settlement" significant weight should be given to Class Counsel's assessment that a Settlement is fair, adequate and reasonable. *See, Mego, supra,* 213 F.3d at 459. In the present case, Class Counsel has conducted vigorous investigation and extensive discovery including analysis of voluminous employment and compensation materials, numerous interviews of relevant witnesses, and consultation with an expert statistician and a business valuation expert, all directed toward determining the extent of class members' damages and the risks of non-collectability. All of this investigation and discovery supports the Settlement decision. The extensive background investigation and discovery, as well as outside expert consultation and analysis, has enabled Class Counsel to adequately assess both the liability and damage aspects of the case and to evaluate the potential risks and benefits associated with further litigation as opposed to the benefits of the proposed Settlement.

### D.    The Experience and Views of Counsel and the Reaction of Class Members

Throughout this litigation, Plaintiffs have been represented by experienced Class Counsel with substantial experience in similar litigation, including direct experience in cases involving other mortgage lending companies similar to Defendants. With regard to the "reactions of Class Members" it is important to note that there were *no objectors* to the Settlement. There were only nine (9) opt-

1   outs, which is less than *.005% of the class*. Moreover, the *claims rate in excess of*

2   *90%* is outstanding, and suggests overwhelming acceptance of the benefits of the

3   Settlement.

4   **E.    Fraud or Collusion**

5   The prosecution of this case has been vigorous and the Settlement is the

6   result of arm's length bargaining with the assistance of an experienced mediator.

7   Courts presume the absence of fraud or collusion in settlement negotiations unless

8   evidence to the contrary is offered. *Murillo v. Texas A&M University System*, 921

9   F.Supp. 443, 446 (S.D. Tex. 1996); NEWBERG ON CLASS ACTIONS § 11.51 (4th ed.

10  2002). There is nothing in the circumstances presented in the present case

11  suggesting any manner of fraud or collusion among the Parties to this Settlement.

12  **V.    ALLOCATION OF SETTLEMENT**

13  **A.    Allocation Between Sub-Groups**

14  The allocation among the various sub-classes in this case is fair, adequate

15  and reasonable based upon the comparative characteristics of those sub-classes, and

16  the comparative value of each sub-class' potential claims and the comparative risks

17  and legal arguments associated with those claims. Class Counsel, with input from

18  the Class Representatives, has allocated the aggregate settlement to account for the

19  differences between these sub-groups. To be sure, no allocation formula is perfect,

20  nor can complex legal issues and the weighing of competing legal theories and their

21  chances of success or failure be made subject to a mathematically precise model.

22  The current allocation system, as set forth in the Joint Stipulation of Settlement is

23  an attempt to consider the multiple factors inherent in comparing the various sub-

24  group claims and arriving at an allocation between the groups that is fair, adequate

25  and reasonable.

26  There are seven sub-classes as set forth in the Settlement Agreement and as

27  defined at paragraph 1.15. The allocation of the net settlement amount (net

28  distributable settlement) between the sub-classes is described in paragraph 10.2.

1   This allocation can also be expressed in terms of percentages of the aggregate. In

2   that calculation the following approximate percentages apply: (a) Subclass A:

3   consists of only 20 people, but because of the relative strength of their claims they

4   will receive approximately $73,000.00; (b) Subclass B: consists of approximately

5   110 mortgage bankers who worked from January 1, 2008 until the present and will

6   receive approximately $4,369.67; (c) Subclass C: consists of approximately 317

7   individuals and they will receive approximately $916,899.88; (d) Subclass D:

8   consists of approximately 214 individuals and they will receive approximately

9   $117,408.81; (e) Subclass E: consists of approximately 159 individuals and they

10  will receive approximately $215,256.18 of the settlement; (f) Subclass F: consists

11  of approximately 30 individuals and they will receive approximately $16,558.49

12  and finally, (g) Subclass G: constitutes of approximately 423 people who could

13  qualify as PAGA plaintiffs. These California plaintiffs who are also included in

14  one or more of the previous sub-classes and whose claims are in the amount of

15  approximately $123,409.00, but whose actual distributions are divided with the

16  State of California pursuant to the terms of PAGA. It can be seen that some of the

17  sub-class claims are valued substantially more than others, and the reasons for this

18  comparative allocation are discussed below.

19      Subclass A consists of the individual opt-in class members who filed

20  consents to join and became individual plaintiffs in the case. They took the

21  initiative to actively pursue their claims under the FLSA opt-in system and would

22  have no risk associated with class certification since they were individual plaintiffs

23  whose claims would be adjudicated even if the class as a whole was not certified

24  under Rule 23. Moreover, they obtained an additional benefit in that they could

25  receive payment for claims under the *Gonzalez* settlement and also receive

26  payments under the current settlement, i.e. the normal release of claims effective as

27  to claimants in the *Gonzalez* settlement would not bar these individual opt-in

28  plaintiffs from a recovery in the current *D'Asero* case. These individuals are

17

entitled to this benefit because their participation enhanced the prosecution of the case on behalf of all other non-opt in class members. This allocation is fair, adequate and reasonable.

Subclass B consists of the mortgage bankers who worked after the effective cut-off date of the *Gonzalez* settlement but prior to the effective date of the current settlement. Their allocation is minimal because investigation revealed that little or no uncompensated overtime or missed meal breaks applied to this group. Moreover, almost all members of this sub-class will also receive payments in the *Gonzalez* settlement. This allocation is fair, adequate and reasonable given the minimal claims involved with this group.

Subclass C consists of the loan processors, underwriters, and funders, none of whom signed any severance or release agreements, and who worked during the time period of August 2003 to the present. These individuals were not bound by or included in the *Gonzalez* settlement since they worked in a different job capacity than did the *Gonzalez* class. They had viable California and FLSA claims. They represented the largest group both in weeks worked and in total compensation earned by a substantial margin. The allocation of from the settlement to this group is fair, adequate and reasonable.

Subclass D consists of the North Carolina mortgage bankers, who did not sign severance agreement releases, and whose somewhat shortened class period under the FLSA (no California claims thus no 4 year statute under B&P 17200 et. seq.) runs from April 2005 to present. This group had a comparatively lower compensation rate and lower total earnings since North Carolina employees were paid less than California employees. Additionally, this group had only FLSA claims, not attendant and more generous California Labor Code claims, thus further restricting their potential recovery. This group also had class certification and forum selection issues, since Defendant would argue their situation created individual issues that should not be adjudicated in the present forum. Based on all

1  these considerations the allocation to this sub-group is fair, adequate and

2  reasonable.

3      Subclass E consists of California mortgage bankers, processors, underwriters

4  and funders who were excluded from the *Gonzalez* settlement because they had

5  entered into severance and release agreements with Defendant.  While cogent legal

6  arguments existed supporting the view that the releases were not enforceable, there

7  were also substantial arguments supporting the effectiveness of the severance and

8  release defense.  At a minimum, any amounts that could be attributed to a dispute

9  over unpaid wages might be used as an offset to this groups' claims.  Moreover,

10  this group had a more difficult task in obtaining and maintaining class certification

11  since individual issues regarding the amounts of severance paid, and the individual

12  offsets, could create a barrier to class-wide resolution.  For those reasons, the

13  claims of this group had to be discounted to some extent, and the current

14  compromise in the settlement is fair, adequate and reasonable.

15      Subclass F consists of North Carolina mortgage bankers all of whom signed

16  severance and release agreements.  This is a relatively small group and the

17  allocation is further effected by the fact that they lacked any California Labor Code

18  or California unfair competition law basis for recovery, thus their aggregate claims

19  were of lesser value than those of the California employees.  As previously noted,

20  this group also was paid less than the California mortgage bankers, and had a

21  shorter statute of limitations.  The allocation to this group is fair, adequate and

22  reasonable.

23      Subclass G consists of California employees with claims under the Private

24  Attorney General Act (PAGA) which is based on violations of the California Labor

25  Code.  These claims only apply to the California employees.  Moreover, those to

26  whom the PAGA claims apply are also part of at least one other sub-group.  Under

27  the terms of the PAGA (Cal.Lab.Code 2699 et. seq.) the recoverable penalties are

28  allocated 75% to the Labor and Workforce Development Agency and 25% to the

19

1   individual employees.  A balance was sought in settlement negotiations to award a

2   reasonable amount for the substantial penalty claims available under the PAGA but

3   also not to overload this portion of the case so as to enrich the State of California at

4   the expense of available settlement resources that could go to satisfying the claims

5   of the individual employees.  Potential PAGA claims could have been allocated

6   higher amounts than provided in the Settlement.  However, amounts paid in PAGA

7   penalties would commensurately reduce amounts available to satisfy other

8   individual claims that did not involve any sharing of the proceeds with the State.

9   On balance, the allocation in PAGA penalty claims is fair, adequate and reasonable

10  for the class and for the facilitation of this settlement.

11  **B.    The Amounts Allocated for Attorneys' Fees, Litigation Costs,**

12  **Claims Administration and Class Representative Service Awards**

13  **are Reasonable**

14          The requested combined attorneys' fees in this case of $750,000.00 are

15  below the combined "lodestar" for valuation of legal work performed on behalf of

16  the class.[8]  These fees are in conformance with accepted standards of

17  reasonableness.  The Mower, Carreon & Desai firm has expended over 1,400 hours

18  in the prosecution of this case and the related *Richardson* case, which consumed a

19  substantial percentage of total firm resources.  The lodestar for Mower, Carreon &

20  Desai, LLP is $819,120.00.  The Carter Firm and Quintilone & Associates have

21  expended in excess of 350 hours and have a "lodestar" over $209,651.00 in

22  connection with this case and the *Johanson* case.  The Mower, Carreon & Desai

23  firm's regular billing rate in similar class action cases, a rate which has been subject

24  to previous review in court-approved settlements involving our firm, is $650.00 per

25  hour for Jon Mower as the senior litigation partner in our firm and $550.00 per hour

26  for James Burton, who has over 20 years of litigation experience. including class

27  action litigation similar to the present action.  Plaintiffs' counsel has not been paid

28  [8] The combined lodestar of all Plaintiffs' counsel is $1,028,771.00.  See Decl. of
    Jon R. Mower at ¶ 14.

for any of the work undertaken. The Mower, Carreon & Desai firm, The Carter Firm, and Quintilone & Associates has also advanced costs in excess of $34,130.32. The attorneys' fees in this case will be divided between the Mower, Carreon & Desai firm, The Carter Firm, and Quintilone & Associates pursuant to the separate agreement of counsel and will not effect the total amount paid to the class or paid by Defendants. Importantly, this is not a pure "common fund" fee request since any part of the agreed upon $750,000 in attorneys' fees not awarded would revert to Defendants and would not provide any additional funds for the Class.

Class Counsel has obtained an overall excellent result for the class members by way of the monetary recovery in this case given all of the risks attendant to continued litigation. Indeed, without this case several hundred employees of Lending Tree would have gone completely uncompensated in the *Gonzalez* action. In addition, Plaintiffs are advised that the prosecution of this case has had the effect of changing certain of Defendants' employment policies, thus resulting in a substantial future benefit to all similarly situated employee groups.

California courts have developed the practice of calculating attorneys' fees with reference to the total recovery. *See, e.g., Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 45 (2000). The United States Supreme Court has also endorsed the "percentage of fund" method as an analytical tool in fee applications. *Blum v. Stenson*, 465 U.S. 886, 890 n. 16, 106 S.Ct. 1541, 79 L.Ed. 2d 891 (1984). In the Ninth Circuit, the "percentage of the benefit" approach is an accepted method for determining fees in a common fund case, and can and can be used as one criteria for determination of reasonableness in a non-common fund fee application. *See Lealao*, 82 Cal.App.4th at 27-31, 45 (summarizing this approach and citing a compilation of authorities); *Torrisi v. Tuscon Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Here, the agreed upon amount of attorneys' fees, which is below the actual "lodestar" amount, is presumptively reasonable and should be finally approved.

1    The total advanced litigation costs in the present case are $34,130.32 and it is

2    this amount for which Class Counsel seeks reimbursement.  Given the protracted

3    nature of this litigation which included requests for 29 U.S.C. § 216(b) notice, Rule

4    23 notice for settlement, retention of expert witnesses, multiple mediation sessions,

5    and extensive document production, this aggregate litigation cost is well within the

6    reasonable range.[9]

7    There is one remaining issue of contention that must be addressed.  Prior to

8    filing the present Motion for Final Approval, Class Counsel was informed that

9    Defendant was taking the position that the claims administration fees owed to

10   Simpluris, Inc. should be paid not out of the $2,500,000.00 Settlement Amount, but

11   should instead be paid out of Class Counsel's cost reimbursement!  Class Counsel

12   disagrees for reasons set forth herein, and requests that the Order of Final Approval

13   specify that the fees to be paid to third party claims administrator Simpluris, Inc. be

14   paid from the $2,500,000.00 Settlement Amount as is specified in the Settlement at

15   section 12.3 and not utilized to otherwise reduce Class Counsel's right to

16   reimbursement of advanced costs.  The reasons are as follows:

17   • Defendant or defense counsel retained Simpluris and entered into a
18      contractual relationship with them to provide claims administration
19      services.  Class Counsel had no role in that retention, no agreement
20      with Simpluris, and no commensurate opportunity to negotiate this fee.

21   • Class Counsel has never advanced any monies to Simpluris as "costs"
22      and seeks no reimbursement.  Simpluris is a third party administrator
23      not retained by Plaintiffs or Class Counsel and its fees are not
24      legitimately viewed as "costs" but instead, as referenced in the
25      Settlement, are in a separate category.

26   • The Settlement at sections 1.7, 1.8 and 12.3 makes clear that while
27      actual "costs" incurred by Class Counsel in ongoing claims issues

28
_____
[9] *See* Declaration of Jon R. Mower at ¶ 15.

22

1  would fall within the definition of "costs" the "settlement

2  administration fees" are a separate category.  This is consistent with

3  the Memorandum of Understanding (MOU) signed by the parties

4  immediately following mediation.[10]  To read the Settlement

5  Agreement otherwise would be to negate any purpose or meaning to

6  the provisions of sections 1.7, 1.8 and 12.3 that separately reference

7  "settlement administration fees" and provide that "… all amounts paid

8  for claims administration shall be deducted from the Settlement

9  Amount."  (see section 12.3)

10  • Finally, and most importantly, this <u>exact same language</u> was used in

11  the *Gonzalez* Settlement Agreement, again at sections 1.7, 1.8 and

12  12.3.  Both the *Gonzalez* Settlement Agreement and the current

13  Settlement Agreement were initially drafted by defense counsel.

14  Indeed, defense counsel suggested to the undersigned that for the sake

15  of consistency in the handling of claims and for Court approval, it

16  would be a good idea to use the general provisions in the *Gonzalez*

17  Settlement Agreement in the present case, and we agreed to so.  How

18  was this dealt with in *Gonzalez* the time of the Order of Final

19  Approval?  Reference to Exhibit 3, paragraph 10 attached to the

20  Declaration of Jon R. Mower shows that in *Gonzalez*, using the exact

21  same contractual provisions as in the current case, the Court ordered

22  separate payment of $38,000.00 for the claims administration fees to

23  Simpluris, Inc.  That is what Plaintiffs ask the Court to do by way of

24  the current Order of Final Approval.

25  As provided in the Settlement, the reasonable claims administration fees of

26  $37,000.00 should be paid out of the $2,500,000.00 Settlement Amount.

27  ///

28  _____

[10]  See Declaration of Jon R. Mower at ¶ 18 and Exhibit 14 thereto.

1    The aggregate Class Representative Enhancement Awards are well within

2 accepted standards.  The Class Representatives were actively involved in the

3 litigation.  They assisted in compiling investigative materials, attended numerous

4 group meetings regarding status and strategy, participated in the mediations,

5 provided responses to written discovery, and provided invaluable assistance to

6 Class Counsel on an ongoing basis in the prosecution of this case.  These

7 enhancement awards represent only 2.5% of the total aggregate Settlement Fund

8 and are well within the reasonable range.  *See Kirk v. Niedert*, 142 F.3d 1004, 1016

9 (Ill. 1998) (approving individual incentive payments of $25,000.00 to class

10 representatives); *In re Continental Illinois Securities Litg.*, 962 F.2d 566, 571 (7th

11 Cir. 1992) (approving incentive awards to compensate plaintiffs for the risks

12 incurred in taking active roles in the class action prosecution).

13 **VI.    CONCLUSION**

14    The Court should finally approve this Settlement and issue its Order

15 facilitating final distribution of the settlement proceeds to the Class in conformance

16 with the Joint Stipulation of Settlement.  All of the Court's orders regarding claims

17 administration have been carried out following Preliminary Approval, and the

18 Notice and claims process has fully complied with the Court's Order on

19 Preliminary Approval.  The class has expressed, by virtue of their non-objections,

20 miniscule opt-out rate, and extremely high claims rate, an overwhelming

21 acceptance of the terms and conditions of the settlement, which meets all criteria of

22 fairness.  An Order of Final Approval of the Settlement is appropriate and is in

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

conformance with FRCP 1 in securing "the just, speedy and inexpensive determination" of the present action.

WHEREFORE, it is requested that the Court enter the proposed Order.

Dated: March 25, 2009                    MOWER, CARREON & DESAI, LLP

_____

Jon R. Mower, Esq. (SBN 72034)
James A. Burton, Esq. (SBN 149253)
Attorneys for Representative Plaintiffs
and Class members

# EXHIBIT 1

1
2
3
4
5
6
7
8
9      UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA

11   FRANK D'ASERO, EZEKIEL            Case No. SACV08-00384- RSWL
     MOHAMMAD, POURIA                  (JWJx)
12   SAFABAKHSH, JOSEPH CUGLIARI,
     JR., ANGELA RICHARDSON,           **JOINT STIPULATION OF**
13   BRIAN JOHANSON and BRENDAN        **SETTLEMENT AND RELEASE**
     DWYER, individually and on behalf of
14   all other persons similarly situated and
     on behalf of the general public,
15
                    Plaintiffs,
16
17           v.

18   HOME LOAN CENTER, INC. dba
     LENDING TREE LOANS, a California
19   corporation, LENDING TREE, LLC, a
     Delaware limited liability company,
20   LENDING TREE, INC., a Delaware
     corporation, and DOES 1 though 10,
21   inclusive,

22                  Defendants.

23
24
25
26
27
28

W02-WEST:1JWK1\401032446.1                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P _2 0_

1      This Joint Stipulation of Settlement and Release (the "Agreement") is

2  made by and between, on the one hand, Plaintiffs Frank D'Asero, Ezekiel

3  Mohammed, Pouria Safabakhsh, Joseph Cugliari, Jr., Angela Richardson, Brian

4  Johanson, and Brendan Dwyer, on behalf of themselves and the Class Members,

5  and, on the other hand, Defendants Home Loan Center, Inc., d/b/a LendingTree

6  Loans, LendingTree, LLC, LendingTree, Inc., and IAC/Interactive Corp., and is

7  intended to finally resolve the putative class action captioned *D'Asero, et al. v.*

8  *Home Loan Center, Inc. d/b/a LendingTree Loans, et al.*, Case No. CV08-00384

9  RSWL (JWJx), pending in the United States District Court for the Central District of

10  California (the "Litigation").

11

12  **1.    DEFINITIONS**

13      1.1    The term "Settlement" means the settlement described in this

14  Agreement.

15

16      1.2    The term "Claims Administrator" means Simpluris, Inc., the firm

17  that the Parties mutually agreed shall be responsible for the administration of the

18  Settlement, distribution of the Settlement Amount, and matters necessarily related

19  thereto, pursuant to the terms of this Agreement.

20

21      1.3    The term "District Court" or "Court" as used herein means the

22  United States District Court for the Central District of California.

23

24      1.4    The term "Plaintiffs" or "Named Plaintiffs" means the following

25  individuals: Frank D'Asero, Ezekiel Mohammed, Pouria Safabakhsh, Joseph

26  Cugliari, Jr., Angela Richardson, Brian Johanson, and Brendan Dwyer .

27

28

-1 of 45-

Exhibit 1 P27

1    1.5    The term "Defendants" means Home Loan Center, Inc. d/b/a

2  LendingTree Loans, LendingTree, LLC, LendingTree, Inc., and IAC/Interactive

3  Corp., and their former and present parents, subsidiaries and affiliated corporations,

4  and its officers, directors, employees, partners, shareholders and agents, and any

5  other successors, assigns, or legal representatives.

6

7    1.6    The term "Parties" means Plaintiffs and Defendants.

8

9    1.7    The term "Settlement Amount" means an amount not to exceed

10  Two Million Five Hundred Thousand Dollars ($2,500,000.00), inclusive of

11  attorneys' fees not to exceed Seven Hundred Fifty Thousand Dollars ($750,000.00)

12  and costs and expenses not to exceed Fifty Thousand Dollars ($50,000.00) directly

13  related to the Litigation (which includes all such fees and costs incurred to date,

14  including both parties' mediation costs, as well as all such fees and costs incurred in

15  documenting the settlement, securing court approval of the settlement, administering

16  the settlement, and obtaining a dismissal of the Litigation), the Incentive Awards,

17  and all costs of administration, including settlement administration fees.  Under no

18  circumstances will Defendants be liable for an amount that exceeds the Settlement

19  Amount.  The Settlement Amount does not include Defendants' portion of the

20  payroll tax, including the employer FICA, SUTA, and SDI contributions.  Although

21  the Settlement is on behalf of all Defendants, Home Loan Center, Inc. d/b/a Lending

22  Tree Loans will be exclusively responsible for payment of the Settlement Amount.

23

24    1.8    The term "Net Settlement Amount" means the Settlement

25  Amount minus attorneys' fees not to exceed Seven Hundred Fifty Thousand Dollars

26  ($750,000.00) and costs and expenses not to exceed Fifty Thousand Dollars

27  ($50,000.00) directly related to the Litigation (which includes all such fees and costs

28

W02-WEST:1JWK1401032446.1                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit  1   P 28

1 incurred to date, both parties' mediation costs, as well as all such fees and costs
2 incurred in documenting the settlement, securing court approval of the settlement,
3 administering the settlement, and obtaining a dismissal of the Litigation), the
4 Incentive Awards, and all costs of administration, including settlement
5 administration fees.

6

7       1.9    The term "Plaintiffs' Counsel" means Mower, Carreon & Desai,
8 LLP.

9

10       1.10   The term "Preliminary Approval Order" means the order of the
11 District Court that grants preliminary approval of the Settlement.

12

13       1.11   The term "Final Approval Order" means the order of the District
14 Court that grants final approval of the Settlement.

15

16       1.12   The term "Effective Date" means the date on which the last of
17 the following occurs:  (a) the date affirmance of an appeal of the Judgment becomes
18 final under the California Rules of Court, the expiration of the time for a petition for
19 review of the Final Judgment and, if review is granted, the date of final affirmance
20 of the Final Judgment following review pursuant to that grant; (b) the date of final
21 dismissal of any appeal from the Judgment or the final dismissal of any proceeding
22 on review of any court of appeal's decision relating to the Judgment; or (c) if no
23 appeal is filed, the expiration date of the time for the filing or noticing of any appeal
24 from the Judgment, whichever is later.

25

26       1.13   The term "Final Judgment" means the final judgment dismissing
27 this Litigation with prejudice.

28

-3 of 45-

Exhibit **1** P **29**

1

2      1.14   The term "Class Period" means as follows for each Subclass,

3  respectively:

4            • Subclass "A" – California Mortgage Bankers (Opt-ins):  April 9,

5              2004 to the date of preliminary approval of the Settlement.

6            • Subclass "B" – California Mortgage Bankers: January 1, 2008 to

7              the date of preliminary approval of the Settlement.

8            • Subclass "C" – California Loan Processors, Underwriters, and

9              Funders (No releases): August 2, 2003 to the date of preliminary

10             approval of the Settlement.

11           • Subclass "D" – North Carolina Mortgage Bankers (No Releases):

12             April 9, 2005 to the date of preliminary approval of the

13             Settlement.

14           • Subclass "E" – California Loan Processors, Underwriters, and

15             Funders (Releases): August 2, 2003 to the date of preliminary

16             approval of the Settlement.

17           • Subclass "F" – North Carolina Mortgage Bankers (Releases):

18             April 9, 2005 to the date of preliminary approval of the

19             Settlement.

20           • Subclass "G" – California Private Attorney General Act claims:

21             April 9, 2007 to the date of preliminary approval of the

22             Settlement.

23

24     1.15   The term "Class Members" means as follows:

25           • Subclass "A": The following former and current loan officers,

26             mortgage bankers, equity specialists, or any similar positions,

27             who were or are employed by Defendants in California between

28

-4 of 45-

Exhibit 1 P 30

1    the dates of April 9, 2004 and the date of preliminary approval of
2    the Settlement who may file proper claim forms in both the
3    related <u>Gonzales</u> settlement and the instant settlement based
4    upon their execution and submission of an FLSA opt-in consent
5    form prior to the parties reaching the Settlement discussed
6    herein, respectively: Victor Antablian; Richard V. Biley; Jason
7    Casella; Debi Jo Croissant; Frank D'Asero; Anthony Durbin;
8    Mark Fragola; Stephen D. Funk; Anoush Garakani; Joshua
9    Horton; Robert Iovinelli; Ezekiel Mohammed; Aaron
10   Maximillian Mohammed; Courtney Nelson; Phong H. Nguyen;
11   Pouria Safabakhsh; David Tadeo, Jr.; MaiHanh Tran; Bradley T.
12   Wilson; and Chris Woods.

13   •  Subclass "B":  All former and current loan officers, mortgage
14   bankers, equity specialists, or any similar positions, who were or
15   are employed by Defendants in California between the dates of
16   January 1, 2008 and the date of preliminary approval of the
17   Settlement.

18   •  Subclass "C":  All former and current loan processors, account
19   managers, equity coordinators, underwriters, funders, credit
20   analysts, credit managers, or similar positions, who were or are
21   employed by Defendants in California between August 2, 2003
22   and the date of preliminary approval of the Settlement.

23   •  Subclass "D":  All former and current loan officers, mortgage
24   bankers, equity specialists, or any similar positions, who were
25   employed by Defendants in North Carolina between April 9,
26   2005 and the date of preliminary approval of the Settlement.

27

28

W02-WEST:1JWK1\401032446.1                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P_31_

1        • Subclass "E": All former and current loan processors, account

2          managers, equity coordinators, underwriters, funders, credit

3          analysts, credit managers, or any similar positions, who were

4          employed by Defendants in California between August 2, 2003

5          and the date of preliminary approval of the Settlement, who

6          previously executed a release of all claims, respectively.

7        • Subclass "F":  All former and current loan officers, mortgage

8          bankers, equity specialists, or any similar positions, who were or

9          are employed by Defendants in North Carolina between April 9,

10        2005 and the date of preliminary approval of the Settlement, who

11        previously executed a release of all claims, respectively.

12       • Subclass "G":  All former and current loan officers, mortgage

13        bankers, equity specialists, loan processors, account managers,

14        equity coordinators, underwriters, funders, credit analysts, credit

15        managers, or any similar positions, who were employed by

16        Defendants in California between April 9, 2007 and the date of

17        preliminary approval of the Settlement.

19      1.16   The term "Participating Class Member" means a Class Member

20 who has not requested exclusion from the Settlement and who has returned a valid

21 and timely Claim Form pursuant to Section 9 of this Agreement.

23      1.17   The term "Individual Settlement Payment" means the amount to

24 be paid to a Participating Class Member pursuant to Section 10.2 of this Agreement.

26      1.18   The term "Incentive Award" means the amount to be paid to

27 each Named Plaintiff, respectively, pursuant to Section 11.1 of this Agreement.

28

W02-WEST:1JWK1\401032446.1                         JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P **32**

1

2        1.19   The term "Claim Form" means the claim form and FLSA

3 consent form described in Sections 8.2 and 9.1 of this Agreement.

4

5        1.20   The term "Memorandum of Understanding" means the

6 Memorandum of Understanding executed by the Parties on or about August 15,

7 2008.

8

9 **2.    BACKGROUND**

10        Plaintiffs Frank D'Asero, Ezekiel Mohammed, and Pouria Safabakhsh

11 filed a lawsuit entitled *D'Asero, et al. v. Home Loan Center, Inc. d/b/a LendingTree*

12 *Loans, et al.*, in the United States District Court, Central District of California, Case

13 No. CV08-00384 RSWL (JWJx), on April 9, 2008 (hereinafter "*D'Asero*"). The

14 original Complaint in *D'Asero* asserted on behalf of loan officers, mortgage

15 bankers, equity specialists, and any similar positions, causes of action for:

16 (1) Unpaid Overtime (FLSA 29 U.S.C. §§ 207, 211(c), and 216(b)); (2) Unpaid

17 Overtime (California Labor Code §§ 510, 1194; I.W.C. Wage Orders 4-2000 and 4-

18 2001); (3) Failure to Provide Meal Breaks (California Labor Code §§ 226.7 and

19 512); (4) Unauthorized Deductions (California Labor Code §§ 221, 450, and 2802);

20 (5) Unauthorized Deductions (North Carolina General Statute §§ 95-25.8 and 95-

21 25.22); (6) Waiting Time Penalties (California Labor Code §§ 201-203); (7) Waiting

22 Time Penalties (North Carolina General Statute §§ 95-25.7 and 95-25.22);

23 (8) Improper Wage Statements (California Labor Code § 226(a)); and (9) Unfair

24 Business Practices (California Business & Professions Code §§ 17200-17208).

25

26        Plaintiff Angela Richardson filed a lawsuit entitled *Richardson v.*

27 *Home Loan Center, Inc. d/b/a LendingTree Loans* in the Superior Court of

28

W02-WEST:1JWK1\401032446.1                        JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P**33**

1  California for the County of Orange, Case No. 07-CC-01337, on August 2, 2007

2  (hereinafter "*Richardson*").  The operative Complaint in *Richardson* asserts on

3  behalf of loan processors, account managers, equity coordinators, underwriters,

4  funders, credit analysts, credit managers, and any similar positions, causes of action

5  for:  (1) Unpaid Overtime (California Labor Code §§ 510, 1194; I.W.C. Wage

6  Orders 4-2000 and 4-2001); (2) Failure to Provide Meal Breaks (California Labor

7  Code §§ 226.7 and 512); (3) Waiting Time Penalties (California Labor Code

8  §§ 201-203); (4) Improper Wage Statements (California Labor Code § 226(a)); and

9  (5) Unfair Business Practices (California Business & Professions Code §§ 17200-

10  17208).

11

12        Plaintiffs Brian Johanson and Brendan Dwyer filed a lawsuit entitled

13  *Johanson, et al., v. Home Loan Center, Inc, et al.* in the Superior Court of California

14  for the County of Orange, Case No. 07-CC-01405, on November 8, 2007

15  (hereinafter "*Johanson*").  The Complaint in *Johansen* asserts the same causes of

16  action on behalf of the same putative classes of employees as alleged in the

17  operative *Richardson* Complaint.

18

19        On May 30, 2008, Defendants filed a motion to compel arbitration of

20  the claims asserted in the original Complaint in *D'Asero* based upon the Arbitration

21  Agreements signed by Plaintiffs D'Asero, Mohammed, and Safabakhsh during the

22  course of their employment with Defendants.

23

24        On June 10, 2008, Plaintiffs D'Asero, Mohammed, and Safabakhsh

25  filed a First Amended Complaint ("FAC") in the *D'Asero* case which added a new

26  cause of action for violation of the California Private Attorney General Act of 2004

27  ("PAGA") Penalties (California Labor Code §§ 2699, et seq.).  Thus, the FAC in

28

-8 of 45-

W02-WEST:1JWK1\401032446.1          JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P 34

1  *D'Asero* asserted causes of action for:  (1) Unpaid Overtime (FLSA 29 U.S.C.

2  §§ 207, 211(c), and 216(b)); (2) Unpaid Overtime (California Labor Code §§ 510,

3  1194; I.W.C. Wage Orders 4-2000 and 4-2001); (3) Failure to Provide Meal Breaks

4  (California Labor Code §§ 226.7 and 512); (4) Unauthorized Deductions (California

5  Labor Code §§ 221, 450, and 2802); (5) Unauthorized Deductions (North Carolina

6  General Statute §§ 95-25.8 and 95-25.22); (6) Waiting Time Penalties (California

7  Labor Code §§ 201-203); (7) Waiting Time Penalties (North Carolina General

8  Statute §§ 95-25.7 and 95-25.22); (8) Improper Wage Statements (California Labor

9  Code § 226(a)); (9) Unfair Business Practices (California Business & Professions

10  Code §§ 17200-17208); and (10) Private Attorney General Act of 2004 ("PAGA")

11  Penalties (California Labor Code §§ 2699, et seq.).

12

13        Concurrent with the filing of the FAC in *D'Asero*, Plaintiffs D'Asero,

14  Mohammed, and Safabakhsh filed a motion for conditional class certification and to

15  facilitate notice pursuant to 29 U.S.C. § 216(b).

16

17        Pursuant to a stipulation and proposed order submitted jointly by the

18  Parties in the *D'Asero* case on June 17, 2008, the Court stayed the *D'Asero* matter

19  for ninety (90) days to facilitate mediation.  In this regard, the mediation was

20  intended to reach a global resolution of all claims asserted on behalf of all parties

21  and putative class members not only in the *D'Asero* case, but also in the *Richardson*

22  and *Johanson* cases as well.  Between June 17, 2008 and August 14, 2008, the

23  Parties engaged in informal discovery which included the exchange of class member

24  payroll data.  The Parties mediated all three cases before Barry Winograd, Esq. on

25  August 15, 2008 in Costa Mesa, California.  As a result of the approximately ten-

26  hour mediation session, the Parties, on August 15, 2008, entered into a

27  Memorandum of Understanding to resolve this Litigation.

28

W02-WEST:1JWK1\401032446.1                          JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit 1  P 35

1    On September 15, 2008, the Parties entered into a stipulation whereby

2  Plaintiffs filed a Second Amended Complaint ("SAC") in the *D'Asero* case. The

3  SAC deleted Michael McCarver as a Named Plaintiff and added the following

4  persons as Named Plaintiffs: Joseph Cugliari, Jr.; Angela Richardson; Brian

5  Johanson; and Brendan Dwyer. No new causes of action were added to the SAC.

6  The purpose of the SAC was to incorporate into the *D'Asero* case all parties and

7  claims previously asserted in the *Richardson* and *Johanson* cases. Upon final

8  approval and full and complete performance of the terms of this Agreement, the

9  *Richardson* and *Johanson* cases will be dismissed with prejudice.

10

11    The Parties believe this Agreement constitutes a fair, adequate, and

12  reasonable settlement of the Litigation and have arrived at this Agreement in arms-

13  length negotiations, taking into account all relevant factors, present and potential,

14  and will so represent to the Court. In addition, Mr. Barry Winograd, may, at his

15  discretion, execute a Declaration supporting the settlement, and the Court may, in its

16  discretion, contact Mr. Winograd to discuss the settlement and whether or not the

17  settlement is fair and reasonable.

18

19  **3.    SCOPE, PURPOSE, AND BENEFITS OF THE SETTLEMENT**

20    3.1    This Agreement is intended to and does effectuate the full, final,

21  and complete resolution of the Litigation.

22

23    3.2    As detailed in Sections 9 and 10 below, this Agreement

24  establishes a claims resolution procedure to resolve all claims alleged in the

25  Litigation.

26

27

28

-10 of 45-

Exhibit __1__ P_34_

3.3    The Parties believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests. In light of these realities, the Parties believe that this Settlement is the best way to resolve the disputes between them.

## 4.    JURISDICTION

The District Court has jurisdiction over the Parties and the subject matter of this Litigation. The Litigation includes claims that, while Defendants deny them in their entirety, would, if proven, authorize the District Court to grant relief pursuant to the statutes and common law cited therein. If the Settlement is approved, the District Court will retain jurisdiction of this action solely for the purpose of interpreting, implementing, and enforcing this Agreement consistent with the terms herein.

## 5.    STATEMENT OF NO ADMISSION

5.1    This Agreement does not constitute, is not intended to constitute, and will not be deemed to constitute, an admission by Defendants as to the merits, validity, or accuracy of any of the allegations or claims made against it in the Litigation.

5.2    Nothing in this Agreement or the Memorandum of Understanding, nor any action taken or made in implementation thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the negotiations leading to the Agreement, is intended by the Parties to, nor will any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other forum or proceeding as evidence of any

-11 of 45-

Exhibit __1__ P __37__

1  violation of any federal, state, or local law, statute, ordinance, regulation, rule or

2  executive order, or any obligation or duty at law or in equity. Notwithstanding the

3  foregoing, the Agreement may be used in any proceeding in the District Court that

4  has as its purpose the interpretation, implementation, or enforcement of the

5  Agreement or any orders or judgments of the District Court entered into in

6  connection therewith.

7

8      5.3   All Claim Forms filed or other evidence produced or created by

9  the Parties in connection with the claims resolution procedures do not constitute, are

10 not intended to constitute, and will not be deemed to constitute, an admission by

11 Defendants of any violation of any federal, state, or local law, statute, ordinance,

12 regulation, rule or executive order, or any obligation or duty at law or in equity.

13

14     5.4   The Parties agree that Fed. R. Civ. P. 23(b)(3) class certification

15 under the terms of this Agreement is for settlement purposes only. Nothing in this

16 Agreement will be construed as an admission or acknowledgement of any kind that

17 any class should be certified or given collective treatment in the Litigation or in any

18 other action or proceeding. Further, neither this Agreement nor the District Court's

19 actions with regard to this Agreement will be admissible in any court or other

20 tribunal regarding the propriety of class certification or collective treatment. In the

21 event that this Agreement is not approved by the District Court or any appellate

22 court, is terminated, or otherwise fails to be enforceable, Defendants will not be

23 deemed to have waived, limited, or affected in any way any of their objections or

24 defenses in the Litigation, including, but not limited to, their defenses in opposition

25 to class certification.

26

27

28

W02-WEST:1JWK1\401032446.1

JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit  1  P 38

## 6.    CLASS CERTIFICATION

For the purposes of this Agreement only, the Parties agree to the certification of the Settlement Class, to include Subclasses A through G, pursuant to Fed. R. Civ. P. 23(b)(3). As set forth above, Defendants expressly reserve their right to oppose class certification should the District Court decide to not approve this Settlement.

## 7.    WAIVER, RELEASE, AND DISMISSAL

### 7.1    Release and Waiver of Claims by the Class Members

The Class Members, including the Named Plaintiffs, and their successors, assigns, and/or agents, shall fully and finally release and discharge Defendants and each of their past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, subsidiaries, affiliates, parent companies and attorneys (the "Released Parties"), from any and all applicable federal and California wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, to include but not limited to claims for wages, vacation pay/PTO, commissions, expenses, fees, overtime, off-the-clock work, meal periods, rest periods, interest, Private Attorneys' General Act penalties, waiting time penalties, other penalties, and attorneys' fees, whether known or unknown, for economic damages, non-economic damages, restitution, penalties and/or liquidated damages arising during the Class Period based on the claims alleged and reasonably related to those alleged in Plaintiffs' lawsuit under both California law and the Fair Labor Standards Act (the "Released Claims").

W02-WEST:1JWK1\401032446.1                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P __39__

1       The Released Claims include any unknown claims that the Class

2 Members do not know or suspect to exist in their favor at the time of the release

3 with respect to the Released Claims, which, if known by them, might have affected

4 their settlement with, and release of, the Released Parties or might have affected

5 their decision not to object to this Settlement. With respect to the Released Claims,

6 the Class Members stipulate and agree that, upon the Effective Date, the Class

7 Members shall be deemed to have, and by operation of the Final Judgment shall

8 have, expressly waived and relinquished, to the fullest extent permitted by law, the

9 provisions, rights and benefits of Section 1542 of the California Civil Code, or any

10 other similar provision under federal or state law, which provides:

11

12       **A GENERAL RELEASE DOES NOT EXTEND TO**

13       **CLAIMS WHICH THE CREDITOR DOES NOT KNOW**

14       **OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT**

15       **THE TIME OF EXECUTING THE RELEASE, WHICH IF**

16       **KNOWN BY HIM OR HER MUST HAVE MATERIALLY**

17       **AFFECTED HIS OR HER SETTLEMENT WITH THE**

18       **DEBTOR.**

19

20       The Class Members may hereafter discover facts in addition to or

21 different from those they now know or believe to be true with respect to the subject

22 matter of the Released Claims, but upon the Effective Date, shall be deemed to

23 have, and by operation of the Final Judgment shall have, fully, finally, and forever

24 settled and released any and all of the Released Claims, whether known or

25 unknown, suspected or unsuspected, contingent or mature, which now exist, or

26 heretofore have existed, upon any theory of law or equity now existing or coming

27 into existence in the future, including, but not limited to, conduct that is negligent,

28

W02-WEST:1JWK1\401032446.1                      JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P **40**

1    intentional, with or without malice, or a breach of any duty, law or rule, whether in

2    tort, contract, or for violation of any state or federal statute, rule, or regulation

3    arising out of, relating to, or in connection with any act or omission by or on the part

4    of any of the Released Parties committed or omitted prior to the execution hereof,

5    without regard to the subsequent discovery or existence of such different or

6    additional facts.

7

8         The Class Members agree not to sue or otherwise make a claim against

9    any of the Released Parties that is in any way related to the Released Claims.

10

11        7.1.1   **The Private Attorneys' General Act of 2004**

12

13        Parties hereto, including the Class Members, stipulate and agree that

14   the consideration paid to the Class Members pursuant to this Settlement

15   compensates the Class for all wages and penalties due to them all penalties, all

16   liability for alleged pay stub violations and any related penalties.  As such,

17   Defendants cannot be liable henceforth for any penalties pursuant to the Private

18   Attorneys' General Act ("PAGA") of 2004 because Class Members are not

19   "aggrieved employees" for purposes of PAGA.  The Parties hereto, including the

20   Class Members, further stipulate and agree that even if any Class Member is

21   considered or determined to be an "aggrieved employee" for purposes of the PAGA,

22   said Class Member waives any potential right to any penalty prescribed by the

23   PAGA relating to the Released Claims.

24

25

26

27

28

JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit ___ P 41

1        7.2    **Release and Waiver of Claims by the Participating Class**
2    **Members**

3        As of the Effective Date, all Participating Class Members, including the
4    Named Plaintiffs, in addition to releasing the Released Parties from the Released
5    Claims as outlined in Section 7.1 above, release the Released Parties from any and
6    all applicable Federal wage and hour claims, rights, demands, liabilities and causes
7    of action of every nature and description, whether known or unknown, for economic
8    damages, non-economic damages, restitution, penalties and/or liquidated damages
9    arising during the Class Period based on the claims alleged and reasonably related to
10    those alleged in Plaintiffs' lawsuit under both California law and the Fair Labor
11    Standards Act (the "Released Federal Claims").

12

13        The Released Federal Claims include any unknown claims that the
14    Participating Class Members do not know or suspect to exist in their favor at the
15    time of the release with respect to the Released Federal Claims, which, if known by
16    them, might have affected their settlement with, and release of, the Released Parties
17    or might have affected their decision not to object to this Settlement. With respect
18    to the Released Federal Claims, the Participating Class Members stipulate and agree
19    that, upon the Effective Date, the Participating Class Members shall be deemed to
20    have, and by operation of the Final Judgment shall have, expressly waived and
21    relinquished, to the fullest extent permitted by law, the provisions, rights and
22    benefits of Section 1542 of the California Civil Code, or any other similar provision
23    under federal or state law, which provides:

24

25        **A GENERAL RELEASE DOES NOT EXTEND TO**
26        **CLAIMS WHICH THE CREDITOR DOES NOT KNOW**
27        **OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT**
28

-16 of 45-

Exhibit __1__ p __42__

1   **THE TIME OF EXECUTING THE RELEASE, WHICH IF**
2   **KNOWN BY HIM OR HER MUST HAVE MATERIALLY**
3   **AFFECTED HIS OR HER SETTLEMENT WITH THE**
4   **DEBTOR.**
5
6          The Participating Class Members may hereafter discover facts in
7   addition to or different from those they now know or believe to be true with respect
8   to the subject matter of the Released Federal Claims, but upon the Effective Date,
9   shall be deemed to have, and by operation of the Final Judgment shall have, fully,
10  finally, and forever settled and released any and all of the Released Federal Claims,
11  whether known or unknown, suspected or unsuspected, contingent or non-
12  contingent, which now exist, or heretofore have existed, upon any theory of law or
13  equity now existing or coming into existence in the future, including, but not limited
14  to, conduct that is negligent, intentional, with or without malice, or a breach of any
15  duty, law or rule, whether in tort, contract, or for violation of any state or federal
16  statute, rule or regulation arising out of, relating to, or in connection with any act or
17  omission by or on the part of any of the Released Parties committed or omitted prior
18  to the execution hereof, without regard to the subsequent discovery or existence of
19  such different or additional facts.
20
21         The Participating Class Members agree not to sue or otherwise make a
22  claim against any of the Released Parties that is in any way related to the Released
23  Federal Claims.
24
25
26
27
28

W02-WEST:1JWK1\401032446.1                                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P.**43**

7.3 **General Release and Waiver of Claims by the Named Plaintiffs**

In addition to the releases above, the Named Plaintiffs, make the additional following general release of all claims, known or unknown (the "General Release").

The Named Plaintiffs release the Released Parties from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the execution hereof.

The General Release includes any unknown claims the Named Plaintiffs do not know or suspect to exist in their favor at the time of the General Release, which, if known by them, might have affected their settlement with, and release of, the Released Parties by the Named Plaintiffs or might have affected their decision not to object to this Settlement or the General Release.

With respect to the General Release, the Named Plaintiffs stipulate and agree that, upon the Effective Date, the Named Plaintiffs shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

W02-WEST:1JWK1\401032446.1    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit___1___P 44

1   **A GENERAL RELEASE DOES NOT EXTEND TO**

2   **CLAIMS WHICH THE CREDITOR DOES NOT KNOW**

3   **OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT**

4   **THE TIME OF EXECUTING THE RELEASE, WHICH IF**

5   **KNOWN BY HIM OR HER MUST HAVE MATERIALLY**

6   **AFFECTED HIS OR HER SETTLEMENT WITH THE**

7   **DEBTOR.**

8

9   The Named Plaintiffs may hereafter discover facts in addition to or

10  different from those they now know or believe to be true with respect to the subject

11  matter of the General Release, but the Named Plaintiffs upon the Effective Date,

12  shall be deemed to have, and by operation of the Final Judgment shall have, fully,

13  finally, and forever settled and released any and all of the claims released pursuant

14  to the General Release whether known or unknown, suspected or unsuspected,

15  contingent or non-contingent, which now exist, or heretofore have existed upon any

16  theory of law or equity now existing or coming into existence in the future,

17  including, but not limited to, conduct that is negligent, intentional, with or without

18  malice, or a breach of any duty, law or rule, without regard to the subsequent

19  discovery or existence of such different or additional facts.

20

21  7.4   **Dismissal**

22  Within twenty (20) days of the Effective Date, Plaintiffs will seek

23  dismissal with prejudice of the Litigation and of all claims stated therein. The

24  resulting Final Judgment will constitute a binding and final resolution of any and all

25  claims by any Class Members as set forth above.

26

27

28

W02-WEST:1JWK1\401032446.1                      JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P _45_

8. **NOTICE, OBJECTIONS, AND OPPORTUNITY TO OPT OUT**

### 8.1 Notice

The Parties will jointly draft a Notice of Pendency of Class Action Settlement ("Notice") and submit it to the Court for approval. The Notice will include, but shall not be limited to, information regarding the nature of the lawsuit; a summary of the substance of the settlement; the class definition; the procedure and time period to submit a claim, request exclusion from, or object to the settlement; the date set for the final approval hearing; the formula used for the Individual Settlement Payments, including the estimated Individual Settlement Payment. The Notice will be mailed with a Claim Form (collectively "Notice Packet").

### 8.2 Claim Form

Each Claim Form will identify the gross (pre-tax) compensation which the Class Member earned during the applicable class period and the Class Member's estimated Individual Settlement Payment. To the extent a Class Member disputes the compensation described on a Claim Form, such Class Member may produce evidence to the Claims Administrator indicating the amount of compensation alleged to have been earned during the applicable class period. Defendants' records will be presumed determinative, but the Claims Administrator will evaluate the evidence submitted by the Class Member and make the final decision as to which dates should be applied.

### 8.3 Mailing of Notice Packet

Within ten days (10) business days of the Preliminary Approval Order, Defendants shall provide the Claims Administrator with the names, most current mailing address and telephone number, social security number, and the respective

W02-WEST:1JWK1\401032446.1                JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit 1 P 46

1  gross (pre-tax) compensation earned by each Class Member during the Class Period

2  (collectively, the "Class List and Data").

3

4         Within fifteen (15) days after receipt of the Class List and Data, the

5  Claims Administrator shall mail the Notice Packet to the Class Members via first-

6  class regular U.S. mail. Class Members will have forty-five (45) days from the

7  mailing of the Notice Packet to submit their claims. Prior to mailing, the Claims

8  Administrator will perform one search based on the National Change of Address

9  Database information to update and correct for any known or identifiable address

10  changes. If a new address is obtained by a way of a returned Notice Packet, then the

11  Claims Administrator shall promptly forward the original Notice Packet to the

12  updated address via first-class regular U.S. mail indicating on the original Notice

13  Packet the date of such re-mailing. In the event the procedures in this Section are

14  followed and the intended recipient of a Notice still does not receive the Notice, the

15  intended recipient shall remain a Class Member and will be bound by all terms of

16  the Settlement and any Final Judgment entered by the District Court if the

17  Settlement is approved by the District Court. In the event the procedures in this

18  Section are followed and a Class Member does not ultimately return a Claim Form,

19  the Class Member shall remain a Class Member and will be bound by all terms of

20  the Settlement and any Final Judgment entered by the District Court if the

21  Settlement is approved by the District Court.

22

23         8.4    **Objections**

24         To assert a valid and timely objection to the Settlement, all objections

25  must be postmarked on or before the thirtieth (30th) day of the mailing of the Notice

26  and mailed to the Claims Administrator. Unless the District Court directs otherwise,

27  the thirty (30) day period applies notwithstanding any argument regarding non-

28

-21 of 45-

Exhibit __1__ P __47__

1  receipt of the Notice. All objections must be in writing and must state with

2  particularity the basis on which they are asserted. Further, if any objector intends to

3  appear at the final approval hearing, either in person or through counsel, he or she

4  will include notice of that fact and state the purpose for his or her appearance in his

5  or her objection. The Parties will be permitted to respond in writing to such

6  objections within the time period set by the District Court. Class Members who fail

7  to file and serve timely written objections in the manner specified above shall be

8  deemed to have waived any objections and shall be foreclosed from making any

9  objection in writing or in person (whether by appeal or otherwise) to the Settlement.

10

11      8.5    **Opportunity to Request Exclusion from the Settlement ("Opt**

12  **Out")**

13      The Notice shall provide that Class Members who wish to exclude

14  themselves from the Settlement must submit a written statement requesting

15  exclusion from the class which is postmarked on or before the thirtieth (30th) day of

16  the mailing of the original Notice Packet. Such written request for exclusion must

17  contain the name, address, and telephone number of the person requesting exclusion.

18  The opt-out request must be personally signed by the Settlement Class Member who

19  seeks to opt out. Each Class Member who does not submit an opt-out request in

20  compliance with this paragraph shall be eligible to be a Participating Class Member.

21  The opt-out request must be mailed to the Claims Administrator. The date of the

22  postmark on the return mailing envelope shall be the exclusive means used to

23  determine whether a request for exclusion has been timely submitted. Any Class

24  Member who requests exclusion from the settlement will not be a Participating

25  Class Member, will not be entitled to any Individual Settlement Payment, and will

26  not be bound by this Agreement or have any right to object, appeal, or comment

27  thereon. Class Members who fail to submit a valid and timely request for exclusion

28

Exhibit __1__ P **48**

1  on or before the date specified herein shall be bound by all terms of the Settlement

2  Agreement, the Final Approval Order, and the Final Judgment, regardless of

3  whether they have requested exclusion from the Settlement.  No later than ten (10)

4  days before the final approval hearing, the Claims Administrator shall provide

5  counsel for the Parties with a complete list of all Class Members who have timely

6  requested exclusion from the Settlement.  The Claims Administrator shall also

7  provide counsel for the Parties with the number of valid Claim Forms received from

8  Class Members.

9

10      8.6    **No Solicitation of Settlement Objections or Exclusions**

11          The Parties agree to use their best efforts to carry out the terms of this

12  Agreement.  At no time shall any of the Parties or their counsel seek to solicit or

13  otherwise encourage Class Members to submit written objections to the Settlement

14  or request exclusion from the Class, or appeal from or seek review of the District

15  Court's Final Approval Order or Final Judgment.

16

17      8.7    **Defendants' Right to Cancel**

18          If ten percent (10%) or more of the Class Members timely and validly

19  opt out of this Settlement, Defendants shall have the absolute right, in their sole

20  discretion, and notwithstanding any other provisions of this Agreement, to withdraw

21  from, and cancel, this Agreement in its entirety, whereupon this Agreement will be

22  null and void for all purposes, and may not be used or introduced in further

23  litigation.  This right can be exercised only by a writing stating clearly that

24  Defendants are canceling, and withdrawing from this Agreement, which shall be

25  sent by Defendants' Counsel to Plaintiffs' Counsel, Mower, Carreon & Desai LLP,

26  Attn: Jon Mower, Esq., by mail and facsimile, no later than ten (10) business days

27  after the Claims Administrator first notifies counsel for Defendants in writing of the

28

-23 of 45-

Exhibit __1__ P**49**

1 total number of opt-outs.  If the right provided in this subparagraph is not so

2 exercised, it shall be waived and cannot later be exercised.

3

4 **9.    CLAIMS PROCEDURE**

5           The Parties have established a claims procedure to resolve all claims of

6 the Class Members for the Class Period.  This procedure is governed exclusively by

7 the terms and conditions set forth in this Agreement.  All Class Members who do

8 not opt out pursuant to Section 8.5 of this Agreement shall be eligible to submit a

9 claim for an Individual Settlement Payment. If such a Class Member submits a

10 timely and properly completed Claim Form, then said Class Member will be a

11 Participating Class Member.  Defendants will pay Individual Settlement Payments

12 to Participating Class Members only.

13

14           9.1    **Claim Forms**

15           All claims will be made on a Claim Form jointly drafted by the Parties,

16 subject to the District Court's approval.  Once the Court grants preliminary approval

17 of the Settlement and the Notice Packet has been mailed to the Class Members,

18 those Class Members choosing not to opt out of the Settlement and who want to file

19 a claim must follow the requirements set forth immediately below:

20

21           Class Members must mail the Claim Form to the Claims Administrator,

22 postmarked by or within forty-five (45) days of the mailing of the Notice Packet.

23 Claim Forms received after this date are presumptively untimely and invalid.  The

24 Claims Administrator shall send written notice of rejection to any such claimant.

25

26           Unless a Class Member submits a timely and valid request for

27 exclusion, failure to return a Claim Form within the prescribed time period will

28

W02-WEST:1JWK1\401032446.1                                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P __50__

1   disqualify him or her from seeking monetary relief and his or her claims for the

2   Class Period will be extinguished.  An allegation by a Class Member that he or she

3   did not receive the Notice Packet shall not be cause for the Claims Administrator to

4   accept a Claim Form that was postmarked after forty-five (45) days of the date of

5   mailing of the Notice Packet.

6

7           The Claim Form will ask for certain identifying information.  A Claim

8   Form shall be deemed "valid" only if:  (1) the Class Member has provided on the

9   Claim Form his or her name, the last four digits of the Class Member's Social

10  Security number, current address, date of birth, e-mail address, and telephone

11  number; (2) the Class Member has dated and signed the Claim Form; and (3) the

12  name and the last four digits of the Class Member's Social Security number

13  provided by the Class Member on the Claim Form match Defendants' records as

14  provided to the Claims Administrator.  The name and the last four digits of the Class

15  Member's Social Security number provided by the Class Member will be deemed to

16  match Defendants' records only if:  (1) both the first name and the last name and the

17  last four digits of the Class Member's the Social Security number provided by the

18  Class Member match Defendants' records; (2) the first name and the last four digits

19  of the Class Member's Social Security number provided by the Class Member

20  match Defendants' records and it appears the last name has been changed as a result

21  of a change in marital status; or (3) the last four digits of the Class Member's Social

22  Security number and last name matches Defendants' records and the first name

23  provided is either a nickname or a shortened or lengthened version of the name that

24  appears in Defendants' records.  Although Class Members who do not submit a

25  valid and timely Claim Form shall not receive an Individual Settlement Payment,

26  such persons shall nonetheless be deemed Class Members and will be bound by all

27  terms of this Agreement and any Final Judgment entered in the Class Action if the

28

W02-WEST:1JWK1\401032446.1                                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P 51

1  Settlement is finally approved by the District Court. The Claims Administrator will

2  send a Notice of Denied Claim form to any Class Member who had submitted a

3  Claim Form that was not timely and/or not valid, stating the reason the claim was

4  denied.

5

6         Individual Settlement Payments shall be paid pursuant to the settlement

7  formula set forth herein. Defendants' and the Claims Administrator's determination

8  of eligibility for, and the amounts of, any Individual Settlement Payments under the

9  terms of this Agreement, shall be conclusive, final, and binding on all Class

10  Members including all Participating Class Members and the Named Plaintiffs,

11  subject to review by Plaintiffs' Counsel and the District Court, if necessary. Any

12  checks paid to Participating Class Members shall advise that they will remain valid

13  and negotiable for one hundred and eighty (180) days from the date of their issuance

14  and may thereafter automatically be canceled if not cashed by a Participating Class

15  Member within that time, at which time the Participating Class Member's claim will

16  be deemed void and of no further force and effect. Any balance remaining in any

17  account created by the Claims Administrator shall remain the property of

18  Defendants. Any Participating Class Member's failure to negotiate and/or cash any

19  such check will not abrogate or affect that Participating Class Member's waivers or

20  releases under this Agreement. Upon completion of administration of the

21  Settlement, Defendants shall provide written certification of such completion to the

22  District Court and Plaintiffs' Counsel. Also upon completion of administration of

23  the Settlement, the Claims Administrator shall provide written certification of such

24  completion to the District Court and counsel for all Parties.

25

26

27

28

W02-WEST:IJWK1\401032446.1                                        JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit ___ P 52

## 10.  COMPUTATION AND DISTRIBUTION OF PAYMENTS

### 10.1  Distribution Formula

Participating Class Members will receive an amount determined by the Claims Administrator in accordance with Section 10.2 of this Agreement. The Parties agree that this payment is not viewed as additional compensation for purposes of calculating a "regular rate" of pay under California or federal law for the period during which it is received, and no additional overtime compensation is required as a result of such payment; further, any claim to entitlement to any additional overtime compensation is expressly waived under the terms of this Agreement. No person or entity shall have any claim against Defendants, Defendants' Counsel, the Named Plaintiffs, any Class Members, Plaintiffs' Counsel, or the Claims Administrator based upon distributions and payments made in accordance with this Agreement.

### 10.2  Distribution to the Participating Class Members

After deducting the amount of attorneys' fees and costs, Incentive Awards to the Named Plaintiffs, and the estimated costs of settlement administration, the remainder of the settlement fund (i.e., the Net Settlement Amount) will be available for distribution to the Participating Class Members on a "claims-made" basis.

Each Participating Class Member's payment (i.e., an Individual Settlement Payment) will be determined as follows: Plaintiffs' counsel has provided an allocation of the Net Settlement Amount to be claimed by each Subclass ("Net Distributable Amount"). The allocations for each Subclass is as follows:

W02-WEST:1JWK1\401032446.1

JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __l__ P 53

1      **Subclass A:**  **$73,000.00**

2      **Subclass B:**  **$10,000.00**

3      **Subclass C: $1,000,000.00**

4      **Subclass D: $143,000.00**

5      **Subclass E: $250,000.00**

6      **Subclass F: $21,000.00**

7      **Subclass G: $140,000.00**

8

9          The Claims Administrator will divide the Net Distributable Amount for

10     each Subclass by the total gross (pre-tax) compensation paid to Participating Class

11     Members during the class period to determine a multiplier (the "Multiplier"). A

12     Participating Class Member's payment will equal that Participating Class Member's

13     gross (pre-tax) compensation earned during the class period times the Multiplier (the

14     "Class Period Claim Amount").

15

16         To determine the Individual Settlement Payment for each Participating

17     Class Member, the Claims Administrator will multiply the individual's gross (pre-

18     tax) compensation by the Multiplier. With respect to Subclass G, the Private

19     Attorney General Act penalties, seventy-five percent (75%) of the Class Period

20     Claim Amount shall be paid to the State of California and twenty-five percent (25%)

21     of the Class Period Claim Amount shall be distributed to the Settlement Class

22     Members. Further, the Individual Settlement Payments for all Subclasses will be

23     reduced by any required legal deductions for each Participating Class Member.

24     Notwithstanding the above, the aggregate amount distributed to the Participating

25     Class Members and the State of California shall equal at least forty-five percent

26     (45%) of the Net Settlement Amount. For greater clarity, if in using the Multiplier,

27     the total Individual Settlement Payments would equal less than forty-five (45%)

28

Exhibit \_\_ P.**54**

1  percent of the Net Settlement Amount, the Claims Administrator shall

2  proportionately increase the Individual Settlement Payment for each Participating

3  Class Member to ensure that the aggregate Individual Settlement Payments equal

4  forty-five percent (45%) of the Net Settlement Amount. Any unclaimed amounts

5  above forty-five percent (45%) of the Net Settlement Amount shall be the exclusive

6  property of Defendants.

7

8       The Parties recognize that the Individual Settlement Payments to be

9  paid to the Participating Class Members in Subclasses A through F are deemed to be

10  a combination of wages and penalties. The Parties agree that 25% of all payments

11  to Participating Class Members in Subclasses A through F will be treated as wages

12  subject to W2 reporting and, therefore, normal payroll taxes and withholdings will

13  be deducted pursuant to state and federal law and the employer will make all

14  required contributions. The remaining 75% represents interest and statutory

15  penalties; claimants will be issued an IRS Form 1099 for that portion of their

16  Individual Settlement Payments.

17

18       Any disputes (including those concerning the period of time a Class

19  Member worked during the applicable class period) concerning administration of the

20  Settlement, except those disputes that concern the interpretation or enforceability of

21  this Agreement, shall be resolved by binding arbitration through a single arbitrator

22  from Judicial Arbitration and Mediation Services, Inc. ("JAMS"), in Orange

23  County, California. The JAMS Streamlined Arbitration Rules & Procedures in

24  effect at the time of the claim or dispute is arbitrated will govern the procedure for

25  the arbitration. The arbitrator in this matter shall not have the power to modify any

26  of the provisions of this Agreement. The decision of the arbitrator shall be final and

27  binding on all parties to this Agreement, and judgment thereon may be entered in

28

W02-WEST:1JWK1\01032446.1                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P 55

1  any court of competent jurisdiction. The party initiating the arbitration shall

2  advance the arbitrator's fee and all costs of services provided by the arbitrator.

3  However, Defendants agree to reimburse the initiating party for such fees and costs

4  at the conclusion of the arbitration. Prior to any such arbitration, counsel for the

5  Parties will confer in good faith to resolve the dispute without the necessity of

6  arbitration.

7

8        10.3  **Deposit Into Escrow Account**

9        Defendants will deposit the Individual Settlement Payments owed to

10  the Participating Class Members ("Escrow Funds") into an interest bearing escrow

11  account with Homestead Escrow, Inc. location at 30131 Town Center Drive, Laguna

12  Niguel, California, or other agreed upon escrow company, within five (5) days of

13  the Court's execution of the Final Approval Order and Order of Dismissal With

14  Prejudice. Escrow instructions consistent with the terms of this paragraph will be

15  provided to the escrow holder. Plaintiffs and the Claims Administrator will be

16  provided notice that the escrow funds have been deposition. This notice may be

17  redacted to remove the escrow account number. All fees and costs associated with

18  the creation and maintenance of the escrow account shall be deducted from the

19  Settlement Amount. The escrow administration costs are estimated at less than Five

20  Hundred Dollars and No Cents ($500.00). In the event that the Court's Final

21  Approval Order is challenged by a timely appeal, writ, or other legal proceeding

22  ("Triggering Event"), the escrow holder shall return all sums held in escrow to

23  Defendants, including all accrued interest, immediately upon Defendants' written

24  request. Absent a Triggering Event, the Escrow Funds, excluding accrued interest

25  that will remain the sole property of Defendants, will be remitted by the escrow

26  holder to the Claims Administrator within five (5) days of the Effective Date. The

27  Claims Administrator shall then distribute the Escrow Funds to the Participating

28

Exhibit ___ P **5 9**

1  Class Members as set forth in this Agreement. All taxes due and owing on the
2  Escrow Funds' accrued interest shall be the sole responsibility of Defendants.
3       Should a Triggering Event occur that results in the return of the
4  amounts placed in escrow to Defendants, which thereafter becomes fully and finally
5  resolved and not subject to further judicial review, Defendants shall provide to the
6  Claims Administrator the Individual Settlement Payments owed to the Participating
7  Settlement Class Members within five (5) days of the Effective Date. The Claims
8  Administrator shall then commence disbursements as provided for in this
9  Agreement, or by an order of the Court.
10
11       10.4   **Time for Distribution**
12       Defendants are obligated to make all funds necessary to fund the
13  Settlement available to the Claims Administrator for distribution no later than ten
14  (10) days following the Effective Date. Defendants, through the Claims
15  Administrator, will distribute the Individual Settlement Payments, within fifteen
16  (15) days after the Effective Date. At no time shall Defendants have the obligation
17  to segregate the funds comprising the Individual Settlement Payments (either
18  individually or in aggregate) from their other assets. Defendants will retain
19  exclusive authority over, and responsibility for, those funds. Any balance remaining
20  in any account created by the Claims Administrator following distribution of the
21  Individual Settlement Payments shall remain the property of Defendants.
22
23  **11.   NAMED PLAINTIFFS**
24       11.1   Plaintiffs' Counsel will request, and Defendants will not oppose,
25  payment of an Incentive Award to each of the Named Plaintiffs in addition to
26  whatever payment they are otherwise entitled to receive as Participating Class
27  Members. The Incentive Award shall be Ten Thousand Dollars ($10,000.00) for
28

-31 of 45-

Exhibit __1__ P **57**

1  D'Asero, Mohammed, Safabakhsh, Richardson, Johanson, and Dwyer, respectively,

2  and Three Thousand Dollars ($3,000.00) for Cugliari.  The Named Plaintiffs will

3  receive an IRS 1099 form related to the Incentive Award, and will be responsible for

4  correctly characterizing this payment for tax purposes and for paying any taxes on

5  the amounts received.  The Named Plaintiffs agree to indemnify and hold harmless

6  Defendants for any tax liability.  If the Court awards the Incentive Awards in

7  amounts that are less than that specified above, the residual shall be the exclusive

8  property of Defendants.  Such Incentive Awards shall be issued to the Named

9  Plaintiffs and forwarded by regular first class mail to Plaintiffs' Counsel at Mower,

10  Carreon & Desai, LLP, Attn: Jon Mower, Esq.  If the Court declines to award

11  Incentive Awards in the amounts stated herein, any difference shall revert to

12  Defendants.

13

14  **12.    SETTLEMENT PAYMENT, ATTORNEYS' FEES AND CLAIMS**

15     **ADMINISTRATOR**

16     12.1   **Settlement Amount Payment**

17     Home Loan Center, Inc. d/b/a Lending Tree Loans, on behalf of all

18  Defendants, will be obligated to pay the Settlement Amount to the Named Plaintiffs

19  and the Class Members pursuant to the terms of this Agreement.

20

21     12.2   **Attorneys' Fees and Reimbursement of Expenses**

22     Plaintiffs' Counsel may request an award of attorneys' fees of up Seven

23  Hundred Fifty Thousand Dollars ($750,000.00) which represents thirty percent

24  (30%) of the Settlement Amount and costs not to exceed Fifty Thousand Dollars

25  ($50,000.00) (collectively, the "Fees Award").  The Fees Award shall be included in

26  the Settlement Amount.  The Fees Award will cover all work performed and all fees

27  incurred to date, and all work to be performed and all fees to be incurred in

28

W02-WEST:1JWK1\401032446.1                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P 58

1  connection with the approval by the District Court of this Stipulation of Settlement,
2  the administration of the Settlement, and obtaining dismissal with prejudice of this
3  case. Plaintiffs' Counsel will be issued an IRS Form 1099 for the Fees Award.
4  Plaintiffs' Counsel shall not be permitted to petition the District Court for, or accept,
5  any additional payments for attorneys' fees, interest, or costs. Defendants agree not
6  to oppose such an application for a Fees Award, so long as it is consistent with the
7  provisions of this Agreement.
8
9       Defendants' payment of the Fees Award to the Plaintiffs' Counsel shall
10 constitute full satisfaction of the obligation to pay any amounts to any person,
11 attorney, or law firm for attorneys' fees or costs in the Litigation incurred by any
12 attorney on behalf of the Named Plaintiffs and the Class Members, and shall relieve
13 Defendants, the Claims Administrator, and Defendants' Counsel of any other claims
14 or liability to any other attorney or law firm for any attorneys' fees and costs to
15 which any of them may claim to be entitled on behalf of the Named Plaintiffs and/or
16 the Class Members.
17
18      Defendants will pay the Fees Award to Plaintiffs' Counsel at the time it
19 is required to distribute the Individual Settlement Payments. If the Court declines to
20 award attorneys' fees or costs in the amounts stated herein, any difference shall
21 revert to Defendants.
22
23      **12.3  Claims Administrator**
24      Subject to Court approval, all amounts paid for claims administration
25 shall be deducted from the Settlement Amount. The Claims Administrator shall:
26 distribute the Notice Packet; determine eligibility for payment to a Class Member;
27 resolve any disputes regarding the calculation or application of the formula for
28

-33 of 45-

Exhibit___1___P**59**

1  determining the Individual Settlement Payment; keep track of those Class Members
2  requesting to be excluded from the Settlement, and provide information regarding
3  the requests for exclusion to the Parties' counsel; mail the Individual Settlement
4  Payment checks to Participating Class Members; issue W-2 and 1099 forms; and
5  perform such other tasks necessary to effectuate the terms of this Agreement or as
6  the Parties mutually agree or the Court orders the Parties to perform.
7
8        The Claims Administrator shall regularly report to the Parties, in
9  written form, the substance of the work performed, the basis for any denial of a
10  claim, and the total amount of Claims paid.
11
12        The Claims Administrator will submit to the Court in conjunction with
13  the motion for final approval, a declaration providing, among other things, the
14  number of Notice Packets it mailed to the class, the number re-mailed, the number
15  of Notice Packets ultimately undeliverable, the number of opt-outs received, the
16  number of Claim Forms received, the number of defective Claim Forms received
17  and efforts to cure made, the number of disputed claims received and how they were
18  resolved, the total amount claimed by Participating Class Members, the total of its
19  charges for services rendered, and the anticipated future charges beyond the date of
20  Final Approval Order.
21
22        Any disputes relating to the Claim's Administrator's ability and need to
23  perform its duties shall be referred to the Court.
24
25  **13.    INTEREST**
26        13.1  The Settlement Amount includes any and all interest accruals
27  and no additional interest shall be due under any circumstances.
28

Exhibit___I___P_60

14. **TAXATION**

  14.1  The Named Plaintiffs and Participating Class Members represent and warrant that they understand that it is their sole obligation to pay appropriate federal, state, and local income taxes on any amounts they receive under this Agreement that lawfully qualify as taxable income.

  14.2  Neither the Parties nor their respective counsel provide or purport to provide any tax advice to the Participating Class Members in connection with this Agreement or otherwise.  The Parties agree that they shall not rely upon any terms of this Agreement for the purpose of determining or avoiding federal, state, or local tax obligations.

  14.3  The Parties do not believe there are any tax return filing requirements pursuant to this Agreement.  However, to the extent any tax returns must be filed, either Defendants or the Claims Administrator, as determined by Defendants, shall also cause to be timely and properly filed all informational and other tax returns, if any, necessary with respect to the amounts to be distributed to the Named Plaintiffs and Class Members (collectively, the "Settlement Fund").  The Parties do not believe that the operation of the Settlement Fund will generate any taxable income, as no segregated Settlement Fund will be created.  However, if any taxable income is generated by the Settlement Fund, in all events the tax returns filed shall reflect that all taxes payable on the taxable income of the Settlement Fund, if any, shall be paid by Defendant.

  14.4  **CIRCULAR 230 DISCLAIMER:  EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOW-LEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER**

W02-WEST:1JWK1\401032446.1

JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit  1  P 61

1   THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY")
2   ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS
3   AGREEMENT, AND NO WRITTEN COMMUNICATION OR
4   DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR
5   ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE,
6   NOR SHALL ANY SUCH COMMUNICATION OR DISCLOSURE
7   CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX
8   ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY
9   DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED);
10  (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY
11  UPON HIS, HER, OR ITS OWN, INDEPENDENT LEGAL AND TAX
12  ADVISERS FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION
13  WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS
14  AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER
15  PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY,
16  AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION
17  OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER
18  PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON
19  THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER
20  TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT
21  PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR
22  ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH
23  LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE
24  ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX
25  STRUCTURE OF ANY TRANSACTION, INCLUDING ANY
26  TRANSACTION CONTEMPLATED BY THIS AGREEMENT.
27
28

W02-WEST:1JWK1\401032446.1                    JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P __62__

1  **15. <u>COURT APPROVAL</u>**

2      15.1   This Agreement is contingent upon the non-withdrawal of

3  Defendants from the Agreement in accordance with Section 8.7, above and upon

4  final approval by the District Court and dismissal of the Litigation with prejudice.

5

6      15.2   The Parties agree to take all steps as may be reasonably

7  necessary to secure approval of the Agreement, to the extent not inconsistent with

8  the terms of this Agreement, and will not take any action adverse to each other in

9  obtaining District Court approval, and, if necessary, appellate approval, of the

10  Agreement in all respects.

11

12      15.3   In the event the District Court declines to enter the Final

13  Approval Order, this Agreement shall be null and void and any order or judgment

14  entered by the District Court in furtherance of this Agreement shall be treated as

15  void *ab initio*.  In such a case, the Parties and any funds to be awarded under this

16  Settlement shall be returned to their respective statuses as of the date and time

17  immediately prior to the execution of this Agreement, and the Parties shall proceed

18  in all respects as if this Agreement had not been executed, except that any fees

19  already incurred by the Claims Administrator shall be paid by Defendant.

20

21      15.4   In the event an appeal is filed from the District Court's Final

22  Judgment, or any other appellate review is sought prior to the date of the Final

23  Approval Order, administration of the Settlement shall be stayed pending final

24  resolution of the appeal or other appellate review.

25

26

27

28

Exhibit __1__ P 63

16. <u>**MISCELLANEOUS PROVISIONS**</u>

16.1 **Headings**

The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

16.2 **Stay of Litigation**

All proceedings in the Litigation shall be stayed except for those proceedings necessary to complete and implement this Agreement.

16.3 **Interpretation of the Agreement**

The Agreement will be interpreted and enforced under the laws of the State of California without regard to its conflict of laws provisions. Any dispute arising out of or relating to the Agreement, or the subject matter hereof, will be resolved solely and exclusively in the United States District Court for the Central District of California, and the Parties hereby consent to the personal jurisdiction of the District Court over them solely in connection therewith.

16.4 **Final Agreement**

This Agreement constitutes the exclusive and final understanding and expression of all agreements between the Parties with respect to the resolution of the Litigation, and supersedes all prior agreements and understandings between the Parties relating to the subject matter hereof, including, but not limited to, the Memorandum of Understanding. The Named Plaintiffs, on their own behalf and on behalf of Class Members, and Defendants enter into this Agreement based solely upon its terms and not in reliance upon any representations or promises other than those contained in this Agreement. The Agreement may be modified only by a

Exhibit __1__ P __64__

1  writing signed by the Parties (or their successors) and approved by the District

2  Court.

3

4      16.5  **Counterparts**

5          The Agreement may be executed in one or more actual or telecopied

6  counterparts, all of which will be considered one and the same instrument and all of

7  which will be considered duplicate originals.

8

9      16.6  **Authority**

10          Counsel for all Parties represent and warrant they are expressly

11  authorized by the Parties whom they represent to negotiate this Agreement and to

12  take all appropriate actions required or permitted to be taken by such Parties

13  pursuant to this Agreement to effectuate its terms, and to execute any other

14  documents required to effectuate the terms of this Agreement.  The Parties and their

15  counsel will cooperate with each other and use their best efforts to effect the

16  implementation of the Settlement.  In the event the Parties are unable to reach

17  agreement on the form or content of any document needed to implement the

18  Settlement, or on any supplemental provisions that may become necessary to

19  effectuate the terms of this Settlement, the Parties shall seek the assistance of the

20  District Court to resolve such disagreement.  The persons signing this Agreement on

21  behalf of Defendants represent and warrant that they are authorized to sign this

22  Agreement on behalf of all Defendants.

23

24      16.7  **Privacy of Documents and Information**

25          Plaintiffs and Plaintiffs' Counsel agree that the documents and

26  information provided to them by Defendants in this Litigation shall continue to be

27  governed by the Protective Order entered by the Court in this action.

28

-39 of 45-

Exhibit __1__ P **45**

### 16.8  No Effect on Employee Benefits

The Individual Settlement Payments and Incentive Awards paid to the Named Plaintiffs and the Class Members shall be deemed not to be pensionable earnings and shall not have any effect on the eligibility for, or calculation of, any of the employee benefits (e.g., vacations, holiday pay, retirement plans, etc.) of the Named Plaintiffs or any Class Members. The payment of the Individual Settlement Payments to Class Members does not represent any modification of Class Members' previously credited hours of service or other eligibility criteria under any employee pension benefit plan or employee welfare benefit plan sponsored by Defendants. Further, any Individual Settlement Payment or Incentive Award shall not be considered "compensation" in any year for purposes of determining eligibility for, or benefit accrual within, an employee pension benefit plan or employee welfare benefit plan sponsored by Defendants.

### 16.9  No Injunctive Relief

Defendants shall not be required to enter into any consent decree, nor shall Defendants be required to agree to any provision for injunctive relief, or to modify or eliminate any of their personnel, compensation, or payroll practices, or adopt any new personnel, compensation, or payroll practices.

### 16.10 Binding on Successors and Assigns

This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

W02-WEST:1JWK1\401032446.1

JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P __66__

1      16.11 **Cooperation and Drafting**

2      Each of the Parties has cooperated in the drafting and preparation of

3 this Agreement. Hence, in any construction made to this Agreement, the same shall

4 not be construed against any of the Parties.

5

6      16.12 **Invalidity of Any Provision**

7      Before declaring any provision of this Agreement invalid, the District

8 Court shall first attempt to construe the provisions valid to the fullest extent possible

9 consistent with applicable precedents so as to define all provisions of this

10 Agreement valid and enforceable.

11

12      16.13 **Named Plaintiffs' Waiver of Right to Be Excluded and**

13 **Object**

14      By signing this Agreement, the Named Plaintiffs are bound by the

15 terms herein stated and further agree not to request to be excluded from the

16 Settlement and agree not to object to any of the terms of this Agreement. Any such

17 request for exclusion or objection shall therefore be void and of no force or effect.

18 The Named Plaintiffs also agree to not disparage the Settlement to Class Members

19 or encourage, in any way, Class Members to not submit a Claim Form or to submit a

20 request to be excluded from the Settlement.

21

22      16.14 **No Unauthorized Public Comment**

23      The Parties and their counsel agree that they will not issue any press

24 releases, initiate any contact with the press, respond to any press inquiry or have any

25 communication with the press about this case and/or the fact, amount or terms of the

26 Settlement. Any communication about the Settlement to Class Members prior to the

27 Court approved mailing will be limited to a statement that a settlement has been

28

Exhibit __1__ P __67__

1   reached and the details will be communicated in a forthcoming Court-approved

2   notice. The Named Plaintiffs and Plaintiffs' Counsel shall refrain from discussing

3   the terms or the fact of this Settlement with third parties other than (1) their

4   immediate family members, (2) their respective accountants or lawyers as necessary

5   for tax purposes; or (3) other class members. Named Plaintiffs and their counsel

6   agree not to publish any of the terms or conditions of this Agreement. The Claims

7   Administrator shall not create a website that advertises this settlement.

8

9         **16.15 Waiver of Appeals**

10        The Parties agree to waive appeals.

11

12         **16.16 Class Action Fairness Act**

13        Not later than ten (10) days following Preliminary Approval,

14   Defendants shall notify the Attorney General of California and the Attorney General

15   of the United States of the existence of this Settlement. Said notice shall include a

16   copy of: (a) all current and former complaints in this matter, as well as all orders of

17   this Court which were issued in connection with said action; (b) a schedule of

18   upcoming judicial hearings in said action; (c) the Notice of Class Action Settlement;

19   (d) the Settlement Agreement; (e) any settlement or other agreement

20   contemporaneously made between Class Counsel and Counsel for the Defendants;

21   (f) any final judgment or notice of dismissal; and (g) an estimate of the number of

22   Class Members.

23

24         **16.17 Defense**

25        To the extent permitted by law, this Settlement may be pleaded as a full

26   and complete defense to, and may be used as the basis for an injunction against, any

27   action, suit, or other proceedings that may be instituted, prosecuted, or attempted

28

W02-WEST:1JWK1\401032446.1                               JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit __1__ P __68__

1 | with respect to the Released Claims or Released Federal Claims in breach of or

2 | contrary to this Settlement.

3

4 |      WHEREFORE, the Named Plaintiffs, on behalf of themselves and the

5 | Class Members, and Defendants have executed this Agreement as of the dates set

6 | forth below.

7

8 | Dated: October ___, 2008     By: _____

          Frank D'Asero on behalf of himself and the

9 |           Settlement Class

10

11 | Dated: October ___, 2008     By: _____

12 |           Ezekiel Mohammed on behalf of himself and the

13 |           Settlement Class

14

15 | Dated: October ___, 2008     By:_____

16 |           Pouria Safabakhsh on behalf of himself and the

17 |           Settlement Class

18

19 | Dated: October ___, 2008     By: _____

20 |           Joseph Cugliari, Jr. on behalf of himself and the

21 |           Settlement Class

22

23 | Dated: October ___, 2008     By: _____

24 |           Angela Richardson on behalf of herself and the

          Settlement Class

25

26

27

28

Exhibit ___ P 69

1  Dated: October ___, 2008        By:_____
                                       Brian Johanson on behalf of himself and the
2                                      Settlement Class

3

4

5

6  Dated: October ___, 2008        By:_____
                                       Brendan Dwyer on behalf of himself and the
7                                      Settlement Class

8

9

10                                  Home Loan Center, Inc. d/b/a Lending Tree Loans,
11                                  LendingTree, LLC, and LendingTree, Inc.

12

13  Dated: October ___, 2008       By:_____

14                                  Title:_____

15                                  IAC/Interactive Corp.

16

17  Dated: October ___, 2008       By:_____

18                                  Title: _____

19

20

21

22

23

24

25

26

27

28

Exhibit ___ P___

1 | **APPROVED AS TO FORM:**

2

3

4 | Dated: October_____, 2008          MOWER, CARREON & DESAI LLP

5

6                                              By:_____

7                                                   Jon Mower

8                                                   James Burton
                                                    Attorneys for PLAINTIFFS AND THE
9                                                   PUTATIVE CLASS

10

11

12 | Dated: October 13, 2008          SHEPPARD MULLIN RICHTER &
                                       HAMPTON LLP
13

14

15                                            By:_____

16                                                 Greg S. Labate
                                                   Jason W. Kearnaghan
17                                                 Matthew M. Sonne
                                                   Attorneys for Defendants HOME LOAN
18                                                 CENTER, INC. d/b/a LENDING TREE
19                                                 LOANS, LENDINGTREE, LLC,
                                                   LENDINGTREE, INC., AND
20                                                 IAC/INTERACTIVE CORP.

21

22

23

24

25

26

27

28

-45 of 45-

W02-WEST:1JWK1\401032446.1                          JOINT STIPULATION OF SETTLEMENT AND RELEASE

Exhibit ___1___ P___71___